## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WW INTERNATIONAL, INC., *et al.*,[1] | Case No. 25-[__] (  ) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) SCHEDULING COMBINED HEARING ON ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN; (II) FIXING DEADLINE TO OBJECT TO DISCLOSURE STATEMENT AND THE PLAN; (III) APPROVING PREPETITION SOLICITATION PROCEDURES AND FORM AND MANNER OF NOTICE OF COMMENCEMENT, COMBINED HEARING AND OBJECTION DEADLINE; (IV) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (V) CONDITIONALLY (A) DIRECTING THE UNITED STATES TRUSTEE NOT TO CONVENE SECTION 341(A) MEETING OF CREDITORS AND (B) WAIVING REQUIREMENT OF FILING STATEMENTS OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES AND RULE 2015.3 REPORTS; AND (VI) GRANTING RELATED RELIEF**

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") respectfully submit this motion (this "Motion") for the entry of an order, substantially in the form attached as Exhibit A (the "Proposed Order"), pursuant to sections 105(d)(2)(B)(vi), 341, 1125, 1126 and 1128(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 1007, 2002, 2003, 2015.3, 3016, 3017, 3018, 3020(b)(1) and 9006(c)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 1007-1, 2002-1, 3017-1, and 9006-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"):

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are WW International, Inc. (0273), WW North America Holdings, LLC (6141), WW Canada Holdco, Inc. (5680), WW.com, LLC (4196), W Holdco, Inc. (4087), WW Health Solutions, Inc. (3859), Weekend Health, Inc. (6812), and WW NewCo, Inc. (N/A).  The Debtors' headquarters is located at 675 Avenue of the Americas, 6th Floor, New York, NY 10010.

(a)      scheduling a combined hearing (the "Combined Hearing") on (i) the adequacy of the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of WW International, Inc. and Its Debtor Affiliates*, dated May 6, 2025 (as may be amended, supplemented or otherwise modified from time to time, the "Disclosure Statement"), and (ii) confirmation of the *Joint Prepackaged Plan of Reorganization of WW International, Inc. and Its Debtor Affiliates*, dated May 6, 2025 (as may be amended, supplemented or otherwise modified from time to time, the "Plan");[2]

(b)      establishing the deadline (the "Objection Deadline") to object to the adequacy of the Disclosure Statement and confirmation of the Plan;

(c)      approving the prepetition solicitation procedures regarding votes to accept or reject the Plan (the "Solicitation Procedures"), including the form of ballots (the "Ballots"), and (i) the form and manner of the notice of the commencement of these Chapter 11 Cases, the Combined Hearing and the Objection Deadline, the assumption of Executory Contracts and Unexpired Leases, the notice of non-voting status for non-voting claimants and the option for Holders of Claims and Interests to opt-in to certain releases contained in the Plan (the "Combined Notice"), and (ii) the form and manner of the notice to be sent to the Debtors' approximately 4 million members (the "Member Notice");

(d)      approving the notice and objection procedures, including the applicable objection deadline (the "Executory Contract Objection Deadline"), for the assumption of Executory Contracts and Unexpired Leases under the Plan (the "Executory Contract Procedures");

(e)      conditionally (a) directing the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") not to convene a meeting of creditors (the "Creditors' Meeting") under section 341(a) of the Bankruptcy Code, and (b) excusing the requirement that the Debtors file: (i) statements of financial affairs ("SOFAs") and schedules of assets and liabilities ("Schedules") and (ii) the periodic reports of financial information with respect to entities in which the Debtors' estates hold a controlling or substantial interest pursuant to Bankruptcy Rule 2015.3 (the "Rule 2015.3 Reports"); and

(f)      granting related relief.

---

[2]      Copies of the Disclosure Statement and Plan have been filed contemporaneously with this Motion. Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan or Disclosure Statement, as applicable.

In support of this Motion, the Debtors submit the *Declaration of Felicia DellaFortuna in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed contemporaneously herewith, and respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are sections 105(d)(2)(B)(vi), 341, 1125, 1126 and 1128(a) of the Bankruptcy Code, Bankruptcy Rules 1007, 2002, 2003, 2015.3, 3016, 3017, 3018, 3020(b)(1) and 9006(c)(1) and Local Rules 1007-1, 2002-1, 3017-1 and 9006-1.

## GENERAL BACKGROUND

3.      On the date hereof (the "Petition Date"), each of the Debtors filed voluntary petitions in the Court under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to

operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No official committees have been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or examiner.

5.      Additional information regarding the Debtors' business, capital structure and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

## BACKGROUND REGARDING THE PLAN AND PREPETITION SOLICITATION

6.      On May 6, 2025, the Debtors executed a Restructuring Support Agreement (as may be amended, supplemented, or otherwise modified from time to time in accordance with its terms, and including all annexes, exhibits and schedules thereto, the "Restructuring Support Agreement"), with holders of more than 71% in the aggregate principal amount of the First Lien Credit Agreement Claims and holders of 74% in the aggregate principal amount of the Senior Secured Notes Claims (each as defined in the Restructuring Support Agreement and such creditors, the "Consenting Creditors"), pursuant to which the parties agreed, among other things, to support and vote in favor of the Plan. The Restructuring Support Agreement sets forth the principal terms of the Restructuring Transactions and requires the Consenting Creditors to support the Plan. Concurrently with this Motion, the Debtors have filed the Plan and the Disclosure Statement. As contemplated by the Restructuring Support Agreement, on May 6, 2025, prior to filing these Chapter 11 Cases, the Debtors commenced solicitation of votes on the Plan.

7.      Pursuant to the Plan, among other things, the treatment of holders of First Lien Claims and Existing Equity Interests shall be as follows:

  a.  Holders of First Lien Claims will receive a combination of their *pro rata* share of (i) the New Takeback Debt, *provided* that the New Term Loan Creditors shall receive the New Term Loans and the New Notes Creditors

shall receive the New Notes; and (ii) subject to the proviso in the next sentence, 91% of the New Common Equity, subject to dilution by the MIP. Under the Bankruptcy Code, the Holders of First Lien Claims are entitled to 100% of the New Common Equity, but the Holders of the First Lien Claims, by entering into the Restructuring Support Agreement, have agreed to voluntarily reallocate 9% of the New Common Equity (pre-dilution from the MIP) to Holders of Existing Equity Interests (the "Initial Reallocation"); *provided* that, if the Milestones set forth in the Restructuring Support Agreement have not been met (other than as a result of the breach of the Restructuring Support Agreement by the Consenting Creditors), the 9% of New Common Equity (pre-dilution from the MIP) voluntarily reallocated to the Holders of the Existing Equity Interests shall be automatically forfeited to the Holders of First Lien Claims, who shall then receive 100% of the New Common Equity (pre-dilution from the MIP) on a *pro rata* basis on the Effective Date (the "Subsequent Reallocation").

b. Holders of Existing Equity Interests shall have all Existing Equity Interests cancelled, released, and extinguished and of no further force and effect and the Holders of Existing Equity Interests shall be voluntarily allocated 9% of the New Common Equity on a *pro rata* basis (pre-dilution from the MIP), from New Common Equity that the Holders of the First Lien Claims would otherwise be entitled to under the Bankruptcy Code pursuant to the Initial Reallocation; *provided that*, if the Milestones set forth in the Restructuring Support Agreement have not been met (other than as a result of the breach of the Restructuring Support Agreement by the Consenting Creditors), the 9% of New Common Equity voluntarily reallocated to the Holders of the Existing Equity Interests shall be automatically forfeited to the Holders of First Lien Claims, who shall then receive 100% of the New Common Equity (pre-dilution from the MIP) on a *pro rata* basis on the Effective Date, pursuant to the Subsequent Reallocation.

8.    In addition to the foregoing, the Plan shall provide as follows:

- All Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims shall be paid in full in Cash or receive such other treatment that renders such Claims Unimpaired.

- With the consent of the Required Consenting Creditors (not to be unreasonably withheld), all Allowed Other Secured Claims shall be paid in full in Cash or receive such other treatment that renders such Claims Unimpaired

- All outstanding and undisputed General Unsecured Claims will be Unimpaired by the Plan unless otherwise agreed to by the Debtors and the Holder of such General Unsecured Claim with the consent of the Required Consenting Creditors (not to be unreasonably withheld).

- Each Intercompany Claim and each Intercompany Interest, at the option of the Debtors, with the consent of the Required Consenting Creditors (not to be unreasonably withheld), shall be (i) Unimpaired and Reinstated or (ii) Impaired and canceled and released without any distribution.

## **RELIEF REQUESTED**

9.      By this Motion, the Debtors seek entry of the Proposed Order: (a) scheduling the Combined Hearing on (i) the adequacy of the Disclosure Statement and (ii) confirmation of the Plan; (b) establishing the Objection Deadline for the adequacy of the Disclosure Statement and confirmation of the Plan; (c) approving the Solicitation Procedures, including, among other things, the form of Ballots and the form and manner of the notice of the commencement of these Chapter 11 Cases and the Combined Hearing, the Combined Notice, the Member Notice, and the New Notes Election & Distribution Procedures Notice; (d) approving the Executory Contract Procedures, including the Executory Contract Objection Deadline; (e) conditionally (i) directing the U.S. Trustee not to convene the Creditors' Meeting and (ii) excusing the requirement that the Debtors file SOFAs and Schedules and Rule 2015.3 Reports; and (f) granting related relief.

10.      The following table highlights the proposed key dates and deadlines relevant to the Solicitation Procedures and sets forth the Debtors' proposed dates for the mailing of the Combined Notice, the Objection Deadline, and the Combined Hearing (collectively, the "Proposed Confirmation Schedule"):

| Event | Date/Deadline |
|---|---|
| Voting Record Date | April 30, 2025 |
| Commencement of Solicitation | May 6, 2025 |
| Petition Date | May 6, 2025 |
| Combined Hearing Notice, Notices of Non-Voting Status, Member Notice | Within three (3) business days, or as soon as reasonably practicable, after entry of the Proposed Order |

| | |
|---|---|
| Executory Contract Objection Deadline | May 23, 2025 at 4:00 p.m. (prevailing Eastern Time) |
| Plan Supplement Filing Deadline | May 30, 2025 at 11:59 p.m. (prevailing Eastern Time) |
| First Lien Credit Agreement New Notes Election Record Date | June 3, 2025 |
| New Notes Election Period Commencement Date | June 4, 2025, prior to 10:00 a.m. (prevailing Eastern Time) |
| Plan/Disclosure Statement Objection Deadline | June 6, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Voting Deadline | June 6, 2025, at 5:00 p.m. (prevailing Eastern Time) |
| Deadline to File Proposed Confirmation Order | June 12, 2025, at 12:00 p.m. (prevailing Eastern Time), or two (2) business days prior to the Combined Hearing |
| Deadline to File Brief in Support of Confirmation, Including Plan/Disclosure Statement Replies (including, to the extent applicable, replies to any Assumption Objections) | June 12, 2025, at 12:00 p.m. (prevailing Eastern Time), or two (2) business days prior to the Combined Hearing |
| Combined Hearing | June 16, 2025, at a time to be determined, subject to Court availability |
| New Notes Election Deadline | June 17, 2025, at 5:00 p.m. (prevailing Eastern Time) |

11.     For ease of reference, the following table summarizes the attachments and exhibits cited in this Motion:

| Pleading | Exhibit |
|---|---|
| Proposed Order | **Exhibit A** to this Motion |
| Proposed Combined Notice | **Exhibit 1** to the Proposed Order |
| Proposed Member Notice | **Exhibit 2** to the Proposed Order |
| Proposed Publication Notice | **Exhibit 3** to the Proposed Order |
| Ballots<br>- Form of Class 3 General Ballot – First Lien Claims<br>- Form of Class 3 Beneficial Holder Ballot<br>- Form of Class 3 Master Ballot | **Exhibit B-1** to this Motion<br><br>**Exhibit B-2** to this Motion<br><br>**Exhibit B-3** to this Motion |
| New Notes Election & Distribution Procedures Notice | **Exhibit C** to this Motion |

## BASIS FOR RELIEF REQUESTED

### A.    SCHEDULING A COMBINED HEARING

12.    The Debtors seek a Combined Hearing to consider approval of the Disclosure Statement and confirmation of the Plan to be held, subject to the Court's calendar, on June 16, 2025. This request is consistent with the practice for prepackaged cases in this District and applicable statutes and rules and will facilitate an expeditious reorganization on a schedule consistent with the dates contemplated by the Restructuring Support Agreement.  The Debtors further request that the Proposed Order provide that the Combined Hearing may be adjourned from time to time without further notice other than adjournments announced in open court or in the filing of a notice or hearing agenda in these Chapter 11 Cases, with notice of such adjourned date(s) to be made available on the electronic case filing docket and the website maintained by Kroll Restructuring Administration LLC ("Kroll" or the "Solicitation Agent")[3] at https://restructuring.ra.kroll.com/WeightWatchers/.

13.    Bankruptcy Rule 3017(a) requires that creditors and other parties in interest receive twenty-eight (28) days' notice of the hearing to consider a proposed disclosure statement, and, additionally, Bankruptcy Rule 2002(b) requires that creditors and other parties in interest have twenty-eight (28) days' notice of the time fixed for filing objections to approval of a disclosure statement or confirmation of a plan of reorganization, subject to the Court's discretion to shorten such period under Bankruptcy Rule 9006(c)(1).  However, Local Rule 3017-1(a) expands upon the notice period provided by the Bankruptcy Rules, and requires thirty-five (35) days' notice of the hearing to consider a proposed disclosure statement.  See Del. Bankr. L.R. 3017-1(a).  Section

---

[3]    Contemporaneously herewith, the Debtors filed the *Debtors' Application for Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent*.  The Debtors also anticipate filing a separate retention application for the employment of the Solicitation Agent as administrative advisor for the Debtors.

1128(a) of the Bankruptcy Code provides, "[a]fter notice, the court shall hold a hearing on confirmation of a plan."  In addition, Bankruptcy Rule 3017(c) provides, "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation."  Section 105(d)(2)(B)(vi) of the Bankruptcy Code provides that the Court may combine the hearing on approval of a disclosure statement with the hearing on confirmation of the related plan.  11 U.S.C. § 105(d)(2)(B)(vi).

14.    Prior to the filing of these Chapter 11 Cases, the Debtors accomplished the time-consuming and difficult task required to effectuate a successful reorganization—the negotiation of a consensual restructuring transaction and execution of the Restructuring Support Agreement with the Consenting Creditors.  Likewise, the Debtors have already negotiated, formulated, and commenced the solicitation of the Plan.  As set forth in the Restructuring Support Agreement, the Consenting Creditors are bound to vote to accept the Plan, which votes will satisfy the requirements necessary for confirmation of the Plan.  Accordingly, a Combined Hearing in these Chapter 11 Cases will promote judicial economy and will allow the Debtors to expeditiously effectuate their consensual restructuring and maximize value.

15.    Emerging from these Chapter 11 Cases on the schedule set forth above will maximize the value of the Debtors' estates for the benefit of all stakeholders.  As described in the First Day Declaration, the Debtors operate in a competitive industry, and every day in chapter 11 can negatively impact their business, including by driving their Members to competitors.  Any adverse effects of these Chapter 11 Cases upon the Debtors' business and going-concern value will be minimized, and the benefit to creditors and other stakeholders maximized, through the effectuation of the Restructuring Transactions, including the prompt distributions pursuant to the

terms of the Plan.  Likewise, an expeditious restructuring will serve to minimize administrative expenses attendant to these Chapter 11 Cases.  Such benefits are the hallmarks of a prepackaged plan of reorganization.  In addition to the reasons set forth above, it is appropriate to enter the Proposed Order at this time so that parties in interest may be informed as promptly as possible of the anticipated schedule of events for confirmation of the Plan.

16.    The proposed schedule is rule-compliant and affords creditors, equity interest holders, and all other parties in interest ample notice of these Chapter 11 Cases and the Combined Hearing.  Specifically, the proposed schedule affords at least twenty-eight (28) days' notice of the Objection Deadline and thirty-five (35) days' notice of the Combined Hearing.  As a result, parties will have sufficient time to evaluate their rights in respect of the Plan prior to the proposed Combined Hearing and, therefore, no party in interest will be prejudiced by the requested relief.

17.    Accordingly, the Debtors respectfully request entry of the Proposed Order, pursuant to section 105(d)(2)(B)(vi) of the Bankruptcy Code, setting June 16, 2025, as the date for the Combined Hearing, subject to the Court's availability.

**B.    APPROVAL OF THE DISCLOSURE STATEMENT**

18.    At the Combined Hearing, the Debtors will seek approval of the Disclosure Statement.  Under section 1125(a) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and interests with "adequate information" regarding a debtor's proposed plan of reorganization, which is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would

> enable such hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

19.     Whether a disclosure statement contains adequate information is intended by Congress to be a flexible, fact-specific inquiry left within the discretion of the bankruptcy court:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis.  Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection.  There will be a balancing of interests in each case.  In reorganization cases, there is frequently great uncertainty.  Therefore the need for flexibility is greatest.

H.R. REP. NO. 95-595, at 409 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6365.  See also Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988) (observing that "adequate information will be determined by the facts and circumstances of each case"); Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988) (opining that what constitutes adequate information is "subjective," "made on a case by case basis," and "largely in the discretion of the bankruptcy court").

20.     The Disclosure Statement is extensive and comprehensive.  It contains descriptions of, among other things: (i) the Plan; (ii) the operation of the Debtors' business; (iii) the reasons for, and circumstances leading up to, the restructuring; (iv) the Debtors' prepetition indebtedness; (v) the proposed capital structure of the Reorganized Debtors; (vi) financial information relevant to creditors' determinations of whether to accept or reject the Plan; (vii) securities law matters relevant to the restructuring; (viii) a liquidation analysis setting forth the estimated return that Holders of Claims and Interests would receive in a hypothetical chapter

7 liquidation; (ix) risk factors regarding the Debtors and the Plan; and (x) federal tax law consequences of the Plan.

21.     Based on the foregoing, the Debtors will request at the Combined Hearing that the Court approve the Disclosure Statement as meeting the requirements for "adequate information" under section 1125(a) of the Bankruptcy Code.

## C.     APPROVAL OF THE SOLICITATION PROCEDURES AND FORMS OF SOLICITATION MATERIALS

22.     The Debtors also request that the Court approve the Solicitation Procedures, including the solicitation, balloting, tabulation, and related activities undertaken in connection with the Plan.  As set forth below, the Debtors submit that the Solicitation Procedures comply with the various applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and should be approved.

### 1)     NON-SOLICITATION OF CLASSES PRESUMED TO ACCEPT OR DEEMED TO REJECT THE PLAN

23.     Pursuant to section 1126(f) of the Bankruptcy Code, each holder of a claim or interest in an unimpaired class is "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required."  11 U.S.C. § 1126(f). Section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the Plan on account of such claims or interests."  11 U.S.C. § 1126(g).

24.     Under the terms of the Plan, the following Classes of Claims against, or Interests in, the Debtors are presumed to accept or deemed to reject the Plan (collectively, the "Non-Voting Holders"):  Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims), Class 6 (Intercompany

Interests); and Class 7 (Existing Equity Interests).  As a result, the Debtors did not solicit votes from the Non-Voting Holders.

25.     The Debtors are requesting a waiver of the requirement that they mail copies of the Plan and Disclosure Statement to Non-Voting Holders.  See Fed. R. Bankr. P. 3017(d) (requiring transmission of court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders).  The Debtors submit that Bankruptcy Rule 3017(d) does not apply here because the Debtors solicited acceptances and rejections of the Plan on a prepetition basis, and, thus, there is no disclosure statement that was "approved by the court" to transmit. Alternatively, the Court should order that the Debtors are not required to provide copies of the Plan and Disclosure Statement to Non-Voting Holders as it would be an expensive and unnecessary administrative burden on the Debtors to transmit such materials to the Non-Voting Holders.

26.     In lieu of furnishing each of the Non-Voting Holders with a copy of the Plan and Disclosure Statement, the Debtors propose to send to such Non-Voting Holders the Combined Notice, annexed hereto as **Exhibit 1**, which sets forth, among other things, a summary of the Plan and the treatment of such Non-Voting Holders' Claims or Interests, as well as how a copy of the Plan and the Disclosure Statement may be obtained.  The Debtors have made the Combined Notice, the Disclosure Statement and the Plan available at no cost on the Solicitation Agent's website at https://restructuring.ra.kroll.com/WeightWatchers/.  Additionally, for the Non-Voting Holders, the Combined Notice will also explain the effects of the releases contained in the Plan, instruct the

Non-Voting Holders on how to opt in to such releases should they choose to do so, and include a form to opt-in to such releases (the "Opt-In Form").

27.     Furthermore, specifically with respect to the approximately 4 million individuals who have active memberships, or have had active memberships in the last twelve months with the Debtors (the "Members"), who are Unimpaired and presumed to accept the Plan (to the extent such Members have a Claim against the Debtors), the Debtors propose to send such Non-Voting Holders the Member Notice, attached hereto as **Exhibit 2**, at the physical or email address maintained in the Debtors' books and records.  The Member Notice sets forth, among other things, the Members' treatment under the Plan, the deadline to object to the adequacy of the Disclosure Statement on a final basis and confirmation of the Plan, the date, time, and place of the Combined Hearing, and informs the Members about the releases set forth in Article XI of the Plan. The Member Notice will also be available on the Solicitation Agent's website at https://restructuring.ra.kroll.com/WeightWatchers/.

28.     The Solicitation Procedures undertaken by the Debtors and described herein with respect to the Non-Voting Holders, including the Members, comply with the Bankruptcy Code and Bankruptcy Rules and should be approved.  Accordingly, the Debtors respectfully request that the Court approve the Solicitation Procedures with respect to these Classes and parties.

### 2)     SOLICITATION OF IMPAIRED CLASSES ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN

29.     Only Holders of First Lien Claims in Class 3 (the "Voting Class") are entitled to vote to accept or reject the Plan.

30.     On May 6, 2025, prior to the filing of these Chapter 11 Cases, the Debtors commenced soliciting votes on the Plan from members of the Voting Class in accordance with the Solicitation Procedures described herein, the Bankruptcy Code, Bankruptcy Rules, and the Local

Rules by causing copies of the solicitation package (the "Solicitation Package") to be distributed to members of the Voting Class by email and/or overnight mail. The Solicitation Package included copies of the Disclosure Statement and the exhibits thereto, including the Plan and applicable Ballot for each Holder of a Claim in a Voting Class. As a cost-saving measure, in instances where the Debtors served the Solicitation Package via hard copy, the Plan and Disclosure Statement were included on a flash drive and could be accessed electronically by members in the Voting Class.

31.    The Solicitation Package advised recipients, among other things, of the June 6, 2025 deadline to vote on the Plan (the "Voting Deadline"). The Solicitation Package further advised recipients that Ballots must be properly executed, completed, and returned to the Solicitation Agent in the manner specified on the Ballots prior to the Voting Deadline. Each Ballot also contained detailed instructions on how to complete it, including how to cast a vote to accept or reject the Plan, and specified that Ballots must be returned either online through the Solicitation Agent's E-Balloting Portal, via overnight courier using the enclosed pre-addressed, postage prepaid return envelope or via personal delivery to the address specified on the Ballot.

32.    As previewed above, in addition to accepting hard copy Ballots and Opt-In Forms via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots and Opt-In Forms via electronic, online transmissions, solely through a customized online balloting portal maintained by the Solicitation Agent on the Debtors' case website (the "E-Ballot Portal"). Parties entitled to vote or opt-in may cast an electronic Ballot or Opt-In Form and electronically sign and submit a Ballot or Opt-In Form instantly by utilizing the E-Ballot Portal (which allows a Holder to submit an electronic signature). Instructions for electronic, online transmission of Ballots and Opt-In Forms through the E-Ballot Portal are set forth on the forms of the Ballot and Opt-In Form. The encrypted ballot data and audit trail created

by such electronic submission shall become part of the record of any Ballot or Opt-In Form submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  The E-Ballot Portal shall be the sole method by which a creditor may submit a Ballot or Opt-In Form electronically, provided that Master Ballots (as defined below) and "pre-validated" Beneficial Ballots (as defined below) may be submitted via email to WeightWatchersBallots@ra.kroll.com.  For the avoidance of doubt, holders of Existing Equity Interests who hold their equity positions through a bank, broker, or other financial institution (a "Nominee") in "street name" at The Depository Trust Company ("DTC") cannot submit their Opt-In Form through the E-Ballot Portal, and must click on the Public Equity Opt-In link on the left-hand navigation panel of the Solicitation Agent's website to submit an electronic copy of their Opt-In Form.

### 3)   FORM OF BALLOTS

33.    Bankruptcy Rule 3017(d) requires that the Debtors use a form of ballot substantially conforming to Official Form No. 314.  Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form."  The Ballots, copies of which are annexed as **Exhibit B-1**, **Exhibit B-2**, and **Exhibit B-3** to this Motion, are based on Official Form No. 314, but modified to address the particular aspects of these Chapter 11 Cases and the Plan and to be relevant and appropriate for each member of the Voting Class.  As set forth herein, all Holders of Claims entitled to vote on

the Plan were transmitted Ballots.  The Debtors respectfully submit that the forms of Ballots

comply with the Bankruptcy Rules and, therefore, should be approved.

      4)       **VOTING TABULATION**

      34.     The Debtors' procedures and standard assumptions for tabulating Ballots,

Master Ballots, and Beneficial Ballots include:

| | |
|---|---|
| **Votes Not Counted** | • any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; |
| | • any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline (unless the Debtors determined otherwise or as permitted by the Court); |
| | • any Ballot that does not contain a signature (provided that, signatures contained in electronic Ballots submitted via the Debtors' E-Balloting Portal and Master Ballots and "pre-validated" Beneficial Ballots submitted by electronic mail will be deemed to be immediately legally effective); |
| | • any Ballot that partially rejects and partially accepts the Plan; |
| | • any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan; |
| | • any Ballot superseded by a later, timely submitted valid Ballot; |
| | • any improperly submitted Ballot, or any form of ballot other than the official form of Ballot sent by the Solicitation Agent (unless the Debtors determined otherwise or as permitted by the Court); |
| | • any Ballot that was cast by a person or entity that does not hold a Claim in a Class that is entitled to vote on the Plan; and |
| | • any Ballot submitted by fax or electronic mail unless approved by the Debtors in writing or otherwise ordered by the Court.  For the avoidance of doubt, Master Ballots and "pre-validated" Beneficial Ballots may be submitted via email to WeightWatchersBallots@ra.kroll.com. |
| **No Vote Splitting** | • Holders were required to vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and were not permitted to split any votes.  While the Plan is a separate plan with respect to each Debtor, each vote to accept or |

reject the Plan will be counted as a vote to accept or reject the Plan with respect to each Debtor.

**Master Ballots**

- Votes cast by Holders of Claims through a broker, dealer, commercial bank, trust company, savings and loan, financial institution, mailing agent or other such party in whose name a party's beneficial ownership in the First Lien Claims were registered or held on behalf of, in each case, as of the Voting Record Date (a "Nominee", and such ballots used by the Nominee, the "Master Ballot") will be applied to applicable positions held by such Nominees as of the Voting Record Date, as evidenced by the record and depository listings. If conflicting votes or "over-votes" are submitted by a Nominee, the Solicitation Agent will use reasonable efforts to reconcile discrepancies with the applicable Nominee.

- If "over-votes" are submitted by a Nominee that are not reconciled prior to the preparation of the certification of vote results, the votes to accept and to reject the Plan will be approved in the same proportion as the votes to accept and to reject the Plan submitted by such Nominee, but only to the extent of the Nominee's Voting Record Date position in the applicable securities based on the securities position report provided by the Depository Trust Company ("DTC").

- Each Beneficial Holder that will receive a ballot (the "Beneficial Ballots") will be deemed to have voted only the principal amount of its public securities; any principal amounts thus voted may be thereafter adjusted by the Solicitation Agent on a proportionate basis, with a view to the amount of securities actually voted, as to reflect the corresponding claim amount, including any accrued but unpaid prepetition interest with respect to the securities voted.

- If a Nominee delivers multiple Master Ballots to the Solicitation Agent on account of the same Claims, the last properly executed, valid, timely received Master Ballot will supersede and revoke any earlier received Master Ballot.

**Retention of Ballots**

- The Solicitation Agent is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon the Solicitation Agent is authorized to destroy and/or otherwise dispose of all paper copies of Ballots, printed solicitation materials including unused copies of the Solicitation Package and all solicitation-related correspondence (including undeliverable mail), in each

case unless otherwise directed by the Debtors or the clerk of the Court in writing within such one (1) year period.

- Nominees were directed, and, pursuant to Master Ballot Certifications, have agreed, to maintain the Beneficial Ballots returned by their Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline and to provide copies of such Beneficial Ballots to the Bankruptcy Court or the Debtors if so ordered.

**Establishing Claim Amounts**

- Claim amounts for voting purposes as to votes cast by Beneficial Holders of the Debtors' public securities were as evidenced in the records of the applicable indenture trustee and/or securities depository and applied to applicable positions held by the relevant Nominee as of the Voting Record Date, as evidenced by the record and depository listings of the applicable securities depository.

- With respect to First Lien Credit Agreement Claims, the amount of First Lien Credit Agreement Claims for voting purposes only was established based on the amounts of the applicable term loan positions held by each first lien claimant, as of the Voting Record Date, as evidenced by the applicable books and records maintained by the administrative agent, which were provided to the Debtors or the Solicitation Agent in electronic Microsoft Excel format no later than one Business Day following the Voting Record Date.

35. The Debtors also reserve the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, be improper or unlawful. The Debtors further reserve the right to allow for the cure of any defects or irregularities or conditions of delivery as to any Ballot. The interpretation of all balloting rules and procedures (including the Ballot and the respective instructions thereto) by the Solicitation Agent and the Debtors, unless otherwise directed by the Court, are final and binding on all parties. Any defects or irregularities in connection with deliveries of Ballots must have been cured within such time as the Debtors (or the Court) determined. To assist in the solicitation process, the Debtors request that the Court grant the Solicitation Agent the authority to contact parties who

submit a defective Ballot to make a reasonable effort to cure such deficiencies, provided that,
neither the Debtors nor Solicitation Agent are required to contact such parties to provide
notification of defects or irregularities with respect to completion or delivery of Ballots, nor will
any of them incur any liability for failure to provide such notification. The Debtors also request
that the Court give authorization to the Debtors and/or their Solicitation Agent, as applicable, to
determine all questions as to the validity, form, eligibility (including time of receipt), acceptance,
and revocation or withdrawals of defective Ballots, which determination will be final and binding.
Unless otherwise directed by the Court, delivery of such Ballots will be not deemed to have been
made until such irregularities were cured. Ballots previously furnished, and as to which any
irregularities were not theretofore cured, will be invalidated.

36.     The Debtors believe that the procedures set forth above for tabulating votes
for the Plan are consistent with section 1126(c) of the Bankruptcy Code and Bankruptcy Rules
3018(a). These tabulation procedures are also consistent with those previously used in cases in
this district.

37.     The Debtors directed the Nominees to immediately distribute to their
Beneficial Holder clients (or to make available through their customary methods) the Beneficial
Ballot and Solicitation Package and to compile the votes and relevant information of each
Beneficial Holder returning a properly executed vote (whether on a Beneficial Ballot or otherwise
according to the Nominee's customary methods for collecting votes, such as via e-mail, telephone,
file-sharing site, voter information form, or other accepted methods in lieu of forwarding a paper
copy Beneficial Ballot) on a Master Ballot and to submit such Master Ballot to the Solicitation
Agent by the Voting Deadline. As applicable, as an alternative to submitting a Master Ballot,
Nominees are authorized to "pre-validate" the Beneficial Ballot and forward it with the Solicitation

Package to the Beneficial Holder with instructions to submit the pre-validated Beneficial Ballot directly to the Solicitation Agent. Nominees will be directed to maintain a list of the Beneficial Holders to whom "pre-validated" Beneficial Ballots were delivered for inspection for at least one year from the Effective Date. Beneficial Holders will be instructed to follow the voting instructions of their Nominee and to abide by the submission deadlines set by their Nominee so as to allot sufficient time for their Nominee to process votes and/or opt-ins received and forward such votes and/or opt-ins to the Solicitation Agent by the Voting Deadline.

38.    With respect to those Ballots applicable to Holders of the Senior Secured Notes in Class 3 and the Opt-In Forms applicable to Holders of Existing Equity Interests in Class 7, the Debtors authorize the Nominees to use their customary means of transmitting materials, including via e-mail, file-sharing platform, voter information form, or other accepted methods, to transmit the contents of the Solicitation Packages (or a summary thereof) or Opt-In Form to their Beneficial Holder clients in lieu of hard copies. Moreover, if it is the Nominee's customary internal practice to provide to Beneficial Holders an electronic link to the solicitation materials (including, but not limited to, the Disclosure Statement and the Plan) or Opt-In Form, the Nominee is authorized to follow such customary practice in lieu of forwarding flash drives or paper copies of the applicable materials to their Beneficial Holder clients. In such instances, the Nominee is authorized to return any excess or unused flash drives or paper copies of the Solicitation Package or Opt-In Form to the Solicitation Agent.

39.    For purposes of serving the solicitation materials, the Debtors seek authorization to rely on the address information (for voting and non-voting parties alike) maintained by the Debtors and provided by the Debtors to the Solicitation Agent as of the Voting Record Date. To that end, the Debtors seek the waiver of any obligation for the Debtors or the

Solicitation Agent to conduct any additional research for updated addresses based on undeliverable Solicitation Packages (including undeliverable Ballots, Opt-In Forms, and Combined Notices) and will not be required to resend Solicitation Packages or other materials, including Opt-In Forms and Combined Notices, that are returned as undeliverable.

### 5) VOTING RECORD DATE AND VOTING DEADLINE

40.    Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan of reorganization, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  Fed R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(b) contains a similar provision regarding determination of the record date for voting purposes. Bankruptcy Rule 3018(b) provides, among other things, that prepetition acceptances or rejections of a plan are valid only if the plan was "transmitted to substantially all creditors and equity security holders of the same class" and that the time for voting was not "unreasonably short."

41.    The Solicitation Packages were distributed on May 6, 2025 to all Holders of Claims in the Voting Class as of April 30, 2025 (the "Voting Record Date").  The Ballots require each Holder completing a Ballot to certify the amount of its Claim as of the Voting Record Date. Further, as clearly set forth in the Solicitation Packages, the Voting Deadline was set for June 6, 2025 at 5:00 p.m. (prevailing Eastern Time), a period which provides for approximately twenty-eight (28) days to consider and return votes with respect to the Plan.

42.    The Debtors respectfully submit that Holders of Claims in the Voting Class have adequate time to consider the Plan and Disclosure Statement and submit a Ballot before the Voting Deadline.  The proposed solicitation period in these Chapter 11 Cases is consistent with the solicitation period in other prepackaged chapter 11 cases and in compliance with the time

periods required by the Bankruptcy Rules.  Further, the transactions proposed in the Plan are the product of extensive arm's-length negotiations among the Debtors and the Consenting Creditors, and, prior to the commencement of solicitation, the Plan and Disclosure Statement were subject to review and comment by representatives of the Consenting Creditors.  For these reasons, the Debtors believe that the solicitation period is sufficient and appropriate for Holders of Claims entitled to vote on the Plan to make an informed decision to vote to accept or reject the Plan.

6)    **THE DEBTORS' PREPETITION SOLICITATION WAS EXEMPT FROM REGISTRATION AND DISCLOSURE REQUIREMENTS OTHERWISE APPLICABLE UNDER NONBANKRUPTCY LAW**

43.    Section 1125(g) of the Bankruptcy Code provides that "an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law." 11 U.S.C. § 1125(g).  Further, section 1126(b) of the Bankruptcy Code provides that:

[A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if— (1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

44.    Prepetition solicitations must therefore either comply with generally applicable federal and state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited Holders must receive "adequate information" under section 1125 of the Bankruptcy Code.  See id.  The Debtors respectfully submit that their prepetition solicitation is exempt from the registration

requirements of the Securities Act of 1933 (the "Securities Act"), under one or more of the exceptions from registration provided thereunder, including section 4(a)(2) thereof, state "Blue Sky" laws, or any similar rules, regulations, or statutes.

45.    In general, the Securities Act requires an issuer to file a registration statement with the U.S. Securities and Exchange Commission prior to commencing a public offering.  15 U.S.C. § 77e(c).  The Debtors, however, were not required to file a registration statement under one or more of the exceptions to the registration requirements of the Securities Act, state "Blue Sky" laws, and similar statutes, rules, and regulations.  In particular, the Debtors relied on section 4(a)(2) of the Securities Act and/or Regulation S under the Securities Act outside the United States to investors that are not "U.S. persons" (as defined in Rule 902(k) of Regulation S under the Securities Act) which create an exemption from the Securities Act's registration requirements and otherwise applicable state laws for transactions not involving a "public offering."  15 U.S.C. § 77r(b)(4)(E) (preempting state law in offerings conducted pursuant to regulations under section 4(a)(2) of the Securities Act).  Based upon the requirements of the debt agreements governing the First Lien Claims, the Debtors believe that each Holder of First Lien Claims—the only holders eligible to vote under the Plan and receive the Solicitation Package prior to the Petition Date—is either (i)  a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or (ii) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act) and that there was no general solicitation in connection with the offer, to Holders of Claims in the Voting Class, of New Common Equity and/or New Notes prior to the Petition Date, including in connection with the prepetition solicitation process. Accordingly, the Debtors were not required to file a registration statement regarding the prepetition offer of the New Common Equity or the New Notes of the Reorganized Debtors to Holders of

Claims in the Voting Class, and the requirements of section 1126(b)(1) of the Bankruptcy Code are satisfied by the Debtors' prepetition solicitation process.

46.    Moreover, debtors in this district have utilized section 4(a)(2) of the Securities Act to exempt their prepetition solicitation from the registration and disclosure requirements otherwise applicable under nonbankruptcy law.  See, e.g., In re Appgate, Inc., No. 24-10956 (CTG) (Bankr. D. Del. May 8, 2024) (approving solicitation procedures that included section 4(a)(2) exemption); In re Lannett Co. Inc., No. 23-10559 (JKS) (Bankr. D. Del. May 4, 2023) (same); In re Carestream Health, Inc., No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (same); In re Riverbed Tech., Inc., No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (same); In re APC Auto. Techs. Intermediate Holdings, LLC, No. 20-11466 (CSS) (Bankr. D. Del. June 4, 2020) (same).

47.    Further, as discussed more fully above, the Debtors will seek a determination from this Court at the Combined Hearing that all solicited Holders of Claims in the Voting Class received "adequate information" as defined by section 1125(a)(1) of the Bankruptcy Code, in accordance with section 1126(b)(2) of the Bankruptcy Code.

48.    Accordingly, the Debtors respectfully submit that the Solicitation Procedures satisfy sections 1125(g) and 1126(b)(2) of the Bankruptcy Code because the prepetition solicitation complied with applicable non-bankruptcy law and all Holders of Claims in the Voting Class received "adequate information" as that term is used in section 1125(a) of the Bankruptcy Code and, accordingly, the Solicitation Procedures should be approved.

**D.    DEADLINE AND PROCEDURES FOR OBJECTIONS TO THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN**

49.    Bankruptcy Rule 3017(a) authorizes the Court to fix a time for filing objections to the adequacy of a disclosure statement and Bankruptcy Rule 3020(b)(1) authorizes

the Court to fix a time for filing objections to a plan of reorganization.  Further, Bankruptcy Rule 2002(b) requires at least twenty-eight (28) days' notice be given by mail to all creditors of the time fixed for filing objections to approval of a disclosure statement and confirmation of a plan of reorganization.  Local Rule 3017-1(a) similarly requires twenty-eight (28) days' notice to be given to all creditors of the time fixed for filing objections to approval of a disclosure statement.

50.    The Debtors request that the Court set June 6, 2025, at 4:00 p.m. (prevailing Eastern Time), as the Objection Deadline for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan (including, to the extent applicable, any objections to the Executory Contract Procedures as further discussed below).  The proposed Objection Deadline provides creditors and equity interest holders with sufficient notice of the deadline for filing objections to the Disclosure Statement and Plan, while still affording the Debtors and any parties in interest time to file a responsive brief and resolve consensually as many of those objections as possible.

51.    The Debtors further request that the Court direct that any responses or objections to the adequacy of the Disclosure Statement or confirmation of the Plan must:  (i) be in writing; (ii) conform to the applicable Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party, the amount and nature of such party's Claim or Interest, the basis for the objection and the specific grounds thereof; and (iv) be filed with the Court, together with proof of service.  In addition to being filed with the Court, any such responses or objections must be served on the following parties (collectively, the "Notice Parties") so as to be received by the Objection Deadline: (i) WW International, Inc., 675 Avenue of the Americas, 6th Floor, New York, New York 10010, Attn: Jacqueline Cooke, Esq. (jacquie.cooke@ww.com); (ii) proposed co-counsel for the Debtors, (a) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New

York, New York 10017, Attn: Elisha D. Graff, Esq. (egraff@stblaw.com), Moshe A. Fink, Esq. (moshe.fink@stblaw.com), Rachael L. Foust, Esq. (rachael.foust@stblaw.com), and Zachary J. Weiner, Esq. (zachary.weiner@stblaw.com); (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn. Edmon L. Morton, Esq. (emorton@ycst.com), Sean M. Beach, Esq. (sbeach@ycst.com), Shella Borovinskaya, Esq. (sborovinskaya@ycst.com), and Carol E. Thompson, Esq. (cthompson@ycst.com); (iii) counsel to any official committee appointed in the Chapter 11 Cases; (iv) counsel to the Ad Hoc Group, (a) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn: Scott J. Greenberg, Esq. (sgreenberg@gibsondunn.com), Matthew J. Williams, Esq. (mjwilliams@gibsondunn.com), Jason Z. Goldstein, Esq. (jgoldstein@gibsondunn.com), and Tommy Scheffer, Esq. (tscheffer@gibsondunn.com); and (b) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and Timothy P. Cairns (Tcairns@pszjlaw.com); (v) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Benjamin A. Hackman, Esq. (benjamin.a.hackman@usdoj.gov); and (vi) any other party entitled to notice under Bankruptcy Rule 2002.

52.     The Debtors further request that they and any other parties supporting confirmation of the Plan be authorized to file replies to any objections or responses to confirmation (including, to the extent applicable, to the Executory Contract Procedures) received by the

Objection Deadline by 12:00 p.m. (prevailing Eastern Time) on June 12, 2025, or two (2) business days prior to the Combined Hearing.

**E.    APPROVAL OF FORM AND MANNER OF NOTICE OF THE COMMENCEMENT OF THESE CHAPTER 11 CASES, THE COMBINED HEARING AND THE OBJECTION DEADLINE**

53.    The Debtors propose to mail (or cause to be mailed), no later than three (3) business days following the entry of the Proposed Order or as soon as reasonably practicable thereafter, to all known Holders of Claims against or Equity Interests in the Debtors, other than Members, the Combined Notice, substantially in the form annexed as **Exhibit 1** to the Proposed Order, setting forth, among other things, (i) the notice of commencement of these Chapter 11 Cases; (ii) the date, time and place of the Combined Hearing; (iii) instructions for obtaining copies of the Disclosure Statement and Plan; and (iv) the Objection Deadline and procedures for filing objections to the adequacy of the Disclosure Statement and/or confirmation of the Plan. Additionally, for the Non-Voting Holders, the Combined Notice will include the applicable notice of non-voting status for Impaired Classes that are deemed to reject the Plan and Unimpaired Classes that are deemed to accept the Plan, as well as the Opt-In Form.  With respect to Members, the Debtors propose to email and mail (or cause to be mailed) where email addresses are unavailable the Member Notice no later than three (3) business days following entry of the Proposed Order or as soon as reasonably practicable thereafter.

54.    Bankruptcy Rule 2002(f)(1) provides that notice of "the order for relief" shall be sent by mail to all creditors.  Bankruptcy Rule 2002(d) similarly provides that, unless otherwise ordered by the court, notice of the "order for relief" shall be given to all of the Debtors' equity security holders.

55.    In addition, Bankruptcy Rule 2002(1) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the

notice."  The Debtors request that the Court authorize them, in their sole discretion, to provide supplemental publication notice (the "Publication Notice") of the Combined Hearing, attached hereto as **Exhibit 3**, as soon as reasonably practicable following the entry of the Proposed Order in the national edition of *The New York Times* or another world-wide and/or nationally-circulated newspaper and/or regional newspapers and electronically on the Debtors' case information website (located at https://restructuring.ra.kroll.com/WeightWatchers/), and file the same on the Court's docket.  The Debtors believe that the publication of certain of the contents of the Combined Notice in this manner would provide sufficient notice of the date, time and place of the Combined Hearing and the Objection Deadline (and related procedures) to persons who may not otherwise receive the Combined Notice by mail.  Accordingly, the Debtors respectfully request that this Court approve the form and manner of service of the Combined Notice in the foregoing manner.

56.    Moreover, the Debtors will send, via email (or mail where email addresses are unavailable) the Members the Member Notice to provide notice to each known Member of the commencement of the Chapter 11 Cases (to the extent that any such Member is a Holder of Claims against the Debtors).

57.    To provide another layer of notice to parties in interest in these Chapter 11 Cases, the Debtors will post to the Solicitation Agent's website various chapter 11 documents, including the following: (i) the Plan; (ii) the Disclosure Statement; (iii) this Motion and any orders entered in connection with this Motion; and (iv) the Combined Notice.

58.    The proposed service of the Combined Notice and the Member Notice will provide sufficient notice to all parties in interest in these Chapter 11 Cases of the commencement of such cases, the date, time and place of the Combined Hearing and the procedures for objecting to the adequacy of the Disclosure Statement or the confirmation of the Plan.  In addition, the

Publication Notice will provide sufficient notice to persons who did not otherwise receive notice pursuant to the Combined Notice.

**F.**     **PROCEDURES IN RESPECT OF THE ASSUMPTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES PURSUANT TO THE PLAN**

59.     The Plan provides that, except as otherwise provided in the Plan, as of the Effective Date, the Debtors shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Court, unless such Executory Contract or Unexpired Lease:  (i) was assumed or rejected previously by such Debtor; (ii) expired or terminated pursuant to its own terms prior to the Effective Date; (iii) is the subject of a motion to reject filed on or before the Effective Date or (iv) is included on the Schedule of Rejected Contracts which may be amended from time to time by the Debtors with the consent of the Ad Hoc Group Advisors (not to be unreasonably withheld) to add or remove Executory Contracts and Unexpired Leases (such amendments to be filed and served on a further Plan Supplement from time to time), in which case such Executory Contracts and Unexpired Leases shall be deemed rejected on the Effective Date. The assumption of Executory Contracts and Unexpired Leases under the Plan may include the assignment of certain of such contracts to one or more Reorganized Debtors.  The Confirmation Order will constitute an order of the Court approving the above-described assumptions and assignments.

60.     Through various first and second day pleadings, the Debtors are seeking relief to pay certain General Unsecured Claims against the Debtors in the ordinary course of business.  Moreover, the Plan provides that the Reorganized Debtors shall satisfy any monetary defaults under any Executory Contract or Unexpired Lease to be assumed under the Plan, to the

extent required by section 365(b)(1) of the Bankruptcy Code, upon assumption thereof in the ordinary course of business. Accordingly, the Debtors do not intend to file a cure schedule. Rather, the Debtors request Court approval of the following Executory Contract Procedures:

a. The Combined Notice and Member Notice will notify all counterparties to Executory Contracts and Unexpired Leases (i) that such Executory Contracts and Unexpired Leases will be assumed under the Plan, (ii) that any monetary defaults thereunder will be cured in the ordinary course of business, and (iii) of the Executory Contract Objection Deadline (as defined below).

b. If a counterparty to any Executory Contract or Unexpired Lease believes any further amounts are due as a result of such Debtor's monetary default thereunder or objects to the assumption of an Executory Contract or Unexpired Lease under the Plan, including an objection regarding the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), (each, an "<u>Assumption Objection</u>"), it may file an Assumption Objection against the Debtors or Reorganized Debtors, as applicable, subject to all defenses the Debtors or Reorganized Debtors may have with respect to such Assumption Objection.

c. The Debtors, with the consent of the Required Consenting Creditors (not to be unreasonably withheld), or the Reorganized Debtors, as applicable, may settle any Assumption Objections without any further notice to or action, order, or approval of the Court.

d. All rights of a counterparty to assert that further amounts are due as a result of a Debtor's monetary default under an Executory Contract or Unexpired Lease are preserved after the Effective Date and can be asserted in the ordinary course of business and in accordance with the terms of the applicable Executory Contract or Unexpired Lease.

e. Any Assumption Objection must be filed with the Court on or before **<u>4:00 p.m. (prevailing Eastern Time) on May 23, 2025</u>** (the "<u>Executory Contract Objection Deadline</u>"), or such other deadline as may be established by the Court.

f. The Debtors also request that the Court direct that any Assumption Objections:

    i. be in writing;

    ii. conform to the applicable Bankruptcy Rules and the Local Rules;

    iii. set forth the name of the objecting party, the basis for the objection and the specific grounds therefor;

    iv. be filed with the Court, together with a proof of service, on or before the Executory Contract Objection Deadline; and

      v.  be served on the Notice Parties.

g.  The Debtors (with the reasonable consent of the Required Consenting Creditors) or Reorganized Debtors, as applicable, reserve the right at any time to move to reject any Executory Contract or Unexpired Lease based upon the existence of any unresolved dispute regarding the assumption of such Executory Contract or Unexpired Lease or these Executory Contract Procedures, or upon a resolution of such dispute that is unfavorable to the Debtors or Reorganized Debtors.

h.  Finally, the Debtors request that the Court authorize the Debtors to file replies to any timely-filed objections or responses by **12:00 p.m. (prevailing Eastern Time) on June 12, 2025**, or two (2) business days prior to the Combined Hearing.

61.      Any counterparty to an Executory Contract or Unexpired Lease that did not timely object to the proposed assumption of such Executory Contract or Unexpired Lease by the Executory Contract Objection Deadline will be deemed to have consented to such assumption. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Court.

62.      The Debtors respectfully submit that the Executory Contract Procedures are appropriate under the circumstances. Pursuant to the Executory Contract Procedures, the Debtors' Solicitation Agent will serve the Combined Notice on all known counterparties to Executory Contracts and Unexpired Leases within three (3) business days following the entry of the Proposed Order (or as soon as reasonably possible thereafter). The Combined Notice will alert such counterparties that all Executory Contracts and Unexpired Leases with the Debtors will be assumed under the Plan and that any monetary defaults thereunder will be satisfied upon assumption thereof in the ordinary course of business. The Combined Notice will be provided to such counterparties promptly following the entry of the Proposed Order, providing such parties with at least fourteen (14) days' notice of the deadline to object to the proposed treatment of the applicable Executory Contract or Unexpired Lease. This process is designed to facilitate a prompt

and efficient completion of the restructuring while also affording counterparties adequate time to voice any concerns regarding the assumption of their Executory Contracts and Unexpired Leases.

**G.**     **APPROVAL OF FORM AND MANNER OF NEW NOTES ELECTION & DISTRIBUTION PROCEDURES NOTICE**

63.     As noted above, the Plan provides that eligible Holders of First Lien Claims may elect to receive New Takeback Debt in the form of New Notes, regardless of whether such Holder's First Lien Claims are First Lien Credit Agreement Claims or Senior Secured Notes Claims (a "New Notes Election") if such Holders of First Lien Claims validly make such New Notes Elections.  See Article V.E of the Plan.  If a Holder of First Lien Claims does not make a New Notes Election prior to the New Notes Election Deadline (as defined below), such Holder of First Lien Claims shall be entitled to receive the New Takeback Debt in the form of New Term Loans.

64.     In connection with the New Notes Election, the Debtors propose to utilize the procedures outlined below and in a separate notice to be sent to eligible Holders of First Lien Claims (the "New Notes Election & Distribution Procedures Notice") attached to the Proposed Order as **Exhibit C**.  The Debtors propose to send the New Notes Election & Distribution Procedures Notice to the Holders of First Lien Claims to provide such Holders with instructions and information relating to the New Notes Election and links to the Solicitation Agent's site containing all relevant forms, procedures, and timelines for the election procedures.  The Debtors

seek the Court's approval of such procedures subject to the Debtors' ability to make non-material modifications to such procedures prior to their transmission to such applicable Holders.

65.    The Debtors further propose the setting of the following record date and deadline, which will be included in the New Notes Election & Distribution Procedures Notice:

a.    the proposed establishment of a record date for purposes of determining the Holders of First Lien Credit Agreement Claims eligible to make the New Notes Election, which the Debtors propose to be **June 3, 2025** (the "First Lien Credit Agreement New Notes Election Record Date");[4] and

b.    the establishment of a date by which eligible Holders of First Lien Claims must make the New Notes Election by following the procedures set forth on the New Notes Election & Distribution Procedures Notice, which the Debtors propose to be **June 17, 2025 at 5:00 p.m. (prevailing Eastern Time)** (the "New Notes Election Deadline" and together with the First Lien Credit Agreement New Notes Election Record Date, the "Proposed New Notes Election Dates").

66.    Notwithstanding the foregoing, the Debtors recognize that circumstances may arise that make the foregoing Proposed New Notes Election Dates untenable and, therefore the Debtors reserve the right to propose alternative dates to the Proposed New Notes Election Dates by providing at least two (2) business days' notice to the following parties via email: (i) counsel to any official committee appointed in the Chapter 11 Cases; (ii) counsel to the Ad Hoc Group, (a) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn:

---

[4] Transfers made after the First Lien Credit Agreement New Notes Election Record Date by an eligible Holder of First Lien Credit Agreement Claims that has made the New Notes Election will not be eligible to participate in the election to receive New Term Loans or New Notes. For the avoidance of doubt, only Holders of First Lien Credit Agreement Claims as of the First Lien Credit Agreement New Notes Election Record Date will be eligible to participate in the election.

Scott J. Greenberg, Esq. (sgreenberg@gibsondunn.com), Matthew J. Williams, Esq. (mjwilliams@gibsondunn.com), Jason Z. Goldstein, Esq. (jgoldstein@gibsondunn.com), and Tommy Scheffer, Esq. (tscheffer@gibsondunn.com); and (b) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and Timothy P. Cairns (Tcairns@pszjlaw.com); and (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Benjamin A. Hackman, Esq. (benjamin.a.hackman@usdoj.gov).  Notice of any change to the Proposed New Notes Election Dates will also be filed on the docket of these Chapter 11 Cases.

**H.    EXTENSION AND CONDITIONAL WAIVER OF THE CREDITORS' MEETING AND THE FILING OF SOFAS AND SCHEDULES AND RULE 2015.3 REPORTS**

67.    The Debtors also submit that the circumstances of these Chapter 11 Cases merit an extension, and, ultimately, a waiver, of the requirements that (i) the U.S. Trustee convene the Creditors' Meeting; (ii) the Debtors file the SOFAs and Schedules; and (iii) the Debtors file Rule 2015.3 Reports.  This relief is appropriate under the circumstances because the Debtors began soliciting acceptance of the Plan prepetition and anticipate the near-term confirmation of the Plan and subsequent emergence from chapter 11.

**1)    CREDITORS' MEETING**

68.    While section 341 of the Bankruptcy Code requires the U.S. Trustee to convene and preside at a meeting of creditors, it also allows a court to excuse the requirement of a meeting of creditors or equity holders if a debtor has filed a plan on the petition date and commences solicitation of a plan prior to the commencement of a chapter 11 case.  Specifically, section 341(e) of the Bankruptcy Code provides that:

> Notwithstanding subsections (a) and (b), the court, on the request of
> a party in interest and after notice and a hearing, for cause may order

> that the United States trustee not convene a meeting of creditors or
> equity security holders if the debtor has filed a plan as to which the
> debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e).

69.     Cause exists to grant an extension and conditional waiver of the Creditors' Meeting.  The Debtors filed the Plan contemporaneously with this Motion on the Petition Date and, prior to the filing of these Chapter 11 Cases, the Debtors commenced solicitation of votes to accept or reject the Plan on May 6, 2025.  As a result, the Debtors satisfy the threshold statutory requirement of section 341(e).

70.     As discussed above, the Plan is the result of extensive negotiations with the Consenting Creditors, all of whom were represented by sophisticated counsel and advisors familiar with the chapter 11 process.  As of the Petition Date, pursuant to the Restructuring Support Agreement, the Debtors have already received commitments of support from the Consenting Creditors.  In addition, Holders of General Unsecured Claims will be paid in full or otherwise Unimpaired under the Plan and other contemplated "first day" relief sought by the Debtors.  The Debtors therefore believe that no party in interest will be prejudiced by the lack of a Creditors' Meeting in these Chapter 11 Cases.

71.     For these reasons, the Debtors submit that sufficient "cause" exists to grant an extension of the requirement of a Creditors' Meeting at the present time, with such extension to become a permanent waiver assuming the Plan is confirmed within 70 (seventy) days of the Petition Date (the "Waiver Deadline").

### 2)    SCHEDULES AND STATEMENTS

72.     In addition, for similar reasons as those discussed above, the Debtors also request that the time for filing their SOFAs and Schedules be extended until the Waiver Deadline and to be excused in the event the Plan is confirmed by the Waiver Deadline.  As noted above, all

Holders of Allowed General Unsecured Claims will be Unimpaired.  Consequently, the Debtors do not plan to establish a general bar date in these Chapter 11 Cases.  Accordingly, the SOFAs and Schedules would not serve their traditional purpose in these Chapter 11 Cases and would be of limited utility to most parties in interest.

73.    As a matter of course, the Debtors are already entitled to an extension to twenty-eight (28) days from the Petition Date because the Debtors' Solicitation Agent is maintaining the consolidated creditor matrix as of the Petition Date, and the Debtors have over 200 creditors.  See Del. Bankr. L.R. 1007-1(b).  The Court is authorized to grant the Debtors' further extension "for cause" pursuant to Local Rule 1007-1(b).  Sufficient cause exists here because requiring the Debtors to file Schedules in the first twenty-eight (28) days of these Chapter 11 Cases would divert management's time and attention from ensuring a smooth transition into chapter 11.  The SOFAs and Schedules, even if filed on the current deadline, would be of no real benefit to most parties in interest in these Chapter 11 Cases at that point, but would require a substantial expenditure of time and resources by the Debtors to prepare and file.

74.    Therefore, the Court should only require the Debtors to file SOFAs and Schedules if the Plan is not confirmed within the timetable contemplated by the Debtors and their major constituencies.  The Debtors reserve the right to supplement this Motion and request that any relief granted be without prejudice to the Debtors' ability to seek further extension or modification of the requirements to file Schedules and SOFAs and for the U.S. Trustee to convene the Creditors' Meeting.

### 3)    RULE 2015.3 REPORTS

75.    Finally, the Debtors request that the time for filing the first Rule 2015.3 Report be extended until the Waiver Deadline and waived in the event that the Plan becomes effective on or prior to that date.  Bankruptcy Rule 2015.3(a) provides that a debtor must file

periodic financial reports regarding the value, operations, and profitability of non-debtor entities in which the debtor holds a substantial or controlling interest no later than seven (7) days before the Creditors' Meeting under section 341 of the Bankruptcy Code.  Subsequent Rule 2015.3 Reports are to be filed not less frequently than every six months thereafter until the effective date of a plan or dismissal or conversion of the case.  The purpose of Bankruptcy Rule 2015.3 is "to assist parties in interest [in] taking steps to ensure that the debtor's interest" in an entity in which the debtor holds a substantial or controlling interest "is used for the payment of allowed claims against the debtor."  Pub. L. No. 109-8 § 419(b) (2005).  Pursuant to Bankruptcy Rule 2015.3, the Court may modify a debtor's obligations "for cause."

76.    The Debtors submit that cause exists to extend the deadline to file the first Rule 2015.3 Report and to waive the reporting requirements of Bankruptcy Rule 2015.3 in the event that the Plan is not confirmed on or prior to the Waiver Deadline.  As noted above, the Debtors have already received the support of the Consenting Creditors pursuant to the Restructuring Support Agreement.  As such, requiring the Debtor to file the 2015.3 Reports would be burdensome to the Debtors and their management without serving the stated purpose of Bankruptcy Rule 2015.3, which is to help maximize recoveries to the Debtors' creditors.

77.    The Debtors reserve the right to supplement this Motion and request that any relief granted be without prejudice to the Debtors' ability to seek further extension or modification of the requirements (a) to file Schedules and SOFAs and Rule 2015.3 Reports and (b) for the U.S. Trustee to convene the Creditors' Meeting.  In this regard, the Debtors request that the Court authorize the Debtors to further extend the deadline to file Schedules and SOFAs and

Rule 2015.3 Reports and convene a Creditors' Meeting without filing a supplemental motion so long as the Debtors have procured advance consent from the U.S. Trustee.

## RESERVATION OF RIGHTS

78.     Nothing contained in this Motion is an admission of the validity of any claim against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  If the Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim.  In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims; rather, the Debtors will make such payments in their discretion.

## WAIVER OF BANKRUPTCY RULE 6004

79.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and of the fourteen (14) day stay under Bankruptcy Rule 6004(h).  As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  The Debtors thus submit that the requested waiver of the notice requirements of Bankruptcy Rule 6004(a) and the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h) is appropriate, to the extent such notice requirements and stay apply.

## NOTICE

80.     The Debtors will provide notice of this Motion to (i) the Office of the United States Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the United States Securities and Exchange Commission; (v) counsel to the Ad Hoc Group; (vi) counsel to the Prepetition Agent; (vii) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates (on a consolidated basis); and

(viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors will serve copies of this Motion and an order entered in respect of this Motion as required by Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, granting the relief requested herein and such other relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated:  May 6, 2025            **YOUNG    CONAWAY    STARGATT    &**
        Wilmington, Delaware   **TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Edmon L. Morton (No. 3856)
Sean M. Beach (No. 4070)
Shella Borovinskaya (No. 6758)
Carol E. Thompson (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email: emorton@ycst.com
sbeach@ycst.com
sborovinskaya@ycst.com
cthompson@ycst.com

- and -

**SIMPSON THACHER & BARTLETT LLP**
Elisha D. Graff (*pro hac vice pending*)
Moshe A. Fink (*pro hac vice pending*)
Rachael L. Foust (*pro hac vice pending*)
Zachary J. Weiner (*pro hac vice pending*)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
Email: egraff@stblaw.com
moshe.fink@stblaw.com
rachael.foust@stblaw.com
zachary.weiner@stblaw.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WW INTERNATIONAL, INC., *et al.*,[1] | Case No. 25-[__] (  ) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. ___ |

**ORDER (I) SCHEDULING COMBINED HEARING ON ADEQUACY OF DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN; (II) FIXING DEADLINE TO OBJECT TO THE DISCLOSURE STATEMENT AND THE PLAN; (III) APPROVING PREPETITION SOLICITATION PROCEDURES AND FORM AND MANNER OF NOTICE OF COMMENCEMENT, COMBINED HEARING AND OBJECTION DEADLINE; (IV) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (V) CONDITIONALLY (A) DIRECTING THE UNITED STATES TRUSTEE NOT TO CONVENE SECTION 341(A) MEETING OF CREDITORS AND (B) WAIVING REQUIREMENT OF FILING STATEMENTS OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES AND RULE 2015.3 REPORTS; AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases for entry of an order (this "Order"), (i) scheduling the Combined Hearing; (ii) establishing the Objection Deadline; (iii) approving the Solicitation Procedures, the Combined Notice, the Member Notice, the Publication Notice, the Ballots, and the New Notes Election & Distribution Procedures Notice; (iv) approving the Executory Contract Procedures, including the Executory Contract Objection Deadline, (v) conditionally (a) directing the U.S. Trustee to not convene the Creditors' Meeting and

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are WW International, Inc. (0273), WW North America Holdings, LLC (6141), WW Canada Holdco, Inc. (5680), WW.com, LLC (4196), W Holdco, Inc. (4087), WW Health Solutions, Inc. (3859), Weekend Health, Inc. (6812), and WW NewCo, Inc. (N/A).  The Debtors' headquarters is located at 675 Avenue of the Americas, 6th Floor, New York, NY 10010.

[2]    Capitalized terms used but not otherwise herein defined shall have the meanings given to such terms in the Motion.

(b) excusing the requirement that the Debtors file SOFAs and Schedules and Rule 2015.3 Reports, and (vi) granting related relief, all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding under U.S.C. § 157(b)(2); and this Court having authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and upon the First Day Declaration and the record of the Hearing and all the proceedings before this Court; and the legal and factual bases set forth in the Motion and at the Hearing having established just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is hereby

## ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Combined Hearing (at which time this Court will consider, among other things, the adequacy of the Disclosure Statement and confirmation of the Plan) will be held, **on _____ _____, 2025 at _____ (prevailing Eastern Time)**.  The Combined Hearing may be continued from time to time by the Debtors without further notice other than adjournments announced in open court or in the filing of a notice or hearing agenda in these Chapter 11 Cases and providing notice of such adjourned date(s) on the electronic case filing docket.

3.     Any responses or objections to the adequacy of the Disclosure Statement or confirmation of the Plan must: (i) be in writing; (ii) conform to the applicable Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party, the amount and nature of such party's Claim or Interest, the basis for the objection and the specific grounds thereof; and (iv) be filed with this Court, together with proof of service, no later than **4:00 p.m. (prevailing Eastern Time) on June 6, 2025** (the "Objection Deadline").   Any responses or objections to the assumption of Executory Contracts and Unexpired Leases must: (i) be in writing; (ii) conform to the applicable Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof; and (iv) be filed with this Court no later than **4:00 p.m. (prevailing Eastern Time) on May 23, 2025** (the "Executory Contract Objection Deadline").  In addition to being filed with this Court, any responses or objections must be served on the following parties so as to be received by such deadlines: (i) WW International, Inc., 675 Avenue of the Americas, 6th Floor, New York, New York 10010, Attn: Jacqueline Cooke, Esq. (jacquie.cooke@ww.com); (ii) proposed co-counsel for the Debtors, (a) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn:  Elisha D. Graff, Esq. (egraff@stblaw.com), Moshe A. Fink, Esq. (moshe.fink@stblaw.com), Rachael L. Foust,      Esq.      (rachael.foust@stblaw.com),      and      Zachary      J.      Weiner,      Esq. (zachary.weiner@stblaw.com); (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn. Edmon L. Morton, Esq. (emorton@ycst.com), Sean M. Beach, Esq. (sbeach@ycst.com), Shella Borovinskaya, Esq. (sborovinskaya@ycst.com), and Carol E. Thompson, Esq. (cthompson@ycst.com); (iii) counsel to any official committee appointed in the Chapter 11 Cases; (iv) counsel to the Ad Hoc Group, (a) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn: Scott J.

3

Greenberg, Esq. (sgreenberg@gibsondunn.com), Matthew J. Williams, Esq. (mjwilliams@gibsondunn.com), Jason Z. Goldstein, Esq. (jgoldstein@gibsondunn.com), and Tommy Scheffer, Esq. (tscheffer@gibsondunn.com); and (b) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and Timothy P. Cairns (Tcairns@pszjlaw.com); (v) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Benjamin A. Hackman, Esq. (benjamin.a.hackman@usdoj.gov); and (vi) any other party entitled to notice under Bankruptcy Rule 2002.

4.    Any objections not timely filed and served in the manner set forth in this Order shall not be considered and shall be overruled.

5.    The Debtors and any other parties supporting confirmation of the Plan may file reply briefs in response to any responses or objections to the assumption of Executory Contracts and Unexpired Leases, the adequacy of the Disclosure Statement, or confirmation of the Plan by 12:00 p.m. (prevailing Eastern Time) on June 12, 2025 or two (2) business days before the Combined Hearing.

6.    The Proposed Confirmation Schedule, as set forth below, is hereby approved in its entirety, and this Court hereby finds the Proposed Confirmation Schedule is consistent with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

| Event | Date/Deadline |
|---|---|
| Voting Record Date | April 30, 2025 |
| Commencement of Solicitation | May 6, 2025 |
| Petition Date | May 6, 2025 |
| Combined Hearing Notice, Notices of Non-Voting Status, Member Notice | Within three (3) business days, or as soon as reasonably practicable, after entry of the Proposed Order |
| Executory Contract Objection Deadline | May 23, 2025 at 4:00 p.m. (prevailing Eastern Time) |
| Plan Supplement Filing Deadline | May 30, 2025 at 11:59 p.m. (prevailing Eastern Time) |
| First Lien Credit Agreement New Notes Election Record Date | June 3, 2025 |
| New Notes Election Period Commencement Date | June 4, 2025, prior to 10:00 a.m. (prevailing Eastern Time) |
| Plan/Disclosure Statement Objection Deadline | June 6, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Voting Deadline | June 6, 2025, at 5:00 p.m. (prevailing Eastern Time) |
| Deadline to File Proposed Confirmation Order | June 12, 2025, at 12:00 p.m. (prevailing Eastern Time), or two (2) business days prior to the Combined Hearing |
| Deadline to File Brief in Support of Confirmation, Including Plan/Disclosure Statement Replies (including, to the extent applicable, replies to any Assumption Objections) | June 12, 2025, at 12:00 p.m. (prevailing Eastern Time), or two (2) business days prior to the Combined Hearing |
| Combined Hearing | June 16, 2025, at a time to be determined, subject to Court availability |
| New Notes Election Deadline | June 17, 2025, at 5:00 p.m. (prevailing Eastern Time) |

7.     The Debtors are authorized to combine the notice of the Combined Hearing and the Objection Deadline (and related procedures) with the notice of commencement of these Chapter 11 Cases.

8.     Notice of the Combined Hearing as proposed in the Motion and the form of Combined Notice, substantially the form attached hereto as **Exhibit 1**, shall be deemed good and sufficient notice of the Combined Hearing and the assumption of Executory Contracts and

Unexpired Leases pursuant to the Plan, and no further notice need be given.  Additionally, for the Non-Voting Holders, the Combined Notice shall include the applicable notice of non-voting status for Impaired Classes that are deemed to reject the Plan and Unimpaired Classes that are deemed to accept the Plan, as well as a form to opt-in to the releases contemplated in the Plan (the "Opt-In Form").  The Debtors shall cause the Solicitation Agent to mail a copy of the Combined Notice to the parties set forth in the Motion by no later than three (3) business days following the entry of this Order or as soon as reasonably practicable thereafter.  The notice procedures set forth in this paragraph comply with the requirements of the Bankruptcy Code and the Bankruptcy Rules and constitute good and sufficient notice of the commencement of the Chapter 11 Cases, the Combined Hearing, the Objection Deadline, and the procedures for objecting to the adequacy of the Disclosure Statement and to confirmation of the Plan, and are hereby approved.

9.     The Debtors are authorized to mail the Combined Notice, which shall include a notice of nonvoting status to the Non-Voting Holders, except for the Members, in lieu of sending such Non-Voting Holders a copy of the Plan or the Disclosure Statement, and the requirements under the Bankruptcy Rules or the Local Rules, including Bankruptcy Rule 3017(d), to transmit a copy of the Plan and the Disclosure Statement to Non-Voting Holders are hereby waived with respect to such Non-Voting Holders; *provided however*, that the Debtors will do so upon request from such parties.

10.     No later than three (3) business days following the entry of this Order or as soon as reasonably practicable thereafter, the Debtors are authorized to either electronically mail or hard-copy mail, where email addresses are unavailable, or the Member Notice, substantially in the form attached to the Motion as **Exhibit 2**, to the Members at the physical or e-mail addresses maintained in the Debtors' books and records, in lieu of sending the Members the Combined

Notice, the Plan or the Disclosure Statement, and the requirements under the Bankruptcy Rules or the Local Rules, including Bankruptcy Rule 3017(d), to transmit a copy of the Plan and the Disclosure Statement to the Members are hereby waived with respect to such Members, provided however, that the Debtors will do so upon request from such parties.

11.     The Debtors are granted a waiver of the strict notice requirement with respect to Holders of Intercompany Claims and Intercompany Interests in Classes 5 and 6.

12.     The Debtors are authorized, but not directed, pursuant to Bankruptcy Rule 2002(a), to provide the Publication Notice of the Combined Hearing and Objection Deadline (substantially in the form attached to the Motion as **Exhibit 3**) as soon as reasonably practicable following the entry of this Order in the national edition of *The New York Times* or another world-wide and/or nationally-circulated newspaper and/or regional newspapers and electronically on the Debtors' case information website (located at https://restructuring.ra.kroll.com/WeightWatchers/), and file the same on this Court's docket, which Publication Notice shall constitute good and sufficient notice of the Combined Hearing and the Objection Deadline (and related procedures) to persons who do not otherwise receive the Combined Notice by mail.

13.     The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages in soliciting acceptances and rejections of the Plan as set forth in the Motion satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and are conditionally approved pending final approval through the Confirmation Order and the rights of parties in interest to object to the Solicitation Procedures in connection with confirmation of the Plan are reserved.

14.     The Ballots, substantially in the forms attached to the Motion as **Exhibit B-1**, **Exhibit B-2**, and **Exhibit B-3** are conditionally approved pending final approval

through the Confirmation Order and the rights of parties in interest to object to the Ballots in connection with confirmation of the Plan are reserved.

15.     The Executory Contract Procedures are conditionally approved pending final approval through the Confirmation Order and the rights of parties in interest to object to the Executory Contract Procedures in connection with confirmation of the Plan are reserved.

16.     The Debtors shall serve each non-Debtor party to an Executory Contract or Unexpired Lease that the Debtors propose to assume with the Combined Notice substantially in the form attached hereto as **Exhibit 1**.

17.     The procedures and assumptions used for tabulating votes to accept or reject the Plan as set forth in the Motion and as provided by the Ballots are conditionally approved pending final approval through the Confirmation Order and the rights of parties in interest to object to such procedures and assumptions in connection with confirmation of the Plan are reserved.

18.     The New Notes Election & Distribution Procedures Notice, substantially in the form attached to the Motion as **Exhibit C**, including the election procedures and the New Notes Election Dates, to be used for eligible Holders of First Lien Claims to elect to receive New Takeback Debt in the form of New Notes as set forth in the Motion is conditionally approved pending final approval through the Confirmation Order and the rights of parties in interest to object to such election procedures in connection with confirmation of the Plan are reserved.

19.     The Creditors' Meeting shall be deferred unless the Plan is not confirmed on or before the Waiver Deadline, without prejudice to the Debtors' rights to seek further extensions thereof.  The U.S. Trustee shall not be required to convene a Creditors' Meeting provided that Confirmation occurs on or before the Waiver Deadline.

20. Cause exists to extend the time by which the Debtors must file SOFAs and Schedules and Rule 2015.3 Reports until the Waiver Deadline, without prejudice to the Debtors' rights to request further extensions thereof; *provided*, that the requirement that the Debtors file SOFAs and Schedules and Rule 2015.3 Reports shall be permanently excused effective upon the date of confirmation of the Plan.

21. Without limiting the foregoing, the Debtors may further extend the deadline to convene the Creditors' Meeting and file Schedules and SOFAs and Rule 2015.3 Reports without filing a supplemental motion, and upon further order from this Court submitted on certification of counsel filed on the docket and served on the Notice Parties, with prior notice to and reasonable agreement of the U.S. Trustee and any official committee appointed in these Chapter 11 Cases, if any (which notice may be by email); provided, further, that this relief is without prejudice to the Debtors' rights to request further extensions thereof by motion (including if the Debtors, the U.S. Trustee, and any official committee appointed in these cases, if any, are unable to reach agreement pursuant to the preceding proviso).

22. Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of relief granted in this Order and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

23. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion.

24. The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order in accordance with the Motion.

25.     Nothing in the Motion or this Order waives or modifies the requirements of the Restructuring Support Agreement, including, without limitation, the consent and consultation rights contained therein.

26.     Notwithstanding anything to the contrary contained herein, any payment to be made hereunder, and any authorization contained herein, shall be subject to any interim and final orders, as applicable, approving the use of such cash collateral and/or the Debtors' entry into any postpetition financing facilities or credit agreements, and any budgets in connection therewith governing any such postpetition financing and/or use of cash collateral (each such order, a "Cash Collateral Order").  To the extent there is any inconsistency between the terms of a Cash Collateral Order and any action taken or proposed to be taken hereunder, the terms of the Cash Collateral Order shall control.

27.     This Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

28.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

## <u>EXHIBIT 1 TO ORDER</u>

**Proposed Combined Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WW INTERNATIONAL, INC., *et al.*,[1] | Case No. 25-[__] (  ) |
| Debtors. | (Jointly Administered) |
| | **Ref Docket No. ____** |

**PLEASE BE ADVISED THAT ARTICLE XI OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW.  YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE XI OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.  HOLDERS OF CLAIMS WHO ARE UNIMPAIRED BUT DO NOT TIMELY OPT IN TO THE RELEASES BY SUBMITTING THE OPT-IN ELECTION FORM ATTACHED HEREWITH MAY NOT PROVIDE OR RECEIVE SUCH RELEASES.  HOLDERS OF CLAIMS OR INTERESTS WHO ARE DEEMED TO REJECT THE PLAN BUT DO NOT TIMELY OPT IN TO THE RELEASES BY SUBMITTING THE OPT-IN ELECTION FORM ATTACHED HEREWITH MAY NOT PROVIDE OR RECEIVE SUCH RELEASES.  HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN THAT DO NOT TIMELY OPT IN TO THE RELEASES BY SUBMITTING THE OPT-IN ELECTION ON THEIR RESPECTIVE BALLOTS MAY NOT PROVIDE OR RECEIVE SUCH RELEASES.**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are WW International, Inc. (0273), WW North America Holdings, LLC (6141), WW Canada Holdco, Inc. (5680), WW.com, LLC (4196), W Holdco, Inc. (4087), WW Health Solutions, Inc. (3859), Weekend Health, Inc. (6812), and WW NewCo, Inc. (N/A).  The Debtors' headquarters is located at 675 Avenue of the Americas, 6th Floor, New York, NY 10010.

**NOTICE OF (I) COMMENCEMENT OF CHAPTER 11 CASES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, (II) COMBINED HEARING TO CONSIDER (A) ADEQUACY OF THE DISCLOSURE STATEMENT AND (B) CONFIRMATION OF THE PLAN, (III) ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (IV) OBJECTION DEADLINES, [(V)  NOTICE OF NON-VOTING STATUS OF HOLDERS OF IMPAIRED CLAIMS OR INTERESTS DEEMED TO REJECT THE PLAN AND UNIMPAIRED CLAIMS OR INTERESTS DEEMED TO ACCEPT THE PLAN AND (VI) OPT-IN ELECTION FORM FOR HOLDERS IN NON-VOTING CLASSES][2]**

**-AND-**

**SUMMARY OF THE PLAN**

**NOTICE IS HEREBY GIVEN** as follows:

1.      On May 6, 2025 (the "Petition Date"), WW International, Inc. ("WeightWatchers") and its affiliated debtors and debtors in possession (collectively, the "Debtors") each commenced a case under chapter 11 (collectively, the "Chapter 11 Cases") of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.      On the Petition Date, the Debtors filed a joint "prepackaged" plan of reorganization [Docket No. [●]] (the "Plan") and a proposed disclosure statement [Docket No. [●]] (the "Disclosure Statement") pursuant to sections 1125 and 1126 of the Bankruptcy Code. Solicitation of the Plan commenced prior to the filing of these Chapter 11 Cases on May 6, 2025. Copies of the Plan, the Disclosure Statement, and related documents may be obtained free of charge by visiting the website maintained by the Debtors' notice, claims and solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Solicitation Agent"), at https://restructuring.ra.kroll.com/WeightWatchers/ or by contacting the Debtors' proposed counsel (Debbie Laskin, paralegal, tel: 302-571-6600; dlaskin@ycst.com).  You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: https://www.deb.uscourts.gov.  Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

3.      The Plan contemplates, among other things, a comprehensive financial restructuring of the Company that will reduce the Company's outstanding funded indebtedness by approximately $1.15 billion and annual interest expense by approximately $50 million.  The restructuring contemplated by the Restructuring Support Agreement and the Plan will allow the Company to significantly strengthen its financial foundation, further invest in its growth strategy, and better serve its millions of members around the world.

4.      Critically, as this restructuring is a pure "balance sheet restructuring," the Company does not expect the transactions set forth in the Plan to have any impact on the

---

[2] Solicitation Agent to tailor to recipient, as applicable.

Company's valued customers (typically referred to as members or subscribers), product offerings, programming, vendors, employees or operations.  Key components of the Plan are as follows:

- Holders of First Lien Claims shall receive their *pro rata* share, of (i) the New Takeback Debt, *provided that* the New Term Loans Creditors shall receive the New Term Loans and the New Notes Creditors shall receive the New Notes; and (ii) subject to the proviso in the next sentence, 91% of the New Common Equity, subject to dilution by the MIP.  Under the Bankruptcy Code, the Holders of First Lien Claims are entitled to 100% of the New Common Equity, but the Holders of the First Lien Claims, by entering into the Restructuring Support Agreement, have agreed to voluntarily reallocate 9% of the New Common Equity (pre-dilution from the MIP) to Holders of Existing Equity Interests (the "Initial Reallocation"); provided that, if the Milestones set forth in the Restructuring Support Agreement have not been met (other than as a result of the breach of the Restructuring Support Agreement by the Consenting Creditors), the 9% of New Common Equity (pre-dilution from the MIP) voluntarily reallocated to the Holders of the Existing Equity Interests shall be automatically forfeited to the Holders of First Lien Claims, who shall then receive 100% of the New Common Equity on a *pro rata* basis on the Effective Date (the "Subsequent Reallocation").

- Holders of Existing Equity Interests shall have all Existing Equity Interests cancelled, released, and extinguished and of no further force and effect and the Holders of Existing Equity Interests shall be voluntarily allocated 9% of the New Common Equity on a *pro rata* basis (pre-dilution from the MIP), from New Common Equity that the Holders of the First Lien Claims would otherwise be entitled to under the Bankruptcy Code pursuant to the Initial Reallocation;  *provided that*, if the Milestones set forth in the Restructuring Support Agreement have not been met (other than as a result of the breach of the Restructuring Support Agreement by the Consenting Creditors), the 9% of New Common Equity voluntarily reallocated to the Holders of the Existing Equity Interests shall be automatically forfeited to the Holders of First Lien Claims, who shall then receive 100% of the New Common Equity (pre-dilution from the MIP) on a *pro rata* basis on the Effective Date, pursuant to the Subsequent Reallocation.

- All Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims shall be paid in full in Cash or receive such other treatment that renders such Claims Unimpaired.

- With the consent of the Required Consenting Creditors (not to be unreasonably withheld), All Allowed Other Secured Claims shall be paid in full in Cash or receive such other treatment that renders such Claims Unimpaired

- All outstanding and undisputed General Unsecured Claims will be Unimpaired by the restructuring transactions contemplated by the Plan unless otherwise agreed to by the Debtors and the Holder of such General Unsecured Claim with the consent of the Required Consenting Creditors (not to be unreasonably withheld).

- Each Intercompany Claim and each Intercompany Interest, at the option of the Debtors, with the consent of the Required Consenting Creditors (not to be unreasonably withheld), shall be (i) Unimpaired and Reinstated or (ii) Impaired and canceled and released without any distribution.

- The Plan includes customary releases and exculpatory and injunctive protection, including consensual third-party releases in favor of the Released Parties, which includes the

Debtors, the Reorganized Debtors, the Agents, the Consenting Creditors, all Holders of Claims and Interests that elect to opt in to the Third-Party Releases set forth in the Plan, and each Related Party of the foregoing parties, *provided that* that in each case, an Entity or Person shall not be a Released Party if it timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the third-party releases contained in the Plan that is not withdrawn or otherwise resolved before Confirmation.

5.     **[PLEASE TAKE FURTHER NOTICE** that, because of the nature and treatment of your Claim or Interest under the Plan, **you are not entitled to vote on the Plan**. Specifically, under the terms of the Plan, you are a Holder of a Claim or Interest (as currently asserted against the Debtors) that is in a Class that is either Impaired and conclusively deemed to have rejected the Plan or Unimpaired and conclusively deemed to have accepted the Plan. Thus, pursuant to section 1126(g) of the Bankruptcy Code, you are **not** entitled to vote on the Plan.][3]

## I.     HEARING TO CONSIDER ADEQUACY OF DISCLOSURE STATEMENT, CONFIRMATION OF THE PLAN, AND ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.     A combined hearing to consider adequacy of the Disclosure Statement, confirmation of the Plan, the assumption of Executory Contracts and Unexpired Leases, any objections to any of the foregoing and any other matter that may properly come before the Court, will be held before the Honorable [_____], United States Bankruptcy Judge, in Courtroom No. [__] of the United States Bankruptcy Court, 824 North Market Street, [__]th Floor, Wilmington, Delaware 19801, on _____ ____, 2025 at _____ __.m. (prevailing Eastern Time) or as soon thereafter as counsel may be heard (the "Combined Hearing"). The Combined Hearing may be adjourned from time to time without further notice other than adjournments announced in open court or in the filing of a notice or hearing agenda in these Chapter 11 Cases, and will be available on the electronic case filing docket and the Solicitation Agent's website at https://restructuring.ra.kroll.com/WeightWatchers/.

7.     Any responses or objections to the Disclosure Statement and/or the Plan must (i) be in writing; (ii) conform to the applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); (iii) set forth the name of the objecting party, the basis for the objection and the specific grounds thereof; and (iv) be filed with the Court, no later than **4:00 p.m. (prevailing Eastern Time) on June 6, 2025**. In addition to being filed with the Court, any responses or objections must be served on the following parties (collectively, the "Notice Parties") so as to be received by such deadline:

a)     Proposed co-counsel for the Debtors, (a) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn: Elisha D. Graff, Esq. (egraff@stblaw.com), Moshe A. Fink, Esq. (moshe.fink@stblaw.com), Rachael L. Foust, Esq. (rachael.foust@stblaw.com), and Zachary J. Weiner, Esq. (zachary.weiner@stblaw.com); (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn.

---

[3]     Solicitation Agent to tailor to recipient, as applicable.

Edmon L. Morton, Esq. (emorton@ycst.com), Sean M. Beach, Esq. (sbeach@ycst.com), Shella Borovinskaya, Esq. (sborovinskaya@ycst.com), and Carol E. Thompson, Esq. (cthompson@ycst.com);

b)      the Office of the United States Trustee for the District of Delaware, 844 North King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Benjamin A. Hackman, Esq. (benjamin.a.hackman@usdoj.gov);

c)      counsel to the Ad Hoc Group, (a) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn: Scott J. Greenberg, Esq. (sgreenberg@gibsondunn.com), Matthew J. Williams, Esq. (mjwilliams@gibsondunn.com), Jason Z. Goldstein, Esq. (jgoldstein@gibsondunn.com), and Tommy Scheffer, Esq. (tscheffer@gibsondunn.com); and (b) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and Timothy P. Cairns (Tcairns@pszjlaw.com);

d)      counsel to any statutory committee appointed in these Chapter 11 Cases; and

e)      any other party entitled to notice under Bankruptcy Rule 2002.

**UNLESS A RESPONSE OR AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT SHALL NOT BE CONSIDERED BY THE COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS IN ARTICLE XI OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**II.     NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

8.      You or one of your affiliates may be a counterparty to one or more contracts or leases that may be an Executory Contract or Unexpired Lease with one or more of the Debtors. Except as otherwise provided in the Plan, as of the Effective Date, ***the Debtors shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code***, without the need for any further notice or action, order or approval of the Court, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by such Debtor; (2) expired or terminated pursuant to its own terms prior to the Effective Date; or (3) is the subject of a motion to reject filed on or before the Effective Date.

9.      Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or assumption and assignment, as applicable, of such Executory Contracts or Unexpired Leases as provided for in the Plan, pursuant to sections 365(a) and 1123

of the Bankruptcy Code effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

10.    **ANY COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT DOES NOT TIMELY OBJECT TO THE PROPOSED ASSUMPTION OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE BY THE EXECUTORY CONTRACT OBJECTION DEADLINE WILL BE DEEMED TO HAVE CONSENTED TO SUCH ASSUMPTION. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE COURT.**

11.    **Objections to the Assumption of Executory Contracts and Unexpired Leases:** If you believe any further amounts are due as a result of a Debtor's monetary default under an Executory Contract or Unexpired Lease or you wish to object to the assumption of an Executory Contract or Unexpired Lease under the Plan, including an objection regarding the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) (each, an "Assumption Objection"), you may assert an Assumption Objection against the Debtor or Reorganized Debtors, as applicable, subject to all defenses the Debtors or Reorganized Debtors may have with respect to such Assumption Objection. Your response or objection to the assumption of an Executory Contract or Unexpired Lease must: (a) be in writing; (b) conform to the applicable Federal Rules and the Local Rules; (c) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof and (iv) be filed with the Court and served on the Notice Parties so as to be received by **May 23, 2025 at 4:00 p.m. (prevailing Eastern Time)** (or such other date as may be established by the Court) (the "Executory Contract Objection Deadline"). Any counterparty to an assumed Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of such Executory Contract or Unexpired Lease, including an objection regarding the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), prior to the Executory Contract Objection Deadline (i) shall be deemed to have assented to such proposed assumption and shall be deemed to have forever released and waived such Assumption Objection and shall be precluded from being heard at the Confirmation Hearing with respect to such objection; and (ii) shall be forever barred from imposing or charging against any Reorganized Debtor any accelerations, increases or any other fees as a result of any assumption pursuant to the Plan. For the avoidance of doubt, all rights of a counterparty to assert that further amounts are due as a result of a Debtor's monetary default under an Executory Contract or Unexpired Lease are preserved after the Effective Date and can be asserted in the ordinary course of business, regardless of whether such counterparty files an Assumption Objection, subject to all defenses the Debtors or Reorganized Debtors may have with respect to such claims. You do not need to file an Assumption Objection to preserve your claim after the Effective Date that further amounts are due as a result of a Debtor's monetary default under an Executory Contract or Unexpired Lease.

**UNLESS A RESPONSE OR AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

## III.    SUMMARY OF THE PLAN[4]

12.    **As set forth above, on the Petition Date, the Debtors announced the consensual Plan with the Consenting Creditors, which will significantly reduce their debt. It was agreed by the Debtors and the Consenting Creditors to consummate the Plan through a prepackaged chapter 11 filing. The parties' agreement significantly reduces the Debtors' debt burden and annual interest expense and the Debtors believe that consummation of the Restructuring Transactions will allow the Company to significantly strengthen its financial foundation, further invest in its growth strategy, and better serve its millions of members around the world.**

13.    **Chapter 11 is a section of the Bankruptcy Code that allows companies to reorganize while continuing to operate their businesses in the ordinary course. The filing is "prepackaged" and only impacts certain of WeightWatchers' U.S. entities. A prepackaged filing is advantageous, as it means that the Debtors have already reached agreement with lenders and noteholders regarding how the transaction should be implemented. This not only ensures alignment and support among the affected parties, but also means business can continue without interruption in the U.S. and globally and that the Company will move through this process swiftly, with the goal of emerging from the court-supervised reorganization process in approximately 45 days, if not sooner.**

14.    **Here is what the Plan and the chapter 11 filing means for the Debtors' members, vendors, and employees. As this restructuring is a pure "balance sheet restructuring," the Company does not expect the transactions set forth in the Plan to have any impact on the Company's valued members, product offerings, programming, vendors, employees or operations.**

15.    The table below provides a summary of the classification, description, treatment, and anticipated recovery of Claims and Interests under the Plan. This information is provided in summary form below for illustrative purposes only and is qualified in its entirety by reference to the provisions of the Plan. For a more detailed description of the treatment of Claims and Interests under the Plan and the sources of satisfaction for Claims and Interests, see Section VI of the Disclosure Statement, entitled "Summary of Certain Issues Relating to the Chapter 11 Cases, the Plan, Voting and Election Procedures."

---

[4]    The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. For a more detailed description of the Plan, please refer to the Disclosure Statement. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

| Class | Status | Entitled to Vote | Estimated Amount of Claims in Class[5] | Estimated Recovery (%) |
|---|---|---|---|---|
| Class 1: Other Secured Claims | Unimpaired | No (presumed to accept) | N/A | 100% |
| Class 2: Other Priority Claims | Unimpaired | No (presumed to accept) | N/A | 100% |
| **Class 3: First Lien Claims** | **Impaired** | **Yes** | **$1,620,000,000, plus interest, fees, costs, charges, and other amounts arising under or in connection with the First Lien Claims** | **34% - 57%** |
| Class 4: General Unsecured Claims | Unimpaired | No (deemed to accept) | $38,100,000 | 100% |
| Class 5: Intercompany Claims | Unimpaired / Impaired | No (deemed to accept); Yes (deemed to reject) | N/A | 100% / 0% |
| Class 6: Intercompany Interests | Unimpaired / Impaired | No (deemed to accept); Yes (deemed to reject) | N/A | 100% / 0% |
| Class 7: Existing Equity Interests | Impaired | No (deemed to reject) | 80,280,308 of outstanding shares of Existing Equity Interests and any restricted stock units, performance stock units or options deemed to be vested on the Effective Date in accordance with the Plan | *Pro Rata* share of 9% of the New Common Equity, subject to dilution by the MIP, provided that if the Milestones (as defined in the Restructuring Support Agreement) have not been met (other than as a result of the breach of the Restructuring Support Agreement by the Consenting Creditors) of the Restructuring Support Agreement, the 9% of New Common Equity voluntarily reallocated to the Holders of the Existing Equity Interests shall be automatically |

---

[5]    The amounts set forth in this chart reflect the Debtors' most current estimates of projected claim amounts.

| Class | Status | Entitled to Vote | Estimated Amount of Claims in Class[5] | Estimated Recovery (%) |
|---|---|---|---|---|
| | | | | forfeited to the Holders of First Lien Claims |

## IV.    NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN[6]

PLEASE BE ADVISED THAT ARTICLE XI OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW.  YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE XI OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.

### *ARTICLE XI.D. RELEASES BY THE DEBTORS*

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives,**

---

[6]    "<u>Released Party</u>" means, collectively each of, and in each case in its capacity as such: (i) each Debtor; (ii) each Reorganized Debtor; (iii) each Agent; (iv) the Consenting Creditors; (v) all Holders of Claims and Interests that elect to opt in to the third party releases set forth in Article XI of the Plan and (vi) each Related Party of each Entity or Person in clause (i) through clause (v); provided that in each case, an Entity or Person shall not be a Released Party if it timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the third party releases contained in the Plan that is not withdrawn or otherwise resolved before Confirmation.

"<u>Releasing Party</u>" means, collectively each of, and in each case in its capacity as such: (i) the Released Parties; (ii) all Holders of Claims and Interests that elect to "opt in" to the third-party releases set forth in Article XI of the Plan; and (iii) each Related Party of each Entity or Person in clause (i) and clause (ii).

"<u>Exculpated Parties</u>" means, collectively, and in each case in its capacity as such: (i) the Debtors; (ii) the Reorganized Debtors; and (iii) each Related Party of each Entity in clause (i) through (ii), *provided* that "Exculpated Parties" shall not include Holders of Existing Equity Interests.

"<u>Related Party</u>" means, collectively, with respect to any Entity or Person, including each Released Party and Exculpated Party, such Entity or Person's, current, former and future Affiliates, member firms and associated entities, and with respect to each of the foregoing, their Affiliates, current and former directors, current and former managers, current and former officers, current and former equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, employees, agents, trustees, advisory board members, investment fund advisors or managers, investment managers, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals (including, for the avoidance of doubt, the Ad Hoc Group Advisors).

and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, a Reorganized Debtor, their Estates, or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, business, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, First Lien Credit Agreement Claims, the Senior Secured Notes Claims, cash management arrangements, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions (but excluding avoidance actions brought as counterclaims or defenses to Claims asserted against the Debtors by Released Parties other than the Consenting Creditors), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the First Lien Credit Agreement, the Senior Secured Notes Indenture, the New Term Loan Documents, the New Notes Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the First Lien Credit Agreement and any facility thereunder, the Senior Secured Notes Indenture and any facility thereunder, the New Term Loan Documents, the New Notes Documents, the New Common Equity, the New Organizational Documents, the Plan, the Plan Supplement, any other Definitive Document before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the solicitation of votes on the Plan, the pursuit of Confirmation of the Plan, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of debt, equity and/or other securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each

solely to the extent as determined by a Final Order of a court of competent jurisdiction. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the New Term Loan Documents (including any amendments thereto), the New Notes Documents (including any amendments thereto), the New Organizational Documents or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release herein, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the release herein is:  (i) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released hereby; (iii) in the best interests of the Debtors and all holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released hereby.

### *ARTICLE XI.E. CONSENSUAL RELEASES BY HOLDERS OF CLAIMS AND INTERESTS*

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Claims and Causes of Action, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the foregoing Entities, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, that such Entity would have been entitled to assert (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor, a Reorganized Debtor, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, business, management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the First Lien Credit Agreement Claims, the Senior Secured

Notes Claims, cash management arrangements, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions (but excluding avoidance actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the First Lien Credit Agreement, the Senior Secured Notes Indenture, the New Term Loan Documents, the New Notes Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the First Lien Credit Agreement and any facility thereunder, the Senior Secured Notes Indenture and any facility thereunder, the New Term Loan Documents, the New Notes Documents, the New Common Equity, the New Organizational Documents, the Plan, the Plan Supplement, any other Definitive Document before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the solicitation of votes on the Plan, the pursuit of Confirmation of the Plan, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of debt and/or securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, other than claims or liabilities primarily arising out of any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the New Term Loan Documents, the New Notes Documents, the New Organizational Documents or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release herein, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the release herein is:  (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (iv) a good faith settlement and compromise of the Claims released hereby; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and

made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released hereby.

### *ARTICLE XI.C. EXCULPATION AND LIMITATION OF LIABILITY*

**Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting the releases in Article XI.D and XI.E of the Plan, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the First Lien Credit Agreement Claims, the Senior Secured Notes Claims, cash management arrangements, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the First Lien Credit Agreement and any facility thereunder, the Senior Secured Notes Indenture and any facility thereunder, the New Term Loan Documents, the New Notes Documents, the New Common Equity, the New Organizational Documents, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the First Lien Credit Agreement, the Senior Secured Notes Indenture, the New Term Loan Documents, the New Notes Documents, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of debt and/or securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

**The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore,**

are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

### *ARTICLE XI.B. DISCHARGE AND ARTICLE XI.F. INJUNCTION*

PURSUANT TO SECTION 1141(D) OF THE BANKRUPTCY CODE AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE DEFINITIVE DOCUMENTS, THE PLAN, THE CONFIRMATION ORDER OR IN ANY CONTRACT, INSTRUMENT, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, THE DISTRIBUTIONS, RIGHTS, AND TREATMENT THAT ARE PROVIDED IN THE PLAN SHALL BE IN COMPLETE SATISFACTION, DISCHARGE, AND RELEASE, EFFECTIVE AS OF THE EFFECTIVE DATE, OF CLAIMS, INTERESTS, AND CAUSES OF ACTION OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS OR INTERESTS FROM AND AFTER THE PETITION DATE, WHETHER KNOWN OR UNKNOWN, AGAINST, LIABILITIES OF, LIENS ON, OBLIGATIONS OF, RIGHTS AGAINST, AND INTERESTS IN THE DEBTORS OR ANY OF THEIR ASSETS OR PROPERTIES, REGARDLESS OF WHETHER ANY PROPERTY SHALL HAVE BEEN DISTRIBUTED OR RETAINED PURSUANT TO THE PLAN ON ACCOUNT OF SUCH CLAIMS AND INTERESTS, INCLUDING DEMANDS, LIABILITIES, AND CAUSES OF ACTION THAT AROSE BEFORE THE EFFECTIVE DATE, ANY LIABILITY (INCLUDING WITHDRAWAL LIABILITY) TO THE EXTENT SUCH CLAIMS OR INTERESTS RELATE TO SERVICES THAT EMPLOYEES OF THE DEBTORS HAVE PERFORMED PRIOR TO THE EFFECTIVE DATE AND THAT ARISE FROM A TERMINATION OF EMPLOYMENT, ANY CONTINGENT OR NON-CONTINGENT LIABILITY ON ACCOUNT OF REPRESENTATIONS OR WARRANTIES ISSUED ON OR BEFORE THE  EFFECTIVE DATE, AND ALL DEBTS OF THE KIND SPECIFIED IN SECTIONS 502(G), 502(H), OR 502(I) OF THE BANKRUPTCY CODE, IN EACH CASE WHETHER OR NOT (I) A PROOF OF CLAIM BASED UPON SUCH DEBT OR RIGHT IS FILED OR DEEMED FILED PURSUANT TO SECTION 501 OF THE BANKRUPTCY CODE, (II) A CLAIM OR INTEREST BASED UPON SUCH DEBT, RIGHT, OR INTEREST IS ALLOWED PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE, OR (III) THE HOLDER OF SUCH A CLAIM OR INTEREST HAS ACCEPTED THE PLAN OR VOTED OR ABSTAINED FROM VOTING ON THE PLAN.    THE CONFIRMATION ORDER SHALL BE A JUDICIAL DETERMINATION OF THE DISCHARGE OF ALL CLAIMS AND INTERESTS SUBJECT TO THE OCCURRENCE OF THE  EFFECTIVE DATE.  FROM AND AFTER THE EFFECTIVE DATE ALL ENTITIES WILL BE PRECLUDED FROM ASSERTING AGAINST, DERIVATIVELY ON BEHALF OF, OR THROUGH, THE DEBTORS, THE DEBTORS' ESTATES, THE REORGANIZED DEBTORS, EACH OF THEIR SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER OR FOR OBLIGATIONS OR DISTRIBUTIONS ISSUED OR

**REQUIRED TO BE PAID PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE EXCULPATED PARTIES, OR THE RELEASED PARTIES:  (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE PLAN EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.  UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND THEIR RESPECTIVE RELATED PARTIES SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN.  EXCEPT AS OTHERWISE SET FORTH IN THE CONFIRMATION ORDER, EACH HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST, AS APPLICABLE, BY ACCEPTING, OR BEING ELIGIBLE TO ACCEPT, DISTRIBUTIONS UNDER OR REINSTATEMENT OF SUCH CLAIM OR INTEREST, AS APPLICABLE, PURSUANT TO THE PLAN, SHALL BE DEEMED TO HAVE CONSENTED TO THE INJUNCTION PROVISIONS SET FORTH HEREIN.**

**BINDING NATURE OF THE PLAN:  ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND EXISTING EQUITY INTERESTS IN THE DEBTORS, AND EACH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT ANY SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR EXISTING EQUITY INTEREST IN THESE**

**CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.**

*[Remainder of Page Intentionally Left Blank]*

## ADDITIONAL INFORMATION AND OPT-IN ELECTION FORM FOR HOLDERS IN NON-VOTING CLASSES

### Non-Voting Status

You are receiving this notice as a Holder or potential Holder of a Claim against or Interest in one or more of the Debtors that, due to the nature and treatment of such Claim or Interest under the Plan, is not entitled to vote on the Plan. Specifically, under the terms of the Plan, (i) Claims in Classes 1, 2, and 4 are Unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan; (ii) Claims in Class 5 and Interests in Class 6 are either Unimpaired or Impaired under the Plan and are conclusively presumed to accept or reject the Plan; and (iii) Interests in Class 7 are Impaired under the Plan and, pursuant to section 1126(g) of the Bankruptcy Code, are deemed to reject the Plan (collectively, Classes 1, 2, 4, 5, 6, and 7, the "Non-Voting Classes").

As set forth above, the Plan, the Disclosure Statement, and related documents are accessible, free of charge, on the following website maintained by the Debtors' claims, balloting, and noticing agent, Kroll Restructuring Administration LLC (the "Solicitation Agent"): https://restructuring.ra.kroll.com/WeightWatchers/. Copies of the Plan, Disclosure Statement, and related documents may also be obtained free of charge: (a) by contacting the Solicitation Agent by phone at (888) 643-6250 (U.S. / Canada, toll-free) or +1 (646) 930-6250 (International, toll); or (b) by email at WeightWatchersInfo@ra.kroll.com (with "WeightWatchers Solicitation Inquiry" in the subject line). The Plan, Disclosure Statement, and related documents are also available for a fee through the Bankruptcy Court's electronic case filing system at https://ecf.deb.uscourts.gov/ using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov).

### Release Opt-In Election

As described in more detail above, Article XI of the Plan contains certain consensual third-party releases. Specifically, these consensual releases will be provided by each "Releasing Party," defined in the Plan to mean: collectively each of, and in each case in its capacity as such: (i) the Released Parties; (ii) all Holders of Claims and Interests that elect to "opt in" to the third-party releases set forth in Article XI of the Plan; and (iii) each Related Party of each Entity or Person in clause (i) and clause (ii).

This form provides you with an opportunity to elect to opt-in to the consensual releases in Article XI of the Plan.

You should review the Disclosure Statement and the Plan before you make any elections on this form. You may wish to seek legal advice concerning the elections available under this form. Copies of the Disclosure Statement and the Plan may be found on the website of the Debtors' Solicitation Agent at https://restructuring.ra.kroll.com/WeightWatchers/.

Questions may be directed to the Solicitation Agent at (888) 643-6250 (U.S. / Canada, toll-free) or +1 (646) 930-6250 (International, toll), or by emailing the Solicitation Agent at

WeightWatchersInfo@ra.kroll.com (with "WeightWatchers Solicitation Inquiry" in the subject line).

**If you wish to opt in to being a "Releasing Party" and be eligible to be considered a "Released Party" under Article XI of the Plan, please check the following box and complete this form.  Your decision on this election does not affect the amount of distribution you will receive under the Plan.**

---

The undersigned elects to (check the box below to indicate your Opt-In election):

☐     **OPT IN** to the Third-Party Release set forth in Article XI of the Plan

---

**Certifications.**

By signing this Opt-In Form, the undersigned certifies:

(a)   that, either:  (i) the undersigned is a Holder of a Claim against or Existing Equity Interests in the Debtors that is not entitled to vote on the Plan or (ii) the undersigned is an authorized signatory of a Holder of a Claim against or Existing Equity Interests in the Debtors that is not entitled to vote on the Plan;

(b)   that the Holder has received a copy of the *Notice of (i) Commencement Of Chapter 11 Cases Under Chapter 11 of the Bankruptcy Code, (ii) Combined Hearing to Consider (a) Adequacy of the Disclosure Statement and (b) Confirmation Of The Plan, (iii) Assumption of Executory Contracts and Unexpired Leases and (iv) Objection Deadlines, (v)  Notice of Non-Voting Status of Holders of Impaired Claims or Interests Deemed to Reject the Plan and Unimpaired Claims or Interests Deemed to Accept the Plan and (vi) Opt-In Election Form for Holders in Non-Voting Classes-and-Summary of the Plan* and that this Opt-In Form is made pursuant to the terms and conditions set forth therein;

(c)   that the undersigned has submitted the Opt-In Form with respect to all of its Claims against or Existing Equity Interests in the Debtors; and

(d)   that no other Opt-In Form with respect to these Claims against or Existing Equity Interests in the Debtors has been submitted or, if any other Opt-In Forms have been submitted with respect to such Claims against or Existing Equity Interests in the Debtors, then any such earlier Opt-In Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than the Holder) |
| Title: | |
| Address: | |
| | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

**IF YOU WISH TO OPT IN TO THE THIRD-PARTY RELEASES, THE OPT-IN FORM MUST BE COMPLETED AND SUBMITTED, ON OR BEFORE THE OPT-IN DEADLINE OF JUNE 6, 2025 AT 5:00 P.M. (PREVAILING EASTERN TIME), BY <u>ONLY ONE</u> OF THE FOLLOWING APPROVED SUBMISSION METHODS:**

| **First Class Mail, Overnight Courier or Hand-Delivery To:** | **Electronic, online submission:** |
|---|---|
| WeightWatchers Ballot Processing Center c/o Kroll Restructuring Administration LLC 850 Third Avenue, Suite 412 Brooklyn, New York 11232 (to arrange hand-delivery, please email WeightWatchersBallots@ra.kroll.com (with "WeightWatchers Opt-In Form Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery) | To submit your Opt-In Form via Kroll's online portal, please visit: https://restructuring.ra.kroll.com/WeightWatchers/, click on "Submit E-Ballot" and follow the instructions to submit your Opt-In Form. IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Opt-In Form: Unique E-Opt-In ID#: Kroll's online portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission. Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted. Creditors who submit an Opt-In Form using Kroll's online portal should NOT also submit a paper Opt-In Form. If you have any questions, please contact Kroll at (888) 643-6250 (U.S./Canada, toll-free) or +1 (646) 930-6250 (international, toll) or WeightWatchersInfo@ra.kroll.com (with |

19

| | "WeightWatchers Solicitation Inquiry" in the subject line). |
|---|---|

For all persons or entities who hold one or more positions in the Debtors' Class 7 Existing Equity Interests (as identified by the CUSIP and ISIN set forth below) in "street name" at a bank, broker, or other intermediary, through DTC or another similar depository (such Holders being "Beneficial Holders" of the Debtors' Existing Equity Interests):

       CUSIP 98262P101 / ISIN US98262P1012 (Common Stock)

       By electronic, online submission:

As a Beneficial Holder of the Debtors' Class 7 Existing Equity Interests, you will not be issued a Unique E-Opt-In ID# and will, therefore, not be able to retrieve and submit the customized electronic version of your Opt-In Form through the online portal described above. Instead, click on the Public Equity Opt-In Portal link located on the left-hand Case Navigation panel of the Debtors' restructuring website at: https://restructuring.ra.kroll.com/WeightWatchers to upload a PDF of your completed Opt-In Form. For the avoidance of doubt, only Holders of Class 7 Existing Equity Interests, whose ownership thereof is registered in the Holder's own name directly on the books and records of the Debtors and/or the Debtors' transfer agent, will receive a Unique E-Opt-In ID#, which will enable them to retrieve and submit a customized electronic version of their Opt-In Form.

## SECTION 341(A) MEETING

The Debtors intend to request that the Bankruptcy Court defer a meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "Section 341(a) Meeting") and **that the Section 341(a) Meeting will not be convened if the Plan is confirmed by within 70 (seventy) days of the Petition Date.** If the Section 341(a) Meeting will be convened, the Debtors will file and serve on the parties on whom they served this notice and any other parties entitled to notice pursuant to the Bankruptcy Rules, and post on the website at https://restructuring.ra.kroll.com/WeightWatchers not less than twenty-one (21) days before the date scheduled for such meeting, a notice of, among other things, the date, time, and place of the Section 341(a) Meeting. The meeting may be adjourned or continued from time to time by notice at the meeting, without further notice to creditors.

*[Remainder of Page Intentionally Left Blank]*

Dated:  May [●], 2025
        Wilmington, Delaware

**YOUNG   CONAWAY   STARGATT   &
TAYLOR, LLP**

*/s/ DRAFT*

Edmon L. Morton (No. 3856)
Sean M. Beach (No. 4070)
Shella Borovinskaya (No. 6758)
Carol E. Thompson (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email: emorton@ycst.com
sbeach@ycst.com
sborovinskaya@ycst.com
cthompson@ycst.com

- and -

**SIMPSON THACHER & BARTLETT LLP**

Elisha D. Graff (*pro hac vice pending*)
Moshe A. Fink (*pro hac vice pending*)
Rachael L. Foust (*pro hac vice pending*)
Zachary J. Weiner (*pro hac vice pending*)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
Email: egraff@stblaw.com
moshe.fink@stblaw.com
rachael.foust@stblaw.com
zachary.weiner@stblaw.com

*Proposed  Co-Counsel  to  the  Debtors  and
Debtors in Possession*

**<u>EXHIBIT 2 TO ORDER</u>**

**Proposed Member Notice**

# WeightWatchers

WW International, Inc.
675 Avenue of the Americas, 6th Floor
New York, NY 10010

May 6, 2025

VIA FIRST CLASS MAIL

RE:     **WW International, Inc.,** *et al.*

       **Chapter 11 Case No. 25-[_____] (___)**

On May 6, 2025, WW International, Inc. ("WeightWatchers") and certain of its affiliates (collectively, the "Debtors" or the "Company") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Prior to commencing the Chapter 11 Cases, the Company entered into a restructuring support agreement (the "Restructuring Support Agreement") with holders of more than 71% in the aggregate principal amount of the First Lien Credit Agreement Claims and holders of 74% in the aggregate principal amount of the Senior Secured Notes Claims (collectively, the "Consenting Creditors"), pursuant to which the Debtors and the Consenting Creditors agreed to a comprehensive restructuring of the Debtors' balance sheet. The Company and the Consenting Creditors agreed to implement the restructuring through a prepackaged chapter 11 filing in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and, on the Petition Date, filed a prepackaged plan of reorganization (the "Plan") with the Bankruptcy Court.[1]

The Plan contemplates, among other things, a comprehensive financial restructuring of the Company that will reduce the Company's outstanding funded indebtedness by approximately $1.15 billion and annual interest expense by approximately $50 million. The restructuring contemplated by the Restructuring Support Agreement and the Plan will allow the Company to significantly strengthen its financial foundation, further invest in its growth strategy, and better serve its millions of members around the world.

You have received this letter because you are one of WeightWatchers' closest partners: its members. Members will see no change in business or the services they receive. As this restructuring is a pure "balance sheet restructuring," the Company does not expect the transactions set forth in the Plan to have any impact on the Company's valued members, product offerings, programming, vendors, employees or operations.

Chapter 11 is a section of the Bankruptcy Code that allows companies to restructure their debt obligations while continuing to operate their businesses. The filing is "prepackaged" and only impacts certain of WeightWatchers' U.S. entities. A prepacked filing is advantageous as it means the Company has already reached agreement with its lenders and noteholders regarding how the transaction should be implemented and the terms thereof. This not only ensures alignment and support among the affected parties but also means business can continue without interruption in the U.S. and globally and that the Company will move through this process swiftly, with the

---

[1] Capitalized terms used but not otherwise defined herein have the meaning given to such terms in the Plan.

goal of emerging from the court-supervised reorganization process in approximately 45 days, if not sooner.

WeightWatchers is taking this step, with the overwhelming support of its lenders and noteholders, to accelerate innovation, invest in its members, and lead with authority in a rapidly evolving weight management landscape. At the conclusion of this process, WeightWatchers will have a significantly de-levered balance sheet, which will allow the Company to move forward with even greater resources and focus, enabling it to expand its model of care, accelerate digital innovation, and deliver best-in-class outcomes for its members.

**Please be advised that Article XI of the Plan contains certain release, exculpation, and injunction provisions. You are advised and encouraged to carefully review and consider the Plan, including the release, exculpation, and injunction provisions set forth in Article XI of the Plan, as you may have the opportunity to opt-in to providing certain releases to the "Released Parties" under the Plan.**

A combined hearing to consider the adequacy of the Disclosure Statement, confirmation of the Plan, the assumption of Executory Contracts and Unexpired Leases, and any objections to any of the foregoing, will be held before the Honorable [_____], United States Bankruptcy Judge, in Courtroom No. [#] of the United States Bankruptcy Court, 824 N. Market Street, [__] Floor, Wilmington, Delaware 19801, on [____], 2025 at ____ (prevailing Eastern Time). Any responses or objections to the Disclosure Statement and/or the Plan must be (i) in writing; (ii) conform to the applicable Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware; (iii) set forth the name of the objecting party, the basis for the objection and the specific grounds thereof; and (iv) be filed with the Court, together with proof of service, no later than **4:00 p.m. (prevailing Eastern Time) on June 6, 2025**.

In addition to being filed with the Court, any responses or objections must be served on the following parties so as to be received by such deadline:

a) Proposed co-counsel for the Debtors, (a) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn: Elisha D. Graff, Esq. (egraff@stblaw.com), Moshe A. Fink, Esq. (moshe.fink@stblaw.com), Rachael L. Foust, Esq. (rachael.foust@stblaw.com), and Zachary J. Weiner, Esq. (zachary.weiner@stblaw.com); (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn. Edmon L. Morton, Esq. (emorton@ycst.com), Sean M. Beach, Esq. (sbeach@ycst.com), Shella Borovinskaya, Esq. (sborovinskaya@ycst.com), and Carol E. Thompson, Esq. (cthompson@ycst.com);

b) the Office of the United States Trustee for the District of Delaware, 844 North King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Benjamin A. Hackman, Esq. (benjamin.a.hackman@usdoj.gov);

c)      counsel to the Ad Hoc Group, (a) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn: Scott J. Greenberg, Esq. (sgreenberg@gibsondunn.com), Matthew J. Williams, Esq. (mjwilliams@gibsondunn.com), Jason Z. Goldstein, Esq. (jgoldstein@gibsondunn.com), and Tommy Scheffer, Esq. (tscheffer@gibsondunn.com); and (b) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and Timothy P. Cairns (Tcairns@pszjlaw.com);

d)      counsel to any statutory committee appointed in these Chapter 11 Cases; and

e)      any other party entitled to notice under Bankruptcy Rule 2002.

Copies of the Plan, the Disclosure Statement, and related documents may be obtained free of charge by visiting the website maintained by the Debtors' notice, claims and solicitation agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/WeightWatchers/.

Sincerely,

_____
Felicia DellaFortuna
Chief Financial Officer
WW International, Inc.

## **<u>EXHIBIT 3 TO ORDER</u>**

**Proposed Publication Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WW INTERNATIONAL, INC., *et al.*,[1] | Case No. 25-[__] ( ) |
| Debtors. | (Jointly Administered) |
| | **Ref Docket No. ___** |

**PLEASE BE ADVISED THAT ARTICLE XI OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE XI OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED. HOLDERS OF CLAIMS WHO ARE UNIMPAIRED BUT DO NOT TIMELY OPT IN TO THE RELEASES BY SUBMITTING THE OPT-IN ELECTION FORM ATTACHED HEREWITH SHALL NOT PROVIDE OR RECEIVE SUCH RELEASES. HOLDERS OF CLAIMS OR INTERESTS WHO ARE DEEMED TO REJECT THE PLAN BUT DO NOT TIMELY OPT IN TO THE RELEASES BY SUBMITTING THE OPT-IN ELECTION FORM ATTACHED HEREWITH SHALL NOT PROVIDE OR RECEIVE SUCH RELEASES. HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN THAT DO NOT TIMELY OPT IN TO THE RELEASES BY SUBMITTING THE OPT-IN ELECTION ON THEIR RESPECTIVE BALLOTS MAY NOT PROVIDE OR RECEIVE SUCH RELEASES.**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are WW International, Inc. (0273), WW North America Holdings, LLC (6141), WW Canada Holdco, Inc. (5680), WW.com, LLC (4196), W Holdco, Inc. (4087), WW Health Solutions, Inc. (3859), Weekend Health, Inc. (6812), and WW NewCo, Inc. (N/A). The Debtors' headquarters is located at 675 Avenue of the Americas, 6th Floor, New York, NY 10010.

**NOTICE OF (I) COMMENCEMENT OF CHAPTER 11 CASES UNDER CHAPTER 11
OF THE BANKRUPTCY CODE, (II) COMBINED HEARING TO CONSIDER
(A) ADEQUACY OF THE DISCLOSURE STATEMENT AND (B) CONFIRMATION OF
THE PLAN, (III) ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND (IV) OBJECTION DEADLINES**

**-AND-**

**SUMMARY OF PLAN**

**NOTICE IS HEREBY GIVEN** as follows:

1.    On May 6, 2025 (the "Petition Date"), WW International, Inc. and certain
of its affiliates (collectively, the "Debtors") each commenced a case under chapter 11 (collectively,
the "Chapter 11 Cases") of title 11 of the United States Code, 11 U.S.C. §§ 101–1532
(the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware
(the "Court").

2.    On the Petition Date, the Debtors filed a joint "prepackaged" plan of
reorganization (the "Plan") and a proposed disclosure statement (the "Disclosure Statement")
pursuant to sections 1125 and 1126 of the Bankruptcy Code.  Solicitation of the Plan commenced
prior to the filing of these Chapter 11 Cases on May 6, 2025.  Copies of the Plan, the Disclosure
Statement, and related documents may be obtained free of charge by visiting the website
maintained by the Debtors' notice, claims and solicitation agent, Kroll Restructuring
Administration         LLC         (the "Solicitation         Agent"),         at
https://restructuring.ra.kroll.com/WeightWatchers/ or by contacting the Debtors' proposed
counsel (Debbie Laskin, paralegal, tel: 302-571-6600; dlaskin@ycst.com).  Capitalized terms used
but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure
Statement, as applicable.

**I.    HEARING    TO    CONSIDER    COMPLIANCE    WITH    DISCLOSURE
REQUIREMENTS, CONFIRMATION OF THE PREPACKAGED PLAN, AND
ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

3.    A combined hearing to consider adequacy of the Disclosure Statement,
confirmation of the Plan, the assumption of Executory Contracts and Unexpired Leases and any
objections to any of the foregoing, and any other matter that may properly come before the Court,
will be held before the Honorable [_____], United States Bankruptcy Judge, in Courtroom No.
[__] of the United States Bankruptcy Court, 824 North Market Street, [__]th Floor, Wilmington,
Delaware 19801, on _____ ____, 2025 at _____ __.m. (prevailing Eastern Time) or
as soon thereafter as counsel may be heard (the "Combined Hearing").  The Combined Hearing
may be adjourned from time to time without further notice other than adjournments announced in
open court or in the filing of a notice or hearing agenda in the Chapter 11 Cases, and will be
available on the electronic case filing docket and the Solicitation Agent's website at
https://restructuring.ra.kroll.com/WeightWatchers/.

4.    Any responses or objections to the Disclosure Statement and/or the Plan must (i) be in writing; (ii) conform to the applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); (iii) set forth the name of the objecting party, the basis for the objection and the specific grounds thereof; and (iv) be filed with the Court, together with proof of service, no later than **4:00 p.m. (prevailing Eastern Time) on June 6, 2025**. In addition to being filed with the Court, any responses or objections must be served on the following parties so as to be received by such deadline:

a)    Proposed co-counsel for the Debtors, (a) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn: Elisha D. Graff, Esq. (egraff@stblaw.com), Moshe A. Fink, Esq. (moshe.fink@stblaw.com), Rachael L. Foust, Esq. (rachael.foust@stblaw.com), and Zachary J. Weiner, Esq. (zachary.weiner@stblaw.com); (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn. Edmon L. Morton, Esq. (emorton@ycst.com), Sean M. Beach, Esq. (sbeach@ycst.com), Shella Borovinskaya, Esq. (sborovinskaya@ycst.com), and Carol E. Thompson, Esq. (cthompson@ycst.com);

b)    the Office of the United States Trustee for the District of Delaware, 844 North King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Benjamin A. Hackman, Esq. (benjamin.a.hackman@usdoj.gov);

c)    counsel to the Ad Hoc Group, (a) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn: Scott J. Greenberg, Esq. (sgreenberg@gibsondunn.com), Matthew J. Williams, Esq. (mjwilliams@gibsondunn.com), Jason Z. Goldstein, Esq. (jgoldstein@gibsondunn.com), and Tommy Scheffer, Esq. (tscheffer@gibsondunn.com); and (b) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899, Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and Timothy P. Cairns (Tcairns@pszjlaw.com);

d)    counsel to any statutory committee appointed in these Chapter 11 Cases; and

e)    any other party entitled to notice under Bankruptcy Rule 2002.

**UNLESS A RESPONSE OR AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT SHALL NOT BE CONSIDERED BY THE COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS IN ARTICLE XI OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

## II.    NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.    You or one of your affiliates may be a counterparty to one or more contracts or leases that may be an Executory Contract or Unexpired Lease with one or more of the Debtors. Except as otherwise provided in the Plan, as of the Effective Date, *the Debtors shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code*, without the need for any further notice or action, order or approval of the Court, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by such Debtor; (2) expired or terminated pursuant to its own terms prior to the Effective Date; or (3) is the subject of a motion to reject filed on or before the Effective Date.

6.    Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or assumption and assignment, as applicable, of such Executory Contracts or Unexpired Leases as provided for in the Plan, pursuant to sections 365(a) and 1123 of the Bankruptcy Code effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

7.    **ANY COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT DOES NOT TIMELY OBJECT TO THE PROPOSED ASSUMPTION OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE BY THE EXECUTORY CONTRACT OBJECTION DEADLINE WILL BE DEEMED TO HAVE CONSENTED TO SUCH ASSUMPTION.  ANY PROOF OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

8.    <u>**Objections to the Assumption or Rejection of Executory Contracts and Unexpired Leases**</u>: If you believe any further amounts are due as a result of a Debtor's monetary default under an Executory Contract or Unexpired Lease or you wish to object to the assumption of an Executory Contract or Unexpired Lease under the Plan, including an objection regarding the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) (each, an "<u>Assumption Objection</u>"), you may assert an Assumption Objection against the Debtor or Reorganized Debtors, as applicable, subject to all defenses the Debtors or Reorganized Debtors may have with respect to such Assumption Objection.  Your response or objection to the assumption of an Executory Contract or Unexpired Lease must: (a) be in writing; (b) conform to the applicable Federal Rules and the Local Rules; (c) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof and (iv) be filed with the Court and served on the Notice Parties so as to be received by **May 23, 2025 at 4:00 p.m. (prevailing Eastern Time)** (or such other date as may be established by the Court) (the "<u>Executory Contract Objection Deadline</u>").  Any counterparty to an assumed

Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of such Executory Contract or Unexpired Lease, including an objection regarding the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), prior to the Executory Contract Objection Deadline (i) shall be deemed to have assented to such proposed assumption and shall be deemed to have forever released and waived such Assumption Objection and shall be precluded from being heard at the Confirmation Hearing with respect to such objection; and (ii) shall be forever barred from imposing or charging against any Reorganized Debtor any accelerations, increases or any other fees as a result of any assumption pursuant to the Plan.  For the avoidance of doubt, all rights of a counterparty to assert that further amounts are due as a result of a Debtor's monetary default under an Executory Contract or Unexpired Lease are preserved after the Effective Date and can be asserted in the ordinary course of business, regardless of whether such counterparty files an Assumption Objection, subject to all defenses the Debtors or Reorganized Debtors may have with respect to such claims.  You do not need to file an Assumption Objection to preserve your claim after the Effective Date that further amounts are due as a result of a Debtor's monetary default under an Executory Contract or Unexpired Lease.

**UNLESS A RESPONSE OR AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

**III.    NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN**

**PLEASE BE ADVISED THAT ARTICLE XI OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS.  YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE XI OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**<u>BINDING NATURE OF THE PLAN: ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND EXISTING EQUITY INTERESTS IN THE DEBTORS, AND EACH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT ANY SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR EXISTING EQUITY INTEREST IN THESE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.</u>**

**IF YOU HAVE ANY QUESTIONS ABOUT WHETHER YOU HAVE A CLAIM AGAINST A DEBTOR, PLEASE CONTACT THE SOLICITATION AGENT AT (888) 643-6250 (U.S./CANADA, TOLL-FREE) OR +1 (646) 930-6250 (INTERNATIONAL, TOLL) OR EMAIL PROPOSED COUNSEL FOR THE DEBTORS:    (i) Elisha D. Graff, Esq. (egraff@stblaw.com), Moshe A. Fink, Esq. (moshe.fink@stblaw.com), Rachael L. Foust, Esq. (rachael.foust@stblaw.com), and Zachary J. Weiner, Esq.**

**(zachary.weiner@stblaw.com); (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801; Attn. Edmon L. Morton, Esq. (emorton@ycst.com), Sean M. Beach, Esq. (sbeach@ycst.com), Shella Borovinskaya, Esq. (sborovinskaya@ycst.com); and Carol E. Thompson, Esq. (cthompson@ycst.com).**

*[Remainder of page intentionally left blank.]*

**EXHIBIT B-1**

**Form of Class 3 Ballot (General)**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**IMPORTANT**:  NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BALLOT.  THE DEBTORS INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT.

| | |
|---|---|
| In re:<br><br>WW INTERNATIONAL, INC., *et al.*,[1]<br>                    Debtors. | Chapter 11<br><br>Case No. 25-_____ (   )<br><br>**IMPORTANT:** No chapter 11 case has been commenced as of the date of the distribution of this ballot.  This ballot is being distributed to you as a part of a prepetition solicitation of your vote on a prepackaged plan of reorganization.  The Voting Deadline is June 6, 2025 at 5:00 p.m. (prevailing Eastern Time). |

### GENERAL BALLOT FOR
### ACCEPTING OR REJECTING THE DEBTORS'
### JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION

### CLASS 3 – FIRST LIEN CLAIMS

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING PROCEDURES, OR ANY OF THE SOLICITATION MATERIALS YOU HAVE RECEIVED, OR YOU NEED TO OBTAIN ADDITIONAL SOLICITATION MATERIALS, PLEASE CONTACT THE DEBTORS' PROPOSED NOTICE AND SOLICITATION AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC (THE "SOLICITATION AGENT") BY: (1) CALLING 1-(888) 643-6250 (U.S./CANADA, TOLL-FREE) OR +1-(646) 930-6250 (INTERNATIONAL, TOLL), (2) EMAILING WEIGHTWATCHERSINFO@RA.KROLL.COM AND REFERENCING "WEIGHTWATCHERS BALLOT PROCESSING" IN THE SUBJECT LINE, (3) VISITING THE DEBTORS' SOLICITATION WEBSITE AT HTTPS://RESTRUCTURING.RA.KROLL.COM/WEIGHTWATCHERS/, AND/OR (4) WRITING

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are WW International, Inc. (0273), WW North America Holdings, LLC (6141), WW Canada Holdco, Inc. (5680), WW.com, LLC (4196), W Holdco, Inc. (4087), WW Health Solutions, Inc. (3859), Weekend Health, Inc. (6812), and WW NewCo, Inc. (N/A).  The Debtors' headquarters is located at 675 Avenue of the Americas, 6th Floor, New York, NY 10010.

TO THE SOLICITATION AGENT AT THE FOLLOWING ADDRESS:  WEIGHTWATCHERS BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 THIRD AVENUE, SUITE 412, BROOKLYN, NEW YORK 11232.

PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.

THIS BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BEFORE **5:00 P.M. (PREVAILING EASTERN TIME) ON JUNE 6, 2025** (THE "VOTING DEADLINE"). IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR BALLOT BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, YOUR VOTE WILL NOT BE COUNTED.

CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT AND OPTED-IN TO, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED AND OPTED-IN TO, WILL BIND AFFECTED HOLDERS OF CLAIMS IN THE MANNER DESCRIBED IN ITEM 3 OF THIS BALLOT.

IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

PLEASE NOTE THAT IN ORDER TO MAKE THE NEW NOTES ELECTION, HOLDERS OF CLASS 3 FIRST LIEN CLAIMS (OR THEIR CUSTODIAN ON THEIR BEHALF) MUST ALSO COMPLETE APPLICABLE ELECTION PROCEDURES AS SET FORTH IN THE NEW NOTES ELECTION & DISTRIBUTION PROCEDURES NOTICE, THE SOLICITATION ORDER, AND THE DISCLOSURE STATEMENT.  PLEASE CONTACT THE SOLICITATION AGENT WITH ANY QUESTIONS.

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

This ballot (this "Ballot") is being sent to you in connection with the *Joint Prepackaged Plan of Reorganization of WW International, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time in accordance with its terms and including all exhibits or supplements thereto, the "Plan") because the records maintained indicate that you are a Holder of a Class 3 First Lien Claim as of April 30, 2025 (the "Voting Record Date"), and, accordingly, you may

2

have a right to vote to accept or reject the Plan. This Ballot may not be used for any purpose other than for submitting votes with respect to the Plan.  If you believe you have received this Ballot in error, please contact the Solicitation Agent at the email address or telephone number set forth above.

Your rights are described in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of WW International, Inc. and Its Debtor Affiliates*, dated May 6, 2025 (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement").  The solicitation procedures are described in the *Debtors' Motion for Entry of an Order (I) Scheduling Combined Hearing on Adequacy of the Disclosure Statement and Confirmation of the Plan; (II) Fixing Deadline to Object to Disclosure Statement and the Plan; (III) Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing and Objection Deadline; (IV) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (V) Conditionally (A) Directing the United States Trustee not to Convene Section 341(A) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities and Rule 2015.3 Reports; and (VI) Granting Related Relief*, dated May 6, 2025 (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Solicitation Motion"), which was approved by the Court on [●], 2025 [Docket No. [●]] (the "Solicitation Order").  The Plan and the Disclosure Statement are included in the packet you are receiving together with this Ballot (collectively, with a pre-addressed, postage pre-paid return envelope, the "Solicitation Package").  Upon request, the Solicitation Agent will provide paper copies of the Plan and the Disclosure Statement at the Debtors' expense.

**You should carefully and thoroughly review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan. Your Claim has been placed in Class 3 under the Plan.**

3

The Debtors intend to commence voluntary cases under chapter 11 of the Bankruptcy Code. The Plan can thereafter be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by at least one impaired Class of creditors and if the Plan otherwise satisfies the applicable requirements of sections 1129(a) and (if not accepted by all Classes of creditors) 1129(b) of the Bankruptcy Code.  A Class of creditors accepts the Plan if the Holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims in such Class vote to accept the Plan (the "Requisite Acceptances").

Creditors with Claims sufficient to satisfy the Requisite Acceptances for all impaired Classes have signed a Restructuring Support Agreement obligating such creditors to accept the Plan.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you regardless of whether you vote to accept or reject the Plan.

**YOUR COMPLETED, SIGNED, AND DATED BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BEFORE <u>5:00 P.M. (PREVAILING EASTERN TIME) ON JUNE 6, 2025</u> (THE "<u>VOTING DEADLINE</u>") VIA ONE OF THE METHODS LISTED BELOW.**

**IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR BALLOT BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, YOUR VOTE WILL NOT BE COUNTED.**

**PLEASE CHOOSE ONLY ONE METHOD TO RETURN YOUR BALLOT.**

(I) Online submission, through the E-Balloting Portal:

To submit your Ballot online via Kroll's E-Balloting Portal, please visit: https://restructuring.ra.kroll.com/WeightWatchers/, click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:

Unique E-Ballot ID#:

The E-Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Holders that submit a Ballot using the E-Balloting Portal should NOT also submit a paper Ballot.

OR

(II) Hard copy submission in the business reply envelope provided or otherwise by regular mail, overnight courier or hand delivery to:

WeightWatchers Ballot Processing

c/o Kroll Restructuring Administration LLC

850 Third Avenue, Suite 412

Brooklyn, NY 11232

(to arrange hand-delivery, please email WeightWatchersBallots@ra.kroll.com (with "WeightWatchers Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery)

**Item 1**. **Principal Amount of Class 3 First Lien Claim(s).**

The undersigned hereby certifies that, as of the Voting Record Date, it is the Holder (or is an authorized signatory for a Holder) of Class 3 First Lien Claim(s) in the following aggregate unpaid principal amount (*insert amount in box below*):

$ _____

**Item 2**. **Vote of Class 3 First Lien Claim(s).**

The undersigned Holder of the Class 3 First Lien Claim(s) set forth in Item 1 votes to (*please check only one*):

| **Accept** the Plan | **Reject** the Plan |
|:---:|:---:|
| ☐ | ☐ |

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR COMPANY AGAINST WHOM YOU HAVE A FIRST LIEN CLAIM.**

**Item 3**. **Important information regarding the Releases by Holders of Claims of the Debtors, Exculpation and Injunction Provisions, and Option to Opt-In to Releases.**

**IF YOU (I) ARE A "RELEASED PARTY" AS DEFINED IN THE PLAN; (II) OPT IN TO THE THIRD-PARTY RELEASES SET FORTH IN ARTICLE XI OF THE PLAN BY CHECKING THE BOX BELOW, OR (III) ARE A RELATED PARTY OF EACH ENTITY OR PERSON IN CLAUSE (I) AND CLAUSE (II), YOU SHALL BE A "RELEASING PARTY" UNDER THE PLAN, AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE PROVISIONS CONTAINED IN THE PLAN.  YOUR DECISION ON THIS ELECTION DOES NOT AFFECT THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

**The Holder of the Class 3 Claims Against the Debtors Set Forth in Item 1 Elects to (check the box below to indicate your Opt-In election):**

☐   Opt In to the Third-Party Release set forth below

The Plan contains a series of releases that are part of the overall restructuring set forth in the Plan and described in greater detail in the Disclosure Statement.  In that respect, parties should be aware that, if the Plan is confirmed and the Effective Date occurs, certain parties may be getting releases and

certain parties may be giving releases as set forth in Article XI of the Plan.  For your convenience, excerpts of the release provisions from the Plan are set forth below, however, you should carefully read the enclosed Disclosure Statement and Plan with respect to the releases.

**ARTICLE XI.E OF THE PLAN PROVIDES FOR A THIRD-PARTY RELEASE BY THE RELEASING PARTIES (THE "THIRD-PARTY RELEASE"):**

**EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE PLAN EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS, AND IS DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF ANY OF THE FOREGOING ENTITIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES, THAT SUCH ENTITY WOULD HAVE BEEN ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, A REORGANIZED DEBTOR, OR THEIR ESTATES OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE CAPITAL STRUCTURE, BUSINESS, MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN OR AMONG ANY DEBTOR AND ANY RELEASED PARTY, THE OWNERSHIP AND/OR OPERATION OF THE DEBTORS BY ANY RELEASED PARTY OR THE DISTRIBUTION OF ANY CASH OR OTHER PROPERTY OF THE DEBTORS TO ANY RELEASED PARTY, THE FIRST LIEN CREDIT AGREEMENT CLAIMS, THE SENIOR SECURED NOTES CLAIMS, CASH MANAGEMENT ARRANGEMENTS, THE ASSERTION OR ENFORCEMENT OF RIGHTS OR REMEDIES AGAINST THE DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS (BUT EXCLUDING AVOIDANCE ACTIONS BROUGHT AS COUNTERCLAIMS OR**

7

**DEFENSES TO CLAIMS ASSERTED AGAINST THE DEBTORS), INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR OR AN AFFILIATE OF A DEBTOR AND ANOTHER DEBTOR OR AFFILIATE OF A DEBTOR, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE RESTRUCTURING SUPPORT AGREEMENT AND RELATED PREPETITION TRANSACTIONS, THE DISCLOSURE STATEMENT, THE FIRST LIEN CREDIT AGREEMENT, THE SENIOR SECURED NOTES INDENTURE THE NEW TERM LOAN DOCUMENTS, THE NEW NOTES DOCUMENTS, THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT), ANY OTHER DEFINITIVE DOCUMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) RELATING TO ANY OF THE FOREGOING, CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE FIRST LIEN CREDIT AGREEMENT AND ANY FACILITY THEREUNDER, THE SENIOR SECURED NOTES INDENTURE AND ANY FACILITY THEREUNDER, THE NEW TERM LOAN DOCUMENTS, THE NEW NOTES DOCUMENTS, THE NEW COMMON EQUITY, THE NEW ORGANIZATIONAL DOCUMENTS, THE PLAN, THE PLAN SUPPLEMENT, ANY OTHER DEFINITIVE DOCUMENT BEFORE OR DURING THE CHAPTER 11 CASES, ANY PREFERENCE, FRAUDULENT TRANSFER, OR OTHER AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, THE FILING OF THE CHAPTER 11 CASES, THE SOLICITATION OF VOTES ON THE PLAN, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF DEBT AND/OR SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED OR RELATING TO ANY OF THE FOREGOING TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES PRIMARILY ARISING OUT OF ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, EACH SOLELY TO THE EXTENT AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO**

**IMPLEMENT THE PLAN, INCLUDING THE NEW TERM LOAN DOCUMENTS, THE NEW NOTES DOCUMENTS, THE NEW ORGANIZATIONAL DOCUMENTS OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASE IN THIS ARTICLE XI.E, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE RELEASE IN THIS ARTICLE XI.E IS: (I) CONSENSUAL; (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THIS ARTICLE XI.E; (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (VI) FAIR, EQUITABLE, AND REASONABLE; (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THIS ARTICLE XI.E.**

**EACH OF THE RELEASING PARTIES EXPRESSLY ACKNOWLEDGES THAT THE RELEASES AND COVENANTS NOT TO SUE CONTAINED IN THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS OR RELEASED CLAIMS OR CAUSES OF ACTION ARE PRESENTLY KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, OR FORESEEN OR UNFORESEEN.**

<u>**IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE:**</u>

UNDER THE PLAN, "RELEASED PARTY" MEANS, COLLECTIVELY EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (I) EACH DEBTOR; (II) EACH REORGANIZED DEBTOR; (III) EACH AGENT; (IV) THE CONSENTING CREDITORS; (V) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ELECT TO OPT IN TO THE THIRD PARTY RELEASES SET FORTH IN ARTICLE XI OF THE PLAN AND (VI) EACH RELATED PARTY OF EACH ENTITY OR PERSON IN CLAUSE (I) THROUGH CLAUSE (V); *PROVIDED* THAT IN EACH CASE, AN ENTITY OR PERSON SHALL NOT BE A RELEASED PARTY IF IT TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE THIRD-PARTY RELEASES CONTAINED IN THE PLAN THAT IS NOT WITHDRAWN OR OTHERWISE RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (I) THE RELEASED PARTIES; (II) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ELECT TO "OPT IN" TO THE

9

THIRD-PARTY RELEASES SET FORTH IN ARTICLE XI OF THE PLAN; AND (III) EACH RELATED PARTY OF EACH ENTITY OR PERSON IN CLAUSE (I) AND CLAUSE (II).

**ARTICLE XI.C OF THE PLAN PROVIDES FOR AN EXCULPATION OF CERTAIN PARTIES (THE "EXCULPATION"):**

**NOTWITHSTANDING ANYTHING CONTAINED IN THIS PLAN TO THE CONTRARY, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW AND WITHOUT AFFECTING OR LIMITING THE RELEASES IN ARTICLE XI.D AND XI.E, EFFECTIVE AS OF THE EFFECTIVE DATE, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY OR OBLIGATION FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE FIRST LIEN CREDIT AGREEMENT CLAIMS, THE SENIOR SECURED NOTES CLAIMS, CASH MANAGEMENT ARRANGEMENTS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR TERMINATION OF THE RESTRUCTURING SUPPORT AGREEMENT AND RELATED PREPETITION TRANSACTIONS, THE FIRST LIEN CREDIT AGREEMENT (INCLUDING ANY AMENDMENTS, RESTATEMENTS OR SUPPLEMENTS THERETO), THE SENIOR SECURED NOTES INDENTURE (INCLUDING ANY AMENDMENTS, RESTATEMENTS OR SUPPLEMENTS THERETO), THE NEW TERM LOAN DOCUMENTS, THE NEW NOTES DOCUMENTS, THE NEW COMMON EQUITY, THE NEW ORGANIZATIONAL DOCUMENTS, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) RELATING TO ANY OF THE FOREGOING, CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE FIRST LIEN CREDIT AGREEMENT, THE SENIOR SECURED NOTES INDENTURE, THE NEW TERM LOAN DOCUMENTS, THE NEW NOTES DOCUMENTS, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, BEFORE OR DURING THE CHAPTER 11 CASES, ANY**

10

**PREFERENCE, FRAUDULENT TRANSFER, OR OTHER AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF DEBT AND/OR SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE PLAN EFFECTIVE DATE, EXCEPT FOR CLAIMS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER BY A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

**THE EXCULPATED PARTIES HAVE, AND UPON CONFIRMATION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.**

**<u>ARTICLE XI.F OF THE PLAN ESTABLISHES AN INJUNCTION (THE "INJUNCTION"):</u>**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER OR FOR OBLIGATIONS OR DISTRIBUTIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE EXCULPATED PARTIES, OR THE RELEASED PARTIES: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS;**

11

**(2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE PLAN EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN. UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND THEIR RESPECTIVE RELATED PARTIES SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN. EXCEPT AS OTHERWISE SET FORTH IN THE CONFIRMATION ORDER, EACH HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST, AS APPLICABLE, BY ACCEPTING, OR BEING ELIGIBLE TO ACCEPT, DISTRIBUTIONS UNDER OR REINSTATEMENT OF SUCH CLAIM OR INTEREST, AS APPLICABLE, PURSUANT TO THE PLAN, SHALL BE DEEMED TO HAVE CONSENTED TO THE INJUNCTION PROVISIONS SET FORTH HEREIN.**

<u>**Item 4**</u>**. Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

1. as of the Voting Record Date, it is the Holder (or an authorized signatory for a Holder) of the Class 3 First Lien Claim(s) set forth in Item 1;

2. it is eligible to be treated as the Holder of the Class 3 First Lien Claim(s) set forth in Item 1 for the purposes of voting on the Plan;

3. it has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4. it has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package materials;

12

5.  it has cast the same vote with respect to each of the Holder's Class 3 First Lien Claims;

6.  it understands the treatment provided for its Class 3 First Lien Claim(s) under the Plan;

7.  it understands the recoveries provided for in the Plan are expressly conditioned upon confirmation and consummation of the Plan;

8.  it acknowledges and agrees that the Debtors may make conforming changes to the Plan as may be reasonably necessary, subject to section 1127 of the Bankruptcy Code and in accordance with the terms and conditions set forth in the Restructuring Support Agreement; provided that the Debtors will not resolicit acceptances or rejections of the Plan in the event of such conforming changes unless otherwise required to by the Bankruptcy Court;

9.  it understands and acknowledges that only the last properly executed, valid ballot actually received by the Solicitation Agent prior to the Voting Deadline with respect to the Class 3 First Lien Claim(s) set forth in Item 1 will be counted, and, if any other ballot has been previously received with respect to the Class 3 First Lien Claim(s) set forth in Item 1, such other ballot shall be deemed revoked and defective;

10. it understands that, if it does not complete the Opt-In election in Item 3, it or the Holder on whose behalf it is submitting this Ballot, as applicable, shall not be a "Releasing Party" under the Plan (unless such Holder is (i) is a "Released Party" as defined in the Plan; (ii) opts in to the third-party releases set forth in Article XI of the Plan by checking the box in the Opt-In Form, or (iii) a Related Party of each entity or person that is a "Released Party" and that completes the Opt-In election in an Opt-In Form).

11. it is (a) either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or (ii) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act), or (b) the authorized signatory for a Holder of Class 3 First Lien Claims that is a either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or (ii) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act); provided, that, the undersigned's certification with respect to this clause 11 in respect of any beneficial owner is made solely in reliance by the undersigned on a certification provided by such beneficial owner to the undersigned that such beneficial owner is either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or (ii) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act) and the undersigned assumes no liability or responsibility for any beneficial owner's status and makes no representation or warranty with respect thereto;

12. it understands and acknowledges that in order to make the New Notes Election it must also comply with the applicable election procedures as set forth in the New Notes Election & Distribution Procedures Notice, the Solicitation Order, and the Disclosure Statement;

13. it understands and acknowledges that the securities being distributed pursuant to the Plan are not being distributed pursuant to a registration statement filed with the United States Securities and Exchange Commission, and that such securities will be acquired for the Holder's own

account and not with a view to any distribution of such securities in violation of the United States Securities Act of 1933, 15 U.S.C. §§ 77a–77aa; and

14. it has full and complete authority to execute and submit this Ballot.

**Item 5**. **Holder Information and Signature.**

**BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION (type or print)**

Name of Holder:

        _____

Signature:

        _____

Signatory Name (if other than Holder):

        _____

Title:

        _____

Address:

        _____

Email Address:

        _____

Telephone Number:

        _____

Date Completed:

        _____

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE.**

*[Remainder of page intentionally left blank]*

14

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1. The Debtors are soliciting the votes of Holders of Class 3 First Lien Claims with respect to the Plan. The Plan and Disclosure Statement are included in the packet you are receiving with this Ballot. Capitalized terms used and not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Class that votes on the Plan and if the Plan otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code. If the Requisite Acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

3. To ensure that your vote is counted, you must deliver this Ballot directly to the Solicitation Agent by using the enclosed return envelope addressed to Kroll Restructuring Administration LLC (or otherwise by regular mail, overnight courier or hand delivery) or via the Solicitation Agent's E-Ballot platform so as to be actually received by the Solicitation Agent before the Voting Deadline.

4. Any ballot received by the Solicitation Agent after the Voting Deadline will not be counted unless the Debtors determine otherwise or as permitted by the Bankruptcy Court. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent actually receives the executed ballot. In all cases, Holders should allow sufficient time to assure timely delivery. No ballot should be sent to the Debtors or the Debtors' financial or legal advisors.

5. If you deliver multiple ballots to the Solicitation Agent, as applicable, the last properly executed, valid ballot timely received by the Solicitation Agent will supersede and revoke any earlier received ballot.

6. This Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with this Ballot.

7. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

8. You must vote all of your Claims within a particular Class either to accept or reject the Plan (i.e., you may not split your vote).

9. If you hold Claims in more than one Class under the Plan, or in multiple accounts, you will receive more than one ballot coded for each different Class or account. Each ballot votes

only your Claims indicated on that ballot.  Please complete and return each ballot you receive.

10. Please be sure to sign and date this Ballot.  If you are signing this Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by the Solicitation Agent or the Debtors, must submit proper evidence of such capacity to the requesting party.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to this Ballot.

11. The following ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any ballot not actually received by the Solicitation Agent before the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; (c) any unsigned ballot; (d) any ballot that partially rejects and partially accepts the Plan; (e) any ballot not marked to either accept or reject the Plan, or marked to both accept and reject the Plan; (f) any ballot superseded by a later, timely received valid ballot; and (g) any ballot submitted by a party who did not hold a First Lien Claim as of the Voting Record Date.

12. If you believe you have received the wrong ballot, you should contact the Solicitation Agent.

**<u>PLEASE MAIL YOUR BALLOT PROMPTLY!</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE PROCEDURE FOR VOTING ON THE PLAN, OR IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT, DISCLOSURE STATEMENT, PLAN, OR OTHER RELATED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT.**

*[Remainder of page intentionally left blank.]*

**EXHIBIT B-2**

**Form of Class 3 Ballot (Beneficial)**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

IMPORTANT: NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BENEFICIAL BALLOT.  THE DEBTORS INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT.

| | |
|---|---|
| In re:<br><br>WW INTERNATIONAL, INC., *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) **IMPORTANT:** No chapter 11 case has<br>) been commenced as of the date of the<br>) distribution of this ballot.  This ballot is<br>) being distributed to you as a part of a<br>) prepetition solicitation of your vote on a<br>) prepackaged plan of reorganization.  The<br>) Voting Deadline is June 6, 2025 at<br>5:00 p.m. (prevailing Eastern Time). |

**BENEFICIAL BALLOT FOR
ACCEPTING OR REJECTING THE DEBTORS'
JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION**

**CLASS 3 – FIRST LIEN CLAIMS**

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING PROCEDURES, OR ANY OF THE SOLICITATION MATERIALS YOU HAVE RECEIVED, OR YOU NEED TO OBTAIN ADDITIONAL SOLICITATION MATERIALS, PLEASE CONTACT THE DEBTORS' PROPOSED NOTICE AND SOLICITATION AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC ("KROLL" OR THE "SOLICITATION AGENT") BY: (1) CALLING THE DEBTORS' SOLICITATION AGENT BY CALLING 1-(888) 643-6250 (U.S./CANADA, TOLL-FREE) OR +1-(646) 930-6250 (INTERNATIONAL, TOLL),        (2) EMAILING        WEIGHTWATCHERSINFO@RA.KROLL.COM        AND REFERENCING "WEIGHTWATCHERS BALLOT PROCESSING" IN THE SUBJECT LINE, (3) VISITING THE DEBTORS' SOLICITATION WEBSITE AT HTTPS://RESTRUCTURING.RA.KROLL.COM/WEIGHTWATCHERS/,        AND/OR (4) WRITING TO THE SOLICITATION AGENT AT THE FOLLOWING ADDRESS:

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are WW International, Inc. (0273), WW North America Holdings, LLC (6141), WW Canada Holdco, Inc. (5680), WW.com, LLC (4196), W Holdco, Inc. (4087), WW Health Solutions, Inc. (3859), Weekend Health, Inc. (6812), and WW NewCo, Inc. (N/A).  The Debtors' headquarters is located at 675 Avenue of the Americas, 6th Floor, New York, NY 10010.

WEIGHTWATCHERS BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 THIRD AVENUE, SUITE 412, BROOKLYN, NY 11232.

QUESTIONS REGARDING VOTING INSTRUCTIONS PROVIDED BY YOUR NOMINEE SHOULD BE DIRECTED TO YOUR NOMINEE. IN ALL CASES YOU MUST VOTE ACCORDING TO YOUR NOMINEE'S INSTRUCTIONS. PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.

THIS BALLOT (THE "BENEFICIAL BALLOT"), IF "PRE-VALIDATED" BY YOUR NOMINEE, OR, IF APPLICABLE, THE MASTER BALLOT CAST ON YOUR BEHALF BY YOUR NOMINEE (THE "MASTER BALLOT") MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BEFORE **5:00 P.M. (PREVAILING EASTERN TIME) ON JUNE 6, 2025** (THE "VOTING DEADLINE"). IF THE SOLICITATION AGENT DOES NOT RECEIVE YOUR PRE-VALIDATED BENEFICIAL BALLOT OR THE MASTER BALLOT CONTAINING YOUR VOTE BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, YOUR VOTE WILL NOT BE COUNTED.

CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT AND OPTED-IN TO, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES. THE RELEASES BY RELEASING PARTIES, IF APPROVED AND OPTED-IN TO, WILL BIND AFFECTED HOLDERS OF CLAIMS IN THE MANNER DESCRIBED IN ITEM 3 OF THIS BENEFICIAL BALLOT.

IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

PLEASE NOTE THAT IN ORDER TO MAKE THE NEW NOTES ELECTION, HOLDERS OF CLASS 3 FIRST LIEN CLAIMS (OR THEIR CUSTODIAN ON THEIR BEHALF) MUST ALSO COMPLETE APPLICABLE ELECTION PROCEDURES AS SET FORTH IN THE NEW NOTES ELECTION & DISTRIBUTION PROCEDURES NOTICE, THE SOLICITATION ORDER, AND THE DISCLOSURE STATEMENT. PLEASE CONTACT THE SOLICITATION AGENT WITH ANY QUESTIONS.

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BENEFICIAL BALLOT.

This Beneficial Ballot is being sent to you in connection with the *Joint Prepackaged Plan of Reorganization of WW International, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time in accordance with its terms and including all exhibits or

supplements thereto, the "Plan")[2] because the records maintained by your Nominee[3] indicate that you are a Beneficial Holder[4] of Class 3 First Lien Claim(s) as of April 30, 2025 (the "Voting Record Date"), and, accordingly, you may have a right to vote to accept or reject the Plan. This Beneficial Ballot may not be used for any purpose other than for submitting votes with respect to the Plan. If you believe you have received this Beneficial Ballot in error, please contact the Solicitation Agent at the email address or telephone number set forth above.

**The CUSIPs / ISINs for Class 3 First Lien Claims entitled to vote are identified on <u>Exhibit A</u> attached hereto.**

Your rights are described in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of WW International, Inc. and Its Debtor Affiliates*, dated May 6, 2025 (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement"). The solicitation procedures are described in the *Debtors' Motion for Entry of an Order (I) Scheduling Combined Hearing on Adequacy of the Disclosure Statement and Confirmation of the Plan; (II) Fixing Deadline to Object to Disclosure Statement and the Plan; (III) Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing and Objection Deadline; (IV) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (V) Conditionally (A) Directing the United States Trustee not to Convene Section 341(A) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities and Rule 2015.3 Reports; and (VI) Granting Related Relief*, dated May 6, 2025 (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Solicitation Motion"), which was approved by the Court on [●], 2025 [Docket No. [●]] (the "Solicitation Order"). The Plan and the Disclosure Statement are included in the packet you are receiving together with this Beneficial Ballot (collectively, with a pre-addressed, postage prepaid return envelope, the "Solicitation Package"). Upon request, the Solicitation Agent will provide paper copies of the Plan and the Disclosure Statement at the Debtors' expense. The Solicitation Package has been distributed to all Holders of Class 3 First Lien Claims who are reasonably believed to be either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or (ii) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act).

**You should carefully and thoroughly review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and classification and**

---

[2]    Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

[3]    "Nominee" means the broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other such party in whose name your beneficial ownership in Class 3 First Lien Claims is registered or held of record on your behalf as of the Voting Record Date.

[4]    A "Beneficial Holder" is a beneficial owner of Class 3 First Lien Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

**treatment of your Claim under the Plan.  Your Claim has been placed in Class 3 under the Plan.**

The Debtors intend to commence voluntary cases under chapter 11 of the Bankruptcy Code.  The Plan can thereafter be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the Holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in at least one Impaired Class and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the Requisite Acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan; and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you regardless of whether you vote or if you vote to reject the Plan.

---

**IF YOU RECEIVED A PRE-VALIDATED BENEFICIAL BALLOT FROM YOUR NOMINEE WITH A RETURN ENVELOPE ADDRESSED TO THE SOLICITATION AGENT, YOUR COMPLETED, SIGNED, AND DATED BENEFICIAL BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BEFORE THE VOTING DEADLINE.**

**IF YOU RECEIVED A BENEFICIAL BALLOT AND A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, YOUR VOTE, WHETHER SUBMITTED USING A COMPLETED, SIGNED, AND DATED BENEFICIAL BALLOT, OR OTHERWISE ACCORDING TO YOUR NOMINEE'S INSTRUCTIONS, MUST BE SENT TO YOUR NOMINEE, <u>NOT</u> THE SOLICITATION AGENT, ALLOWING SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE, COMPLETE A MASTER BALLOT, AND TRANSMIT THE MASTER BALLOT TO THE SOLICITATION AGENT SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BEFORE THE VOTING DEADLINE.**

**FOR YOUR VOTE TO COUNT, YOU MUST ACT IN ACCORDANCE WITH YOUR NOMINEE'S INSTRUCTIONS, INCLUDING SUBMISSION OF YOUR VOTE ON OR BEFORE YOUR NOMINEE'S INTERNAL VOTING DEADLINE, WHICH MAY BE PRIOR TO THE OFFICIAL VOTING DEADLINE MANDATED BY THE BANKRUPTCY COURT.**

---

<u>**Item 1**</u>. **Principal Amount of Class 3 First Lien Claim(s).**

The undersigned hereby certifies that, as of the Voting Record Date, it was the Beneficial Holder (or authorized signatory for a Beneficial Holder) of Class 3 First Lien Claim(s) in the following aggregate unpaid principal amount (*insert amount in box below; if the Claim amount for voting purposes has not been pre-filled in the box below and you do not know the amount of your First*

*Lien Claim as of the Voting Record Date, please contact your Nominee for this information without delay*):

$$\boxed{\text{\$_____}}$$

**Item 2**. **Vote of Class 3 First Lien Claim(s).**

The Beneficial Holder of the Class 3 First Lien Claim(s) set forth in Item 1 votes to (*please check only one*):

| **Accept** the Plan | **Reject** the Plan |
|:---:|:---:|
| ☐ | ☐ |

**Item 3.** **Important information regarding the Releases by Holders of Claims and Interests of the Debtors, Exculpation and Injunction Provisions, and Optional Opt-In Election.**

**IF YOU (I) ARE A "RELEASED PARTY" AS DEFINED IN THE PLAN; (II) OPT IN TO THE THIRD-PARTY RELEASES SET FORTH IN ARTICLE XI OF THE PLAN BY CHECKING THE BOX BELOW, OR (III) ARE A RELATED PARTY OF EACH ENTITY OR PERSON IN CLAUSE (I) AND CLAUSE (II), YOU SHALL BE A "RELEASING PARTY" UNDER THE PLAN, AND YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE PROVISIONS CONTAINED IN THE PLAN. YOUR DECISION ON THIS ELECTION DOES NOT AFFECT THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

| The Holder of the Class 3 Claims Against the Debtors Set Forth in Item 1 Elects to (check the box below to indicate your Opt-In election):<br><br>☐    Opt In to the Third-Party Release set forth below |
|---|

The Plan contains a series of releases that are part of the overall restructuring set forth in the Plan and described in greater detail in the Disclosure Statement. In that respect, parties should be aware that, if the Plan is confirmed and the Effective Date occurs, certain parties will be getting releases and certain parties will be giving releases as set forth in Article XI of the Plan. For your convenience, excerpts of the release provisions from the Plan are set forth below, however, you should carefully read the enclosed Disclosure Statement and Plan with respect to the releases.

**ARTICLE XI.E OF THE PLAN PROVIDES FOR A THIRD-PARTY RELEASE BY THE RELEASING PARTIES (THE "THIRD-PARTY RELEASE"):**

**EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE PLAN EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS, AND IS DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF ANY OF THE FOREGOING ENTITIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES, THAT SUCH ENTITY WOULD HAVE BEEN ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, A REORGANIZED DEBTOR, OR THEIR ESTATES OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE CAPITAL STRUCTURE, BUSINESS, MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN OR AMONG ANY DEBTOR AND ANY RELEASED PARTY, THE OWNERSHIP AND/OR OPERATION OF THE DEBTORS BY ANY RELEASED PARTY OR THE DISTRIBUTION OF ANY CASH OR OTHER PROPERTY OF THE DEBTORS TO ANY RELEASED PARTY, THE FIRST LIEN CREDIT AGREEMENT CLAIMS, THE SENIOR SECURED NOTES CLAIMS, CASH MANAGEMENT ARRANGEMENTS, THE ASSERTION OR ENFORCEMENT OF RIGHTS OR REMEDIES AGAINST THE DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS (BUT EXCLUDING AVOIDANCE ACTIONS BROUGHT AS COUNTERCLAIMS OR DEFENSES TO CLAIMS ASSERTED AGAINST THE DEBTORS), INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A DEBTOR OR AN AFFILIATE OF A DEBTOR AND ANOTHER DEBTOR OR AFFILIATE OF A DEBTOR, THE CHAPTER 11**

**CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE RESTRUCTURING SUPPORT AGREEMENT AND RELATED PREPETITION TRANSACTIONS, THE DISCLOSURE STATEMENT, THE FIRST LIEN CREDIT AGREEMENT, THE SENIOR SECURED NOTES INDENTURE THE NEW TERM LOAN DOCUMENTS, THE NEW NOTES DOCUMENTS, THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT), ANY OTHER DEFINITIVE DOCUMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) RELATING TO ANY OF THE FOREGOING, CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE FIRST LIEN CREDIT AGREEMENT AND ANY FACILITY THEREUNDER, THE SENIOR SECURED NOTES INDENTURE AND ANY FACILITY THEREUNDER, THE NEW TERM LOAN DOCUMENTS, THE NEW NOTES DOCUMENTS, THE NEW COMMON EQUITY, THE NEW ORGANIZATIONAL DOCUMENTS, THE PLAN, THE PLAN SUPPLEMENT, ANY OTHER DEFINITIVE DOCUMENT BEFORE OR DURING THE CHAPTER 11 CASES, ANY PREFERENCE, FRAUDULENT TRANSFER, OR OTHER AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, THE FILING OF THE CHAPTER 11 CASES, THE SOLICITATION OF VOTES ON THE PLAN, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF DEBT AND/OR SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED OR RELATING TO ANY OF THE FOREGOING TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES PRIMARILY ARISING OUT OF ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, EACH SOLELY TO THE EXTENT AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, INCLUDING THE NEW TERM LOAN DOCUMENTS, THE NEW NOTES DOCUMENTS, THE NEW**

**ORGANIZATIONAL DOCUMENTS OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASE IN THIS ARTICLE XI.E, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE RELEASE IN THIS ARTICLE XI.E IS: (I) CONSENSUAL; (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THIS ARTICLE XI.E; (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (VI) FAIR, EQUITABLE, AND REASONABLE; (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THIS ARTICLE XI.E.**

**EACH OF THE RELEASING PARTIES EXPRESSLY ACKNOWLEDGES THAT THE RELEASES AND COVENANTS NOT TO SUE CONTAINED IN THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS OR RELEASED CLAIMS OR CAUSES OF ACTION ARE PRESENTLY KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, OR FORESEEN OR UNFORESEEN.**

**IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE:**

UNDER THE PLAN, "RELEASED PARTY" MEANS, COLLECTIVELY EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (I) EACH DEBTOR; (II) EACH REORGANIZED DEBTOR; (III) EACH AGENT; (IV) THE CONSENTING CREDITORS; (V) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ELECT TO OPT IN TO THE THIRD PARTY RELEASES SET FORTH IN ARTICLE XI OF THE PLAN AND (VI) EACH RELATED PARTY OF EACH ENTITY OR PERSON IN CLAUSE (I) THROUGH CLAUSE (V); *PROVIDED* THAT IN EACH CASE, AN ENTITY OR PERSON SHALL NOT BE A RELEASED PARTY IF IT TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE THIRD-PARTY RELEASES CONTAINED IN THE PLAN THAT IS NOT WITHDRAWN OR OTHERWISE RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (I) THE RELEASED PARTIES; (II) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ELECT TO "OPT IN" TO

8

THE THIRD-PARTY RELEASES SET FORTH IN ARTICLE XI OF THE PLAN; AND (III) EACH RELATED PARTY OF EACH ENTITY OR PERSON IN CLAUSE (I) AND CLAUSE (II).

**ARTICLE XI.C OF THE PLAN PROVIDES FOR AN EXCULPATION OF CERTAIN PARTIES (THE "EXCULPATION"):**

**NOTWITHSTANDING ANYTHING CONTAINED IN THIS PLAN TO THE CONTRARY, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW AND WITHOUT AFFECTING OR LIMITING THE RELEASES IN ARTICLE XI.D AND XI.E, EFFECTIVE AS OF THE EFFECTIVE DATE, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY OR OBLIGATION FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE FIRST LIEN CREDIT AGREEMENT CLAIMS, THE SENIOR SECURED NOTES CLAIMS, CASH MANAGEMENT ARRANGEMENTS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR TERMINATION OF THE RESTRUCTURING SUPPORT AGREEMENT AND RELATED PREPETITION TRANSACTIONS, THE FIRST LIEN CREDIT AGREEMENT (INCLUDING ANY AMENDMENTS, RESTATEMENTS OR SUPPLEMENTS THERETO), THE SENIOR SECURED NOTES INDENTURE (INCLUDING ANY AMENDMENTS, RESTATEMENTS OR SUPPLEMENTS THERETO), THE NEW TERM LOAN DOCUMENTS, THE NEW NOTES DOCUMENTS, THE NEW COMMON EQUITY, THE NEW ORGANIZATIONAL DOCUMENTS, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) RELATING TO ANY OF THE FOREGOING, CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE FIRST LIEN CREDIT AGREEMENT, THE SENIOR SECURED NOTES INDENTURE, THE NEW TERM LOAN DOCUMENTS, THE NEW NOTES DOCUMENTS, THE DISCLOSURE STATEMENT, THE PLAN,**

THE PLAN SUPPLEMENT, BEFORE OR DURING THE CHAPTER 11 CASES, ANY PREFERENCE, FRAUDULENT TRANSFER, OR OTHER AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF DEBT AND/OR SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE PLAN EFFECTIVE DATE, EXCEPT FOR CLAIMS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER BY A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

THE EXCULPATED PARTIES HAVE, AND UPON CONFIRMATION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

<u>ARTICLE XI.F OF THE PLAN ESTABLISHES AN INJUNCTION (THE "INJUNCTION"):</u>

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER OR FOR OBLIGATIONS OR DISTRIBUTIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE EXCULPATED PARTIES, OR THE RELEASED PARTIES: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON

**ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE PLAN EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN. UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND THEIR RESPECTIVE RELATED PARTIES SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN. EXCEPT AS OTHERWISE SET FORTH IN THE CONFIRMATION ORDER, EACH HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST, AS APPLICABLE, BY ACCEPTING, OR BEING ELIGIBLE TO ACCEPT, DISTRIBUTIONS UNDER OR REINSTATEMENT OF SUCH CLAIM OR INTEREST, AS APPLICABLE, PURSUANT TO THE PLAN, SHALL BE DEEMED TO HAVE CONSENTED TO THE INJUNCTION PROVISIONS SET FORTH HEREIN.**

<u>Item 4</u>. **Class 3 First Lien Claim(s) held in Additional Accounts.**

By completing and returning this Beneficial Ballot, the Beneficial Holder of the First Lien Claims identified in Item 1 certifies that (a) this Beneficial Ballot is the only Beneficial Ballot submitted for the Class 3 First Lien Claim(s) owned by such Beneficial Holder as indicated in Item 1, except for the First Lien Claims identified in the following table (please use additional sheets of paper if necessary); and (b) <u>all</u> Ballots for First Lien Claims submitted by the Beneficial Holder indicate the same vote to accept or reject the Plan that the Beneficial Holder has indicated in Item 2 of this Ballot. **To be clear, if any Beneficial Holder holds First Lien Claims through one or more Nominees, such Beneficial Holder must identify all First Lien Claims held through each Nominee in the following table, and must confirm the same vote to accept or reject the Plan on all ballots submitted.**

**ONLY COMPLETE THIS ITEM 4 IF YOU HAVE SUBMITTED OTHER BENEFICIAL BALLOTS**

| Your Customer Account Number at Nominee of Other Class 3 Senior Secured Notes Claims Voted | Name of Registered Holder[5] and DTC Participant Number, if Applicable, of Nominee of Other Class 3 Senior Secured Notes Claims Voted | Principal Amount of Other Class 3 Senior Secured Notes Claims Voted | CUSIP of Other Class 3 Senior Secured Notes Claims Voted | Plan Vote of Other Class 3 Senior Secured Notes Claims Voted (Accept or Reject) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Item 5. Certifications.**

Upon execution of this Beneficial Ballot, the undersigned certifies that:

1.  as of the Voting Record Date, it was the Beneficial Holder (or an authorized signatory for a Beneficial Holder) of the Class 3 First Lien Claim(s) set forth in Item 1;

2.  it is eligible to be treated as the Holder of the Class 3 First Lien Claim(s) set forth in Item 1 for the purposes of voting on the Plan;

3.  it has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4.  it has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package materials;

5.  it has cast the same vote with respect to each of the Holder's Class 3 First Lien Claims;

6.  it understands the treatment provided for its Class 3 First Lien Claim(s) under the Plan;

7.  it understands the recoveries provided for in the Plan are expressly conditioned upon confirmation and consummation of the Plan;

8.  it acknowledges and agrees that the Debtors may make conforming changes to the Plan as may be reasonably necessary, subject to section 1127 of the Bankruptcy Code and in

---

5    Insert your name if you are the Holder of record (i.e., the registered holder) of the Class 3 First Lien Claims, or, if held in a "street name," insert the name of your Nominee.

accordance with the terms and conditions set forth in the Restructuring Support Agreement; provided that the Debtors will not resolicit acceptances or rejections of the Plan in the event of such conforming changes unless otherwise required to by the Bankruptcy Court;

9. it understands and acknowledges that only the last properly executed ballot cast prior to the Voting Deadline with respect to the Class 3 First Lien Claim(s) set forth in Item 1 will be counted, and, if any other ballot has been previously cast with respect to the Class 3 First Lien Claim(s) set forth in Item 1, such other ballot shall be deemed revoked;

10. it understands that, if it does not complete the Opt-In election in Item 3, it or the Holder on whose behalf it is submitting this Ballot, as applicable, shall not be a "Releasing Party" under the Plan (unless such Holder is (i) a "Released Party" as defined in the Plan; (ii) opts in to the third-party releases set forth in Article XI of the Plan by checking the box in the Opt-In Form, or (iii) a Related Party of each entity or person that is a "Released Party" and that completes the Opt-In election in an Opt-In Form).

11. it understands and acknowledges that the securities being distributed pursuant to the Plan are not being distributed pursuant to a registration statement filed with the United States Securities and Exchange Commission, and that such securities will be acquired for the Holder's own account and not with a view to any distribution of such securities in violation of the United States Securities Act of 1933, 15 U.S.C. §§ 77a–77aa;

12. it is (a) either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or (ii) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act), or (b) the authorized signatory for a Holder of Class 3 First Lien Claims that is a either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or (ii) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act); provided, that, the undersigned's certification with respect to this clause 11 in respect of any beneficial owner is made solely in reliance by the undersigned on a certification provided by such beneficial owner to the undersigned that such beneficial owner is either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or (ii) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act) and the undersigned assumes no liability or responsibility for any beneficial owner's status and makes no representation or warranty with respect thereto;

13. it understands and acknowledges that in order to complete the New Notes Election it must also comply with the applicable election procedures as set forth in the New Notes Election & Distribution Procedures Notice, the Solicitation Order, and the Disclosure Statement; and

14. it has full and complete authority to execute and submit this Beneficial Ballot.

**Item 6. Holder Information and Signature.**

BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION (type or print)

13

Name of the Beneficial
Holder:
_____

Signature:
_____

Signatory Name (if other
than the Beneficial
Holder):
_____

Title:
_____

Address:
_____

Email Address:
_____

Telephone Number:
_____

Date Completed:
_____

**PLEASE COMPLETE, SIGN, AND DATE THIS BENEFICIAL BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED.**

**THIS BENEFICIAL BALLOT (IF PRE-VALIDATED BY YOUR NOMINEE) OR, IF APPLICABLE, THE MASTER BALLOT CONTAINING YOUR VOTE AND CAST BY YOUR NOMINEE ON YOUR BEHALF, MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE.**

Your Nominee is authorized to employ its customary practices to forward solicitation information and materials to, and/or collect votes from, its Beneficial Holder clients, whether by e-mail, telephone, or other customary means of communication, including the use of a voter information form or an online platform in lieu of, or in addition to, sending the paper Beneficial Ballot and/or Solicitation Package.

*[Remainder of page intentionally left blank]*

14

## INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL BALLOT

1. The Debtors are soliciting the votes of Holders of Class 3 First Lien Claims with respect to the Plan.  The Plan and Disclosure Statement are included in the packet you are receiving with this Beneficial Ballot.  Capitalized terms used and not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Class that votes on the Plan and if the Plan otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code.  If the Requisite Acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

3. Your Nominee may elect to "pre-validate" the Beneficial Ballot by (i) signing the Beneficial Ballot; (ii) indicating on the Beneficial Ballot the principal amount of First Lien Claims owned by the Beneficial Holder as of the Voting Record Date, DTC participant number, and the account number of the Claims held by the Nominee for the Beneficial Holder; (iii) including a medallion guarantee stamp or authorized signatory list (certifying the Beneficial Holder's First Lien Claims as of the Voting Record Date) with the Beneficial Ballot, and (iv) forwarding such Beneficial Ballot (including any DTC participant number) and other materials requested to be forwarded, to the Beneficial Holder for voting.  The Beneficial Holder must then complete the information requested in the Beneficial Ballot, and return the pre-validated Beneficial Ballot directly to the Solicitation Agent via email to  WeightWatchersballots@ra.kroll.com  (with "WeightWatchers Beneficial Ballot Delivery" in the subject line) or by regular mail, overnight courier, or hand delivery to Kroll's mailing address at WeightWatchers Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232 so that it is **ACTUALLY RECEIVED** by Kroll on or before the Voting Deadline.

4. If your Beneficial Ballot has been "pre-validated" by your Nominee, you can return it directly to the Solicitation Agent by one of the following methods.  For the avoidance of doubt, Beneficial Ballots that have not been "pre-validated" can only be submitted according to voting instructions provided by your Nominee:

| **If by First Class Mail, Overnight Courier, or Hand Delivery:** |
| --- |
| **WeightWatchers Ballot Processing Center**<br>**c/o Kroll Restructuring Administration LLC**<br>**850 Third Avenue, Suite 412**<br>**Brooklyn, NY 11232** |

| (to arrange hand delivery, please email WeightWatchersBallots@ra.kroll.com (with "WeightWatchers Beneficial Ballot Delivery" in the subject line) at least 24 hours prior to arrival at the Kroll address above and provide the anticipated date and time of delivery) |
|---|
| **If by Electronic Mail (Preferred Method of Delivery)** |
| **WeightWatchersballots@ra.kroll.com (with "WeightWatchers Beneficial Ballot Delivery" in the subject line)** |

5. To ensure that your vote is counted, you must deliver this Beneficial Ballot to the following, as applicable:

    a. If you received this Beneficial Ballot and a return envelope addressed to your Nominee, you must return your completed Beneficial Ballot directly to your Nominee in accordance with the instructions provided by your Nominee, and, in any event, with sufficient time to permit your Nominee to deliver your vote(s) on a completed Master Ballot so that it is actually received by the Solicitation Agent before the Voting Deadline.

-or-

    b. If you received this Beneficial Ballot and a return envelope addressed to the Solicitation Agent, you must deliver a Pre-Validated Ballot directly to the Solicitation Agent by using the enclosed return envelope addressed to the Solicitation Agent so as to be actually received by the Solicitation Agent before the Voting Deadline.

6. Any pre-validated Beneficial Ballot or Master Ballot received by the Solicitation Agent after the Voting Deadline will not be counted unless the Debtors determine otherwise or as permitted by the Bankruptcy Court. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent actually receives the executed Beneficial Ballot or Master Ballot, as applicable. In all cases, Holders should allow sufficient time to assure timely delivery. No ballot should be sent to the Bankruptcy Court, the Debtors or the Debtors' financial or legal advisors; and such ballots will not be counted.

7. If you deliver multiple Beneficial Ballots to your Nominee or (if pre-validated) to the Solicitation Agent, as applicable, the last properly executed ballot timely received will supersede and revoke any earlier received ballot.

8. This Beneficial Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with this Beneficial Ballot.

9. This Beneficial Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

10. You must vote all of your Claims within a particular Class either to accept or reject the Plan (i.e., you may not split your vote).

11. If you hold Claims in multiple accounts, you will receive more than one ballot coded for each different account. Each ballot votes only your Claims indicated on that ballot. Please complete and return each ballot you receive.

12. Please be sure to sign and date this Beneficial Ballot. If you are signing this Beneficial Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by the Solicitation Agent or the Debtors, must submit proper evidence of such capacity to the requesting party. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to this Beneficial Ballot.

13. The following Beneficial Ballots or Master Ballots, as applicable, shall not be counted in determining the acceptance or rejection of the Plan: (a) any Beneficial Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any Beneficial Ballot or Master Ballot not actually received by the Solicitation Agent before the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; (c) any unsigned Beneficial Ballot or Master Ballot; (d) any Beneficial Ballot or Master Ballot that partially rejects and partially accepts the Plan; (e) any Beneficial Ballot or Master Ballot not marked to either accept or reject the Plan, or marked to both accept and reject the Plan; and (f) any Beneficial Ballot or Master Ballot superseded by a later, timely submitted valid ballot.

14. If you believe you have received the wrong ballot, you should contact your Nominee.

## **PLEASE MAIL YOUR BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL BALLOT OR THE PROCEDURE FOR VOTING ON THE PLAN, OR IF YOU HAVE RECEIVED A DAMAGED BENEFICIAL BALLOT OR HAVE LOST YOUR BENEFICIAL BALLOT, OR IF YOU NEED ADDITIONAL COPIES OF THE BENEFICIAL BALLOT, DISCLOSURE STATEMENT, PLAN, OR OTHER RELATED MATERIALS, PLEASE CONTACT YOUR NOMINEE.**

YOUR BENEFICIAL BALLOT, IF IT HAS NOT BEEN PRE-VALIDATED, MUST BE RETURNED TO YOUR NOMINEE SUFFICIENTLY IN ADVANCE OF THE VOTING DEADLINE, WHICH IS **5:00 P.M. (PREVAILING EASTERN TIME) ON JUNE 6, 2025**, TO ENABLE YOUR NOMINEE TO ENTER YOUR VOTE IN A MASTER BALLOT AND RETURN SUCH MASTER BALLOT TO KROLL ON OR BEFORE THE VOTING DEADLINE. UNLESS YOUR PRE-VALIDATED BENEFICIAL BALLOT OR THE MASTER BALLOT CONTAINING YOUR VOTE IS ACTUALLY RECEIVED BY KROLL BEFORE THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED.

[*Remainder of page intentionally left blank.*].

<u>**EXHIBIT A**</u>

***Your Nominee may have checked a box below to indicate the CUSIP / ISIN to which this Beneficial Ballot pertains, or otherwise provided that information to you on a label or schedule attached to the Beneficial Ballot.  Please check one and only one box below.  Multiple checked boxes below risk invalidation of your vote.***

**CLASS 3 – FIRST LIEN CLAIMS**

|  | **DESCRIPTION** | **CUSIP / ISIN** |
|---|---|---|
| ☐ | 4.5% First Lien due 04/15/2029 (144A) | 98262PAA9 / US98262PAA93 |
| ☐ | 4.5% First Lien due 04/15/2029 (REGS) | U85332AA9 / USU85332AA92 |

**EXHIBIT B-3**

**Form of Class 3 Ballot (Master)**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**IMPORTANT**:  NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BALLOT.  THE DEBTORS INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT.

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| WW INTERNATIONAL, INC., *et al.*,[1] | ) **IMPORTANT:**  No chapter 11 case has been commenced as of the date of the distribution of |
| Debtors. | ) this ballot.  This ballot is being distributed to you as a part of a prepetition solicitation of votes on a prepackaged plan of reorganization.  The Voting Deadline is June 6, 2025 at 5:00 p.m. (prevailing Eastern Time). |

**MASTER BALLOT FOR
ACCEPTING OR REJECTING THE DEBTORS'
JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION**

**CLASS 3 – FIRST LIEN CLAIMS**

IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT, THE VOTING PROCEDURES, OR ANY OF THE SOLICITATION MATERIALS YOU HAVE RECEIVED, OR YOU NEED TO OBTAIN ADDITIONAL SOLICITATION MATERIALS, PLEASE CONTACT THE DEBTORS' PROPOSED NOTICE AND SOLICITATION AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC ("KROLL" OR THE "SOLICITATION AGENT") BY:  (1) CALLING THE DEBTORS' SOLICITATION AGENT BY CALLING 1-(888) 643-6250 (U.S./CANADA, TOLL-FREE) OR 1-(646) 930-6250 (INTERNATIONAL, TOLL), (2) EMAILING WEIGHTWATCHERSINFO@RA.KROLL.COM AND REFERENCING "WEIGHTWATCHERS BALLOT PROCESSING" IN THE SUBJECT LINE, (3) VISITING THE DEBTORS' SOLICITATION WEBSITE AT HTTPS://RESTRUCTURING.RA.KROLL.COM/WEIGHTWATCHERS/, AND/OR (4) WRITING TO THE SOLICITATION AGENT AT THE FOLLOWING ADDRESS:

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are WW International, Inc. (0273), WW North America Holdings, LLC (6141), WW Canada Holdco, Inc. (5680), WW.com, LLC (4196), W Holdco, Inc. (4087), WW Health Solutions, Inc. (3859), Weekend Health, Inc. (6812), and WW NewCo, Inc. (N/A).  The Debtors' headquarters is located at 675 Avenue of the Americas, 6th Floor, New York, NY 10010.

WEIGHTWATCHERS BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 THIRD AVENUE, SUITE 412, BROOKLYN, NY 11232.

PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.

PLEASE NOTE THAT IN ORDER TO MAKE THE NEW NOTES ELECTION, HOLDERS OF CLASS 3 FIRST LIEN CLAIMS (OR THEIR CUSTODIAN ON THEIR BEHALF) MUST ALSO COMPLETE APPLICABLE ELECTION PROCEDURES AS SET FORTH IN THE NEW NOTES ELECTION & DISTRIBUTION PROCEDURES NOTICE, THE SOLICITATION ORDER, AND THE DISCLOSURE STATEMENT.  PLEASE CONTACT THE SOLICITATION AGENT WITH ANY QUESTIONS.

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS MASTER BALLOT.

The Debtors are sending this master ballot (this "Master Ballot") to brokers, dealers, commercial banks, trust companies, or other agent nominees (each a "Nominee") of Beneficial Holders[2] of Class 3 First Lien Claims as of April 30, 2025 (the "Voting Record Date") in connection with the *Joint Prepackaged Plan of Reorganization of WW International, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time in accordance with its terms and including all exhibits or supplements thereto, the "Plan").[3]

The solicitation procedures are described in the *Debtors' Motion for Entry of an Order (I) Scheduling Combined Hearing on Adequacy of the Disclosure Statement and Confirmation of the Plan; (II) Fixing Deadline to Object to Disclosure Statement and the Plan; (III) Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing and Objection Deadline; (IV) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (V) Conditionally (A) Directing the United States Trustee not to Convene Section 341(A) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities and Rule 2015.3 Reports; and (VI) Granting Related Relief*, dated May 6, 2025 (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Solicitation Motion"), which was approved by the Court on [●], 2025 [Docket No. [●]] (the "Solicitation Order").  Nominees should use this Master Ballot to (a) cast votes to accept or reject the Plan and (b) make elections, each on behalf of and in accordance with the votes cast by the Beneficial Holders holding Class 3 First Lien Claims through them.

---

[2]   A "Beneficial Holder" is a beneficial owner of Class 3 First Lien Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

[3]   Capitalized terms used but not defined herein have the meaning given to such terms in the Disclosure Statement.

**The CUSIPs / ISINs for Class 3 First Lien Claims entitled to vote are identified on <u>Exhibit A</u> attached hereto**.

In lieu of submitting this Master Ballot, Nominees may also send Beneficial Holders a pre-validated Class 3 First Lien Claims beneficial ballot (a "<u>Pre-Validated Beneficial Ballot</u>"). Based on your decision whether or not to pre-validate the ballot, the below guidance with respect to pre-validation is mutually exclusive.

<u>PRE-VALIDATED BENEFICIAL BALLOT</u>. You may pre-validate a beneficial ballot by completing a beneficial ballot with the exception of Items 2 and 3 and indicating on the ballot: (a) the name and DTC participant number of the Nominee; (b) the aggregate principal amount of Class 3 First Lien Claim(s) held by such Nominee for the Beneficial Holder as of the Voting Record Date; (c) the account number(s) for the account(s) in which such Class 3 First Lien Claim(s) are held by the Nominee for the Beneficial Holder; and (d) signing the beneficial ballot and affixing a medallion guarantee thereto (or appending a list of the Nominee's authorized signers), certifying the Beneficial Holder's position in the First Lien Claims as of the Voting Record Date. Once you pre-validate a Beneficial Ballot, you must **IMMEDIATELY** forward the solicitation materials to each applicable Beneficial Holder, including (i) the Pre-Validated Beneficial Ballot, (ii) the Plan and the Disclosure Statement, (iii) a postage pre-paid return envelope addressed to the Solicitation Agent, and (iv) clear instructions that the Beneficial Holder must return its completed and executed Beneficial Ballot directly to the Solicitation Agent before the Voting Deadline. In addition to submission in the return envelope provided, if any, or otherwise via regular mail, overnight courier, or hand delivery, Pre-Validated Beneficial Ballots may be returned to the Solicitation Agent by electronic mail to WeighWatchersBallots@ra.kroll.com (with "WeightWatchers Ballot Delivery" in the subject line).

<u>NOT PRE-VALIDATED BALLOT</u>. If you choose not to pre-validate Beneficial Ballots, you must **IMMEDIATELY** forward the solicitation materials to each Beneficial Holder, including (a) the Beneficial Ballot, (b) the Plan and the Disclosure Statement (c) a return envelope addressed to you, its Nominee, and (d) clear instructions stating that the Beneficial Holder must return its ballot directly to you in sufficient time to allow you to execute this Master Ballot and return it to the Solicitation Agent before the Voting Deadline. Upon receipt of completed and executed Beneficial Ballots returned to you by the Beneficial Holders, you must compile and validate the Beneficial Holders' votes and other relevant information using the customers' names or account numbers. You must then execute this Master Ballot and transmit it to the Solicitation Agent by the Voting Deadline. You must retain such Beneficial Ballots in your files for a period of one (1) year after the effective date of the Plan (as you may be ordered to produce the Beneficial Holder ballots to the Debtors or the Bankruptcy Court).

<u>NO</u> fees or commissions or other remuneration will be payable to you in your capacity as Nominee for soliciting votes on the proposals related to the Plan. The Debtors will, however, upon written request, reimburse you for customary mailing and handling expenses you incur in forwarding the ballot and other enclosed materials to Beneficial Holders.

This Master Ballot may not be used for any purpose other than for submitting votes with respect to Plan. Your rights and the rights of Beneficial Holders are described in the *Disclosure Statement*

*for the Joint Prepackaged Plan of Reorganization of WW International, Inc. and Its Debtor Affiliates*, dated May 6, 2025 (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "<u>Disclosure Statement</u>"). The Plan, the Disclosure Statement, and the Class 3 First Lien Claims ballot (the "<u>Beneficial Ballot</u>," collectively, together with a pre-addressed, postage pre-paid return envelope, the "<u>Solicitation Package</u>") were sent to you as Nominee for the Beneficial Holders of Class 3 First Lien Claims. If you believe you have received this Master Ballot in error, or if you believe you received the wrong Master Ballot, please contact the Solicitation Agent immediately at the email address or telephone number set forth above.

You are authorized to transmit solicitation information and materials to and/or collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Ballot, and providing solicitation information and materials to and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means, including the use of an online platform.

---

**THIS MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BEFORE <u>5:00 P.M. (PREVAILING EASTERN TIME) ON JUNE 6, 2025</u> (THE "<u>VOTING DEADLINE</u>").**

**IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR MASTER BALLOT BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, THE VOTES INCLUDED IN YOUR MASTER BALLOT WILL NOT BE COUNTED.**

---

<u>Item 1</u>.  **Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐      is a Nominee for Beneficial Holder(s) on account of the Class 3 First Lien Claim(s) listed in Item 2 below;

☐      is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by the Beneficial Holder(s) or a Nominee that is the registered Holder of the Class 3 First Lien Claim(s) listed in Item 2 below; or

☐      has been granted a proxy from (a) a Nominee; or (b) the Beneficial Holder that is the registered Holder of the Class 3 First Lien Claim(s) listed in Item 2 below.

Accordingly, the undersigned certifies that it has full power and authority to vote to accept or reject the Plan on behalf of such Beneficial Holder(s) on account of such Class 3 First Lien Claims.

4

**Item 2.** **Vote of Class 3 First Lien Claim(s).**

The undersigned transmits the following vote(s) of the Beneficial Holder(s) in respect of their Class 3 First Lien Claim(s), and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are a Beneficial Holder as of the Voting Record Date and have delivered to the undersigned, as Nominee, properly executed Beneficial Ballots casting such votes:[4]

| Please indicate the CUSIP/ISIN to which this Master Ballot pertains by checking the applicable box in **Exhibit A** hereto | | | |
|---|---|---|---|
| Customer Account Number or Name of Each Beneficial Holder | Item 2 of Beneficial Ballot Indicate the vote cast on the Beneficial Ballot by entering the voting amount in the appropriate column below. | | Item 3 of the Beneficial Ballot If the Third-Party Release Opt-In box in item 3 of the Beneficial Ballot was checked, place an "X" in the column below |
| | Accept the Plan | Reject the Plan | |
| 1. | $ | $ | |
| 2. | $ | $ | |
| 3. | $ | $ | |
| 4. | $ | $ | |
| 5. | $ | $ | |
| 6. | $ | $ | |
| 7. | $ | $ | |
| 8. | $ | $ | |
| 9. | $ | $ | |
| 10. | $ | $ | |
| TOTAL | $ | $ | |

---

[4]    Indicate in the appropriate column the aggregate unpaid principal amount voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note each Beneficial Holder must vote all of each such Beneficial Holder's Class 3 First Lien Claims to accept or to reject the Plan, and may not split such vote.  Any Beneficial Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or which indicates both an acceptance and a rejection of the Plan, shall not be counted.

**IF YOU ARE ACTING AS A VOTING NOMINEE FOR MORE THAN TEN BENEFICIAL HOLDERS, PLEASE ATTACH ADDITIONAL SHEETS, AS NECESSARY.**

**<u>Item 3</u>. Releases.**

The language with respect to Third-Party Releases included in Item 3 of the Beneficial Ballot is shown in <u>Annex A</u> attached hereto.

**<u>Item 4</u>. Certification as to Transcription of Information from Item 4 of the Beneficial Ballots as to Class 3 First Lien Claims Voted Through Other Beneficial Ballots.**

The undersigned certifies that it has transcribed in the following table the information, if any, that the Beneficial Holders have provided in Item 4 of the Beneficial Ballot, identifying any Class 3 First Lien Claims for which such Beneficial Holders have submitted other ballots (other than to the undersigned):

| **<u>Your</u> Customer Account Number for Each Beneficial Holder That Completed Item 4 of the Beneficial Ballot** | **TRANSCRIBE FROM ITEM 4 OF THE BENEFICIAL BALLOTS:** | | | | |
|---|---|---|---|---|---|
| | **Customer Account Number at Nominee of Other Class 3 Senior Secured Notes Claims Voted** | **Name of Registered Holder and DTC Participant Number, if Applicable, of Nominee of Other Class 3 Senior Secured Notes Claims Voted** | **Principal Amount of Other Class 3 Senior Secured Notes Claims Voted** | **CUSIP of Other Class 3 Senior Secured Notes Claims Voted** | **Plan Vote of Other Class 3 Senior Secured Notes Claims Voted (Accept or Reject)** |
| 1. | | | $ | | |
| 2. | | | $ | | |
| 3. | | | $ | | |
| 4. | | | $ | | |
| 5. | | | $ | | |
| 6. | | | $ | | |
| 7. | | | $ | | |

**<u>Item 5</u>. Certifications.**

By signing this Master Ballot, the undersigned certifies that:

1. (i) it has received a copy of the Disclosure Statement, the Plan, the Beneficial Ballot, and the Solicitation Package, and has delivered the same to the Beneficial Holders holding Class 3 First Lien Claims through the undersigned; (ii) it has received a completed and signed Beneficial Ballot from each such Beneficial Holder; (iii) it is the registered Holder of the securities being voted, or is the agent thereof; and (iv) it has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

2. it has properly disclosed: (i) the number of Beneficial Holders holding Class 3 First Lien Claims through the undersigned; (ii) the respective amounts of Class 3 First Lien Claims owned by each Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

3. if it is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 3 First Lien Claims, it confirms and attests to each of the certifications in Item 5 of the applicable Beneficial Ballot; each such Beneficial Holder has certified to it, or an intermediary Nominee, as applicable, that the Beneficial Holder is eligible to vote on the Plan;

4. the undersigned is (a) either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or (ii) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act), or (b) the authorized signatory for a Holder of Class 3 First Lien Claims that is a either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or (ii) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act); provided, that, the undersigned's certification with respect to this clause 5 in respect of any beneficial owner is made solely in reliance by the undersigned on a certification provided by such beneficial owner to the undersigned that such beneficial owner is either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or (ii) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act) and the undersigned assumes no liability or responsibility for any beneficial owner's status and makes no representation or warranty with respect thereto; and

5. it will maintain the Beneficial Ballots and evidence of separate transactions returned by the Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

**Item 6. Voter Information and Signature.**

BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION

Nominee Name: _____

DTC Participant Number: _____

Name of Agent for Nominee
(if applicable): _____

Signature: _____

Signatory Name (if other
than Nominee): _____

Title: _____

Address: _____

Email Address: _____

Telephone: _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT PROMPTLY!**

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED BY ONE OF THE FOLLOWING RETURN METHODS SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE:**

IN THE ENCLOSED PRE-PAID, PRE-ADDRESSED RETURN ENVELOPE OR OTHERWISE BY REGULAR MAIL OR VIA OVERNIGHT COURIER OR HAND DELIVERY TO THE ADDRESS SET FORTH BELOW:

**WeightWatchers Ballot Processing**
**c/o Kroll Restructuring Administration LLC**
**850 Third Avenue, Suite 412**
**Brooklyn, New York 11232**
(to arrange hand delivery, please email WeightWatchersBallots@ra.kroll.com (with "WeightWatchers Master Ballot Submission" in the subject line) at least 24 hours prior to arrival at the Kroll address above and provide the anticipated date and time of delivery)

**-OR-**
VIA EMAIL (ATTACHING A SCANNED PDF OF THE FULLY EXECUTED MASTER BALLOT) TO WEIGHTWATCHERSBALLOTS@RA.KROLL.COM, WITH "WEIGHTWATCHERS MASTER BALLOT SUBMISSION" IN THE SUBJECT LINE.

**PLEASE CHOOSE *ONLY ONE* METHOD TO RETURN THIS MASTER BALLOT.**
**THIS MASTER BALLOT MUST BE RECEIVED BEFORE THE VOTING DEADLINE.**

## MASTER BALLOT INSTRUCTIONS

1. The Debtors are soliciting the votes of Holders of Class 3 First Lien Claims with respect to the Plan. The Plan and Disclosure Statement are included in the packet you are receiving with this Master Ballot. Capitalized terms used and not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

2. The Court may confirm the Plan and thereby bind Beneficial Holders of First Lien Claims. Please review the Disclosure Statement for more information.

3. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Class that votes on the Plan and if the Plan otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code. If the Requisite Acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

4. You should immediately distribute, and in no event no later than three (3) business days after receipt, the Beneficial Ballots and the Solicitation Package to all Beneficial Holders of Class 3 First Lien Claims and take any action required to enable each such Beneficial Holder to timely vote the Claims that it holds. If your customary practice is to forward the solicitation information to and/or collect votes from Beneficial Holders by e-mail, telephone, or other customary means of communication, you are authorized to employ that method of communication, including use of an online platform, in lieu of sending the paper Ballot and/or Solicitation Package. Any vote transmitted to you, whether by Beneficial Ballot or otherwise, by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to Kroll, a Master Ballot that reflects the vote of such Beneficial Holders by the Voting Deadline of 5:00 p.m. (prevailing Eastern Time) on June 6, 2025 or otherwise validate the Master Ballot in a manner acceptable to Kroll. If your customary practice is to collect votes from your Beneficial Holders by voter information form, e-mail, telephone, or other accepted methods of communication, you are authorized to collect the votes and opt-in elections in that manner.

5. To have the votes of your Beneficial Holders count, you should already have done one of the following:

   a. delivered the Beneficial Ballots and the Solicitation Package to each Beneficial Holder with clear instructions on when to return such ballots to you to allow you to complete and return this Master Ballot so that the Solicitation Agent actually receives it prior to the Voting Deadline;

   -or-

9

     b.  if you are not submitting this Master Ballot, sent the Beneficial Holders the Pre-Validated Beneficial Ballots in their Solicitation Package for direct return to the Solicitation Agent.

6. With regard to any votes returned to you by a Beneficial Holder (whether through Beneficial Ballot or otherwise), you must compile and validate the votes, execute the Master Ballot, and deliver the Master Ballot to Kroll so that it is actually received by Kroll on or before the Voting Deadline. All Beneficial Ballots (or customary communications for transmitting votes) returned by Beneficial Holders should be retained for inspection for at least one (1) year from the Voting Deadline. You may be ordered to produce the Beneficial Ballots (or customary communications for transmitting votes) to the Debtors or the Bankruptcy Court.

7. You may complete and deliver to Kroll multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the latest received valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior received Master Ballot. Likewise, if a Beneficial Holder submits to you more than one Beneficial Ballot, (i) the latest received Ballot from a Beneficial Holder before the submission deadline that you impose shall be deemed to supersede any prior Ballot submitted by the Beneficial Holder; and (ii) you should complete the Master Ballot accordingly.

8. If you are both the Nominee and Beneficial Holder, and you wish to vote such Class 3 Senior Secured Notes Claims for which you are a Beneficial Holder, you may return this Master Ballot for such Class 3 Senior Secured Notes Claims.

9. This Master Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with this Master Ballot.

10. This Master Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

11. You must vote all of your Claims within a particular Class either to accept or reject the Plan (i.e., you may not split your vote).

12. For purposes of tabulating votes, you or a Beneficial Holder will be deemed to have voted the principal amount of your or its Claims in a particular Class, although any principal amounts may be adjusted by the Solicitation Agent to reflect the amount of the Claim actually voted, including prepetition interest.

13. Please be sure to sign and date this Master Ballot. If you are signing this Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by the Solicitation Agent or the

Debtors, must submit proper evidence of such capacity to the requesting party.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to this Master Ballot.

14. Votes cast by your Beneficial Holder clients on this Master Ballot will be applied to the applicable positions you as the Nominee hold, as of the Voting Record Date, as evidenced by the applicable securities position report(s) obtained from the Indenture Trustee and/or the Depository Trust Company ("<u>DTC</u>") or other applicable depository firm.  Votes submitted pursuant to a Master Ballot will not be counted in excess of the amount of First Lien Claims you hold as of the Voting Record Date.

15. If you submit conflicting votes or "over-votes," the Solicitation Agent will use reasonable efforts to reconcile discrepancies with the applicable Nominee.  If over-votes on a Master Ballot are not reconciled prior to the preparation of the voting report, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of your position in the particular Class.

16. The following ballots or Master Ballots, as applicable, shall not be counted in determining the acceptance or rejection of the Plan: (a) any ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any ballot or Master Ballot not actually received by the Solicitation Agent before the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; (c) any unsigned ballot or Master Ballot; (d) any ballot that does not contain a signature; (e) any ballot or Master Ballot that partially rejects and partially accepts the Plan; (f) any ballot or Master Ballot not marked to either accept or reject the Plan, or marked to both accept and reject the Plan; and (g) any ballot or Master Ballot superseded by a later, timely submitted valid ballot.

17. If you believe you have received the wrong ballot, you should contact the Solicitation Agent immediately at (888) 643-6250 (U.S./Canada, toll-free) or +1(646) 930-6250 (international, toll).

18. The Debtors will, upon written request, reimburse you for customary mailing and handling expenses you incur in forwarding the Solicitation Package and Ballot to the Beneficial Holders for which you are the Nominee.  No fees or commissions or other remuneration will be payable to any broker, dealer, or other person for soliciting votes from Beneficial Holders with respect to the Plan.

<u>**PLEASE MAIL YOUR BALLOT PROMPTLY!**</u>

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE PROCEDURE FOR VOTING ON THE PLAN, OR IF YOU HAVE RECEIVED A DAMAGED MASTER BALLOT OR HAVE LOST YOUR MASTER BALLOT, OR IF YOU NEED ADDITIONAL COPIES OF THE MASTER BALLOT, BENEFICIAL BALLOT, DISCLOSURE STATEMENT, PLAN, OR OTHER RELATED MATERIALS, PLEASE CONTACT KROLL RESTRUCTURING ADMINISTRATION LLC (THE**

**DEBTORS' SOLICITATION AGENT) AT: (888) 643-6250 (U.S./CANADA, TOLL-FREE) OR +1-(646) 930-6250  (INTERNATIONAL, TOLL) OR VIA EMAIL: WEIGHTWATCHERSINFO@RA.KROLL.COM, SUBJECT LINE: "WEIGHTWATCHERS SOLICITATION INQUIRY".**

**PLEASE BE ADVISED THAT THE SOLICITATION AGENT IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL ADVICE.**

[*Remainder of page intentionally left blank*]

## <u>EXHIBIT A</u>

***Please check one and only one box below to indicate the CUSIP / ISIN to which this Master Ballot pertains, or otherwise provide that information on a label or schedule attached to the Master Ballot.  Multiple checked boxes below risk invalidation of the votes contained in this Master Ballot.***

### CLASS 3 – FIRST LIEN CLAIMS

| | DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| ☐ | 4.5% First Lien due 04/15/2029 (144A) | 98262PAA9 / US98262PAA93 |
| ☐ | 4.5% First Lien due 04/15/2029 (REGS) | U85332AA9 / USU85332AA92 |

13

## ANNEX A

## Release Language from Beneficial Ballot

<u>Important information regarding the Releases by Holders of Claims and Interests of the Debtors, Exculpation and Injunction Provisions, and Optional Opt-In Election.</u>

The Plan contains a series of releases that are part of the overall restructuring set forth in the Plan and described in greater detail in the Disclosure Statement.  In that respect, parties should be aware that, if the Plan is confirmed and the Effective Date occurs, certain parties will be getting releases and certain parties will be giving releases as set forth in Article XI of the Plan.  For your convenience, excerpts of the release provisions from the Plan are set forth below, however, you should carefully read the enclosed Disclosure Statement and Plan with respect to the releases.

**ARTICLE XI.E OF THE PLAN PROVIDES FOR A THIRD-PARTY RELEASE BY THE RELEASING PARTIES (THE "THIRD-PARTY RELEASE"):**

**EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE PLAN EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS, AND IS DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF ANY OF THE FOREGOING ENTITIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES, THAT SUCH ENTITY WOULD HAVE BEEN ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, A REORGANIZED DEBTOR, OR THEIR ESTATES OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE CAPITAL STRUCTURE, BUSINESS, MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR**

14

**INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR
CONTRACTUAL ARRANGEMENTS BETWEEN OR AMONG ANY DEBTOR
AND ANY RELEASED PARTY, THE OWNERSHIP AND/OR OPERATION OF
THE DEBTORS BY ANY RELEASED PARTY OR THE DISTRIBUTION OF ANY
CASH OR OTHER PROPERTY OF THE DEBTORS TO ANY RELEASED
PARTY, THE FIRST LIEN CREDIT AGREEMENT CLAIMS, THE SENIOR
SECURED NOTES CLAIMS, CASH MANAGEMENT ARRANGEMENTS, THE
ASSERTION OR ENFORCEMENT OF RIGHTS OR REMEDIES AGAINST THE
DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING
EFFORTS, ANY AVOIDANCE ACTIONS (BUT EXCLUDING AVOIDANCE
ACTIONS BROUGHT AS COUNTERCLAIMS OR DEFENSES TO CLAIMS
ASSERTED AGAINST THE DEBTORS), INTERCOMPANY TRANSACTIONS
BETWEEN OR AMONG A DEBTOR OR AN AFFILIATE OF A DEBTOR AND
ANOTHER DEBTOR OR AFFILIATE OF A DEBTOR, THE CHAPTER 11
CASES, THE FORMULATION, PREPARATION, DISSEMINATION,
NEGOTIATION, OR FILING OF THE RESTRUCTURING SUPPORT
AGREEMENT AND RELATED PREPETITION TRANSACTIONS, THE
DISCLOSURE STATEMENT, THE FIRST LIEN CREDIT AGREEMENT, THE
SENIOR SECURED NOTES INDENTURE THE NEW TERM LOAN
DOCUMENTS, THE NEW NOTES DOCUMENTS, THE PLAN (INCLUDING,
FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT), ANY OTHER
DEFINITIVE DOCUMENT, OR ANY RESTRUCTURING TRANSACTION,
CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR
DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY
ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT,
DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR
THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE
CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) RELATING
TO ANY OF THE FOREGOING, CREATED OR ENTERED INTO IN
CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE
DISCLOSURE STATEMENT, THE FIRST LIEN CREDIT AGREEMENT AND
ANY FACILITY THEREUNDER, THE SENIOR SECURED NOTES INDENTURE
AND ANY FACILITY THEREUNDER, THE NEW TERM LOAN DOCUMENTS,
THE NEW NOTES DOCUMENTS, THE NEW COMMON EQUITY, THE NEW
ORGANIZATIONAL DOCUMENTS, THE PLAN, THE PLAN SUPPLEMENT,
ANY OTHER DEFINITIVE DOCUMENT BEFORE OR DURING THE CHAPTER
11 CASES, ANY PREFERENCE, FRAUDULENT TRANSFER, OR OTHER
AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE
BANKRUPTCY CODE OR OTHER APPLICABLE LAW, THE FILING OF THE
CHAPTER 11 CASES, THE SOLICITATION OF VOTES ON THE PLAN, THE
PURSUIT OF CONFIRMATION OF THE PLAN, THE PURSUIT OF
CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF
THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF DEBT
AND/OR SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION
OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT,
OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT,**

**EVENT, OR OTHER OCCURRENCE RELATED OR RELATING TO ANY OF THE FOREGOING TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES PRIMARILY ARISING OUT OF ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, EACH SOLELY TO THE EXTENT AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, INCLUDING THE NEW TERM LOAN DOCUMENTS, THE NEW NOTES DOCUMENTS, THE NEW ORGANIZATIONAL DOCUMENTS OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASE IN THIS ARTICLE XI.E, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE RELEASE IN THIS ARTICLE XI.E IS: (I) CONSENSUAL; (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THE PLAN; (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THIS ARTICLE XI.E; (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (VI) FAIR, EQUITABLE, AND REASONABLE; (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THIS ARTICLE XI.E.**

**EACH OF THE RELEASING PARTIES EXPRESSLY ACKNOWLEDGES THAT THE RELEASES AND COVENANTS NOT TO SUE CONTAINED IN THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS OR RELEASED CLAIMS OR CAUSES OF ACTION ARE PRESENTLY KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, OR FORESEEN OR UNFORESEEN.**

**<u>IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE:</u>**

UNDER THE PLAN, "RELEASED PARTY" MEANS, COLLECTIVELY EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (I) EACH DEBTOR; (II) EACH

REORGANIZED DEBTOR; (III) EACH AGENT; (IV) THE CONSENTING CREDITORS; (V) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ELECT TO OPT IN TO THE THIRD PARTY RELEASES SET FORTH IN ARTICLE XI OF THE PLAN AND (VI) EACH RELATED PARTY OF EACH ENTITY OR PERSON IN CLAUSE (I) THROUGH CLAUSE (V); *PROVIDED* THAT IN EACH CASE, AN ENTITY OR PERSON SHALL NOT BE A RELEASED PARTY IF IT TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE THIRD-PARTY RELEASES CONTAINED IN THE PLAN THAT IS NOT WITHDRAWN OR OTHERWISE RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (I) THE RELEASED PARTIES; (II) ALL HOLDERS OF CLAIMS AND INTERESTS THAT ELECT TO "OPT IN" TO THE THIRD-PARTY RELEASES SET FORTH IN ARTICLE XI OF THE PLAN; AND (III) EACH RELATED PARTY OF EACH ENTITY OR PERSON IN CLAUSE (I) AND CLAUSE (II).

**ARTICLE XI.C OF THE PLAN PROVIDES FOR AN EXCULPATION OF CERTAIN PARTIES (THE "EXCULPATION"):**

**NOTWITHSTANDING ANYTHING CONTAINED IN THIS PLAN TO THE CONTRARY, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW AND WITHOUT AFFECTING OR LIMITING THE RELEASES IN ARTICLE XI.D AND XI.E, EFFECTIVE AS OF THE EFFECTIVE DATE, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY OR OBLIGATION FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE FIRST LIEN CREDIT AGREEMENT CLAIMS, THE SENIOR SECURED NOTES CLAIMS, CASH MANAGEMENT ARRANGEMENTS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR TERMINATION OF THE RESTRUCTURING SUPPORT AGREEMENT AND RELATED PREPETITION TRANSACTIONS, THE FIRST LIEN CREDIT AGREEMENT (INCLUDING ANY AMENDMENTS, RESTATEMENTS OR SUPPLEMENTS THERETO), THE SENIOR SECURED NOTES INDENTURE (INCLUDING ANY AMENDMENTS, RESTATEMENTS OR SUPPLEMENTS THERETO), THE NEW TERM LOAN**

17

DOCUMENTS, THE NEW NOTES DOCUMENTS, THE NEW COMMON EQUITY, THE NEW ORGANIZATIONAL DOCUMENTS, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) RELATING TO ANY OF THE FOREGOING, CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE FIRST LIEN CREDIT AGREEMENT, THE SENIOR SECURED NOTES INDENTURE, THE NEW TERM LOAN DOCUMENTS, THE NEW NOTES DOCUMENTS, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, BEFORE OR DURING THE CHAPTER 11 CASES, ANY PREFERENCE, FRAUDULENT TRANSFER, OR OTHER AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF DEBT AND/OR SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE PLAN EFFECTIVE DATE, EXCEPT FOR CLAIMS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER BY A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

THE EXCULPATED PARTIES HAVE, AND UPON CONFIRMATION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

**ARTICLE XI.F OF THE PLAN ESTABLISHES AN INJUNCTION (THE "INJUNCTION"):**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER OR FOR OBLIGATIONS OR DISTRIBUTIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE EXCULPATED PARTIES, OR THE RELEASED PARTIES:    (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS;    (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.  UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND THEIR RESPECTIVE RELATED PARTIES SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OF CONSUMMATION OF THE PLAN.  EXCEPT AS OTHERWISE SET FORTH IN THE CONFIRMATION ORDER, EACH HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST, AS APPLICABLE, BY ACCEPTING, OR BEING ELIGIBLE TO ACCEPT, DISTRIBUTIONS UNDER OR REINSTATEMENT OF SUCH CLAIM OR INTEREST, AS APPLICABLE, PURSUANT TO THE PLAN, SHALL BE DEEMED TO HAVE CONSENTED TO THE INJUNCTION PROVISIONS SET FORTH HEREIN.**

# EXHIBIT C

**New Notes Election & Distribution Procedures Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WW INTERNATIONAL, INC., *et al.*,[1] | Case No. 25-[__] (   ) |
| Debtors. | (Jointly Administered) |
| | **Ref Docket No. ___** |

**SPECIAL NOTICE RELATING TO THE NEW NOTES ELECTION & DISTRIBUTION
PROCEDURES**

---

**This document is the New Notes Election & Distribution Procedures Notice for Holders
of First Lien Claims.  Please read this document carefully as it contains important
information on requirements for receiving New Takeback Debt.**

**ACTION REQUIRED:**

**IF YOU WISH TO MAKE AN ELECTION TO RECEIVE NEW NOTES INSTEAD OF
NEW TERM LOANS ON ACCOUNT OF YOUR FIRST LIEN CLAIM(S), YOU MUST
MAKE THE NEW NOTES ELECTION AND FOLLOW THE PROCEDURES SET
FORTH BELOW BY JUNE 17, 2025 AT 5:00 P.M. (PREVAILING EASTERN TIME)
(THE "NEW NOTES ELECTION DEADLINE") OR YOUR ELECTION MAY NOT
BE VALID OR CONSIDERED.**

---

**PLEASE TAKE NOTICE THAT:**

On May 6, 2025 (the "Petition Date"), WW International, Inc. and certain of its affiliates
(collectively, the "Debtors") each commenced a case under chapter 11 (collectively, the "Chapter
11 Cases") of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"),
in the United States Bankruptcy Court for the District of Delaware (the "Court").

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of their federal tax identification numbers,
to the extent applicable, are WW International, Inc. (0273), WW North America Holdings, LLC (6141), WW
Canada Holdco, Inc. (5680), WW.com, LLC (4196), W Holdco, Inc. (4087), WW Health Solutions, Inc. (3859),
Weekend Health, Inc. (6812), and WW NewCo, Inc. (N/A).  The Debtors' headquarters is located at 675 Avenue
of the Americas, 6th Floor, New York, NY 10010.

On the Petition Date, the Debtors filed a joint "prepackaged" plan of reorganization (the "Plan") and a proposed disclosure statement (the "Disclosure Statement") pursuant to sections 1125 and 1126 of the Bankruptcy Code. Solicitation of the Plan commenced on May 6, 2025. Copies of the Plan, the Disclosure Statement, and related documents may be obtained free of charge by visiting the website maintained by the Debtors' notice, claims and solicitation agent, Kroll Restructuring Administration LLC (the "Solicitation Agent"), at https://restructuring.ra.kroll.com/WeightWatchers/.

On May [●], 2025, the Court entered the *Order (I) Scheduling Combined Hearing on Adequacy of the Disclosure Statement and Confirmation of the Plan; (II) Fixing Deadline to Object to the Disclosure Statement and the Plan; (III) Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing and Objection Deadline; (IV) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (V) Conditionally (A) Directing the United States Trustee not to Convene Section 341(A) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities and Rule 2015.3 Reports; and (VI) Granting Related Relief* [Docket No. [●]] (the "Solicitation Order"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan, Disclosure Statement, or the Solicitation Order, as applicable.

In accordance with the Solicitation Order, this election notice (this "New Notes Election & Distribution Procedures Notice") is being sent to you in connection with the Plan because the records maintained by the Debtors indicate that you are a Holder of a First Lien Claim as of June 3, 2025. Articles V.E and VII.G-I of the Plan, set forth more fully on **Exhibit 1** hereto, provide that each Holder of a First Lien Claim may elect to receive their pro rata share of New Takeback Debt in the form of New Notes by making a valid New Notes Election. If you do not make a New Notes Election, you will be entitled to receive New Term Loans under the Plan. To make a valid New Notes Election, you must follow the applicable instructions below:

I. If you are a Holder of a First Lien Credit Agreement Claim and elect to receive your *pro rata* share of New Takeback Debt in the form of New Notes, you must submit a properly completed and duly executed election through the Solicitation Agent's electronic submission portal, by visiting the following website and clicking "Submit Election Form" on the Case Navigation panel at the left-hand margin of the website landing page: https://restructuring.ra.kroll.com/WeightWatchers/, on or before the New Notes Election Deadline.

II. If you are a Holder of a Senior Secured Notes Claims and elect to receive your *pro rata* share of New Takeback Debt in the form of New Notes, you (or your custodian on your behalf) must electronically transmit your election to receive the New Notes by causing DTC to transfer your Senior Secured Notes to the Solicitation Agent in accordance with DTC's ATOP procedures, on or before the New Notes Election Deadline. For the avoidance of doubt, a Holder of Senior Secured Notes Claims that validly makes a New Notes Election does not need to submit an Election Form to Kroll.

**Please note that in order to receive New Notes, such Holder of First Lien Claims, as part of the procedures described above, will be required to certify that such Holder is either**

2

(i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or (ii) (A) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act), is acquiring the New Notes in an offshore transaction in compliance with Rule 904 of Regulation S under the Securities Act and not participating on behalf of or on account of a U.S. person and (B) a qualified investor as defined in Regulation (EU) 2017/1129 and as defined in Article 2 of Regulation (EU) 2017/1129 as it forms part of domestic law by virtue of the European Union (Withdrawal) Act 2018.

Additionally, to receive <u>New Term Loans</u> on the Effective Date, a Holder of Senior Secured Notes Claims (or their custodian on their behalf) must, by the New Notes Election Deadline, (i) electronically transmit their default position to receive the New Term Loans by causing DTC to transfer such Holder's Senior Secured Notes to the Solicitation Agent in accordance with DTC's ATOP procedures and (ii) submit a properly completed and duly executed Election Form through the Solicitation Agent's electronic submission portal, by visiting the following website and clicking "Submit Election Form" on the Case Navigation panel at the left-hand margin of the website landing page: https://restructuring.ra.kroll.com/WeightWatchers/, on or before the New Notes Election Deadline.

For the avoidance of any doubt, you must make, and/or must sure that your custodian on your behalf makes, all required submissions and electronic transmissions to be received by the Solicitation Agent and/or DTC, as the case may be, by <u>5:00 p.m. on June 17, 2025</u> (the "<u>New Notes Election Deadline</u>") in order to receive your distribution on the Effective Date.

Pursuant to the Solicitation Order, the Debtors may propose alternative dates to the Proposed New Notes Election Dates by providing at least two (2) business days' notice to the Notice Parties set forth in the Solicitation Order. Notice of any change to the Proposed New Notes Election Dates will also be filed on the docket of the Chapter 11 Cases.

Questions concerning this notice or the New Notes Election may be directed to Kroll Restructuring Administration LLC, the Solicitation Agent, by: (1) emailing WeightWatchersIssuerServices@is.kroll.com and referencing "WeightWatchers New Notes Election" in the subject line, (2) visiting the Debtors' solicitation website at https://restructuring.ra.kroll.com/WeightWatchers/, and/or (3) writing to the Solicitation Agent at the following address: WW International, Inc, Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232.

*[Remainder of page intentionally left blank.]*

Exhibit 1

**Applicable Plan Provisions**

**Article V.E.  New Notes Election**.

**Each Holder of a First Lien Claim may elect to receive New Takeback Debt in the form of New Notes, regardless of whether such Holder's First Lien Claims are First Lien Credit Agreement Claims or Senior Secured Notes Claims; provided that any holder of First Lien Claims that elects to receive New Notes must certify to the reasonable satisfaction of the Debtors that it is: (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or (ii) (A) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act), that is acquiring the New Notes in an offshore transaction in compliance with Regulation S under the Securities Act and not participating on behalf of, or on account of, a U.S. person and (B) a qualified investor as defined in Regulation (EU) 2017/1129 and as defined in Article 2 of Regulation (EU) 2017/1129 as it forms part of domestic law by virtue of the European Union (Withdrawal) Act 2018 (the "New Notes Certification"). To validly make a New Notes Election, each Holder of a First Lien Claim must comply with the procedures set forth in Article VII.H and Article VII.I below and the Solicitation Materials.  For the avoidance of doubt, if a Holder of a First Lien Claim elects to make a New Notes Election, such Holder must do so for such Holder's full amount of First Lien Claims – no partial elections will be permitted.**[2]

**Article VII.G.  Distribution Procedures**

**The Distribution Agent shall make all distributions of Cash or other property required under the Plan unless the Plan specifically provides otherwise. All Cash and other property held by the Reorganized Debtors for Distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.**

**All Distributions to Holders on account of Allowed First Lien Credit Agreement Claims shall be deemed completed when made to, or at the direction of, the First Lien Credit Agreement Agent, which shall be deemed to be the Holder of such Claims for purposes of Distributions to be made under this Plan. The First Lien Credit Agreement Agent shall hold and/or direct such Distributions for the benefit of the holders of the foregoing Allowed First Lien Credit Agreement Claims.  The First Lien Credit Agreement Agent shall not incur any liability whatsoever on account of any Distributions under the Plan except for actual fraud, gross negligence, or willful misconduct. If the First Lien Credit Agreement Agent is unable to make, or consent to the Reorganized Debtors making, such Distributions, the Reorganized Debtors or an authorized Disbursing Agent, with the First Lien Credit Agreement Agent's cooperation, shall make such Distribution. The First Lien Credit Agreement Agent**

---

[2]    For the avoidance of doubt, individual sub-funds managed by common parent are permitted to make individual elections (*e.g.*, CLO Sub-fund A may make a New Notes Election without prejudice to CLO Sub-fund B).

shall have no duties, obligations, or responsibilities with respect to any form of Distribution to holders of the foregoing Allowed Claims that is not DTC-eligible, and the Reorganized Debtors shall make such Distributions. For the avoidance of doubt, all Distributions referenced in this paragraph shall be subject to any charging liens exercised by the First Lien Credit Agreement Agent.

All Distributions to Holders on account of Allowed Senior Secured Notes Claims shall be deemed completed when made to or at the direction of the Senior Secured Notes Indenture Trustee, which shall be deemed to be the Holder of such Claims for purposes of Distributions to be made under this Plan. The Senior Secured Notes Indenture Trustee shall hold or direct such Distributions for the benefit of the holders of the foregoing Allowed Senior Secured Notes Claims. The Senior Secured Notes Indenture Trustee shall not incur any liability whatsoever on account of any Distributions under the Plan except for actual fraud, gross negligence, or willful misconduct. If the Senior Secured Notes Indenture Trustee is unable to make, or consent to the Reorganized Debtors making, such Distributions, the Reorganized Debtors or an authorized Disbursing Agent, with the Senior Secured Notes Indenture Trustee's cooperation, shall make such Distribution. The Senior Secured Notes Indenture Trustee shall have no duties, obligations, or responsibilities with respect to any form of Distribution to holders of the foregoing Allowed Claims that is not DTC-eligible, and the Reorganized Debtors shall make such Distributions. For the avoidance of doubt, all Distributions referenced in this paragraph shall be subject to any charging liens exercised by the Senior Secured Notes Indenture Trustee.

Notwithstanding anything to the contrary in the Plan, except as set forth below, the Distribution of the New Notes and the New Common Equity shall be made through the facilities of DTC in accordance with the customary practices of DTC for a Distribution, as and to the extent practicable. In order to receive the portion of its Distribution constituting New Common Equity, and, if such Holder is a New Notes Creditor, its portion of the New Notes, each Holder of First Lien Claims shall provide any information, forms, instruments or other document necessary to receive such Distribution through DTC, including, with respect to any Holder of First Lien Credit Agreement Claims, a duly completed and executed Election Form. The Debtors or Reorganized Debtors shall not be required to distribute any New Common Equity through any other method other than the facilities of DTC. Any Holder of First Lien Claims that does not provide requisite information necessary for the Debtors or Reorganized Debtors to make a Distribution of its New Common Equity and/or New Notes, as applicable, through DTC prior to such New Common Equity and/or New Notes becoming an Unclaimed Distribution may be at risk of forfeiting its Distribution of New Common Equity and/or New Notes, as applicable. Notwithstanding the foregoing, the Debtors, with the consent of the Ad Hoc Group Advisors, may elect to use any other book entry delivery, settlement and depositary service in lieu of DTC as it deems efficient and appropriate (an "Alternative Service") solely to the extent the New Notes or the New Common Equity are not eligible for deposit through DTC, provided, that delivery of the New Notes and New Common Equity through an Alternative Service shall not be mandatory.

In connection with the Distribution of the New Common Equity and New Notes, as applicable, to Holders of Senior Secured Notes Claims, the Senior Secured Notes Indenture Trustee, or the Distribution Agent on the Senior Secured Notes Indenture Trustee's behalf, shall deliver instructions to DTC instructing DTC to effect Distributions as provided under the Plan with respect to the Senior Secured Notes Claims on the Effective Date. The Debtors or the Reorganized Debtors, as applicable, shall seek the cooperation of DTC so that any Distribution on account of an Allowed Senior Secured Notes Claim that is held in the name of, or by a nominee of, DTC, shall be made through the facilities of DTC on the Effective Date or as soon as practicable thereafter. For the avoidance of doubt, in connection with a distribution of New Notes and New Common Equity through the facilities of DTC, distributions will be made at the beneficial owner level in accordance with the elections received thereto.

The Distribution Record Date shall not apply to distributions in respect of securities deposited with DTC and the Holders of which shall receive distributions, if any, in accordance with the customary exchange procedures of DTC or the Plan. For the avoidance of doubt, in connection with a distribution through the facilities of DTC, DTC shall be considered a single Holder for purposes of the distribution of New Common Equity.

To receive New Term Loans on the Effective Date, a Holder of Senior Secured Notes Claims (or their custodian on their behalf) must, by the New Notes Election Deadline, (i) electronically transmit their default position to receive the New Term Loans by causing DTC to transfer such Holder's Senior Secured Notes to the Solicitation Agent in accordance with DTC's ATOP procedures and (ii) submit a properly completed and duly executed Election Form through the Solicitation Agent's electronic submission portal.

<u>Article VII.H</u>.    Election Procedures for Holders of First Lien Credit Agreement Claims

To validly make a New Notes Election, a Holder of First Lien Credit Agreement Claims must, on or before the New Notes Election Deadline, submit a properly completed and duly executed election form (the "Election Form") through the Solicitation Agent's electronic submission portal. The Election Form will require the Holder of First Lien Credit Agreement Claims to provide the New Notes Certification as well as information to enable the New Notes to be issued to such Holder on the Effective Date through DTC.

If a Holder of First Lien Credit Agreement Claims does not make a New Notes Election by submitting a valid Election Form, such Holder of First Lien Credit Agreement Claims shall be entitled to receive the New Takeback Debt in the form of New Term Loans.

**Article VII.I.  Election Procedures for Holders of Senior Secured Notes Claims**

**To validly make a New Notes Election, a Holder of Senior Secured Notes Claims (or their custodian on their behalf) must, on or before the New Notes Election Deadline, electronically transmit their New Notes Election by causing DTC to transfer such Holder's Senior Secured Notes to the Solicitation Agent in accordance with DTC's ATOP procedures.  An "Agent's Message" transmitted through DTC must be received by the Solicitation Agent at or prior to the New Notes Election Deadline.  The Holder will be required to make the New Notes Certification when electronically transmitting such Holder's Senior Secured Notes through DTC's ATOP procedures.**

**For the avoidance of doubt, a Holder of Senior Secured Notes Claims that validly makes a New Notes Election does not need to submit an Election Form to the Solicitation Agent.**

**If a Holder of Senior Secured Notes Claims does not make a New Notes Election by following the procedures described in this Section I. prior to the New Notes Election Deadline, such Holder of Senior Secured Notes Claims shall be entitled to receive the New Takeback Debt in the form of New Term Loans.**

*[Remainder of page intentionally left blank.]*